UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BAHIG F. BISHAY, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 05-10451-RGS |
| CITIZENS BANK OF MASSACHUSETTS, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

This complaint is the latest chapter in a decade old dispute between Plaintiff, Bahig F.

Bishay ("Bishay") and Citizens Bank of Massachusetts ("Citizens"). In 1998, the Massachusetts

Superior Court dismissed on summary judgment a series of lender liability counterclaims Bishay

brought after Citizens sued over a defaulted loan. The summary judgment order was affirmed by

the Massachusetts Appeals Court, and further appellate review was denied by the Supreme

Judicial Court and the United States Supreme Court. Two years after the last dismissal Bishay

brings this meritless complaint pro se.

The complaint must be dismissed. First, the Court lacks subject matter jurisdiction

because there is neither federal question nor diversity jurisdiction. Second, this complaint is an

improper collateral attack on a final judgment; it is barred by res judicata principles. Third, if

there were any viable claims, they would all be barred by the passage of the applicable statutes of

limitations. Fourth, the complaint fails to state claims upon which relief can be granted because

the premise of each of Bishay's claims, i.e., that he was prevented by Citizens from receiving an

adjudication on the merits of his claims, is wrong. Summary judgment was entered dismissing

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April 2005, I served a true copy of the within Memorandum in Support of Motion to Dismiss by first class mail on the party listed below.

Bahig F. Bishay
163 Blue Hill Drive
Westwood, MA 02090

Dated:  April 7, 2005

_____
Jennifer M. Ryan

# 1354843 v1 - RYANJM - 017813/0113

the claims on their merits.  For these and other reasons set forth below, Citizens requests that the Court dismiss the complaint with prejudice.

## STATEMENT OF FACTS[1]

1.    Jurisdiction Facts

Bishay is an individual having a residence in Westwood, Massachusetts.  (Compl., ¶ 3) Citizens is a banking corporation within the Commonwealth of Massachusetts with a principal place of business in Boston, Massachusetts.  (Compl., ¶ 4)

2.    Prior Litigation

Because all of these allegations have been tried before, Citizens will start there.  The prior litigation resulted in three summary judgment decisions by the Massachusetts Superior Court dated December 1997, February 1998 and October 1998.  True and accurate copies of these decisions are attached hereto as Exhibits A – C, respectively.  The three decisions dismissed, in its entirety, a six-count counterclaim filed by Bishay against Citizens in August 1996.  A copy of the 1996 Answer and Counterclaim is attached hereto as Exhibit D.[2]  Bishay appealed the decisions to the Massachusetts Appeals Court.  The Appeals Court affirmed.  A true and accurate copy of the Appeals Court decision is attached as Exhibit E.  That decision is also reported at 56 Mass. App. Ct. 1104 (2002).  Bishay sought further appellate review with the Massachusetts Supreme Judicial Court and filed a Petition for Writ of Certiorari with the United States Supreme Court.  Both requests were denied.  Copies of those orders are attached hereto as Exhibits F and G, respectively.

---

[1] The factual citations are to both the new complaint and the former decisions of the Massachusetts Superior and Appeals Courts.
[2] The counterclaim alleged the following six counts: Count I (breach of good faith and fair dealing); Count II (promissory estoppel); Count III (intentional interference with contractual and advantageous relations); Count IV (declaratory judgment as to the validity of the September 1994 Agreement); Count V (intentional infliction of emotional distress); and Count VI (violations of c. 93A).

assertion by Citizens of certain legal defenses. The assertion by a party of his legal rights cannot be the basis for a later lawsuit. The doctrine of absolute privilege bars any such claims. See, e.g., Doe v. Nutter, McClennan & Fish, 41 Mass. App. Ct. 137, 140-41 (1996) (all statements and actions made in litigation are subject to absolute privilege which protects litigants from any civil liability based thereon). Accordingly, the Section 11 claim must also be dismissed.

<strong>CONCLUSION</strong>

In summary, the complaint must be dismissed because this Court lacks subject matter jurisdiction, it is barred by res judicata and the passage of the applicable statutes of limitations, and it fails to state claims upon which relief can be granted.

Respectfully submitted,

**CITIZENS BANK OF MASSACHUSETTS,**

By its attorneys,

James W. Stoll, Esq. (BBO # 544136)
Jennifer M. Ryan, Esq. (BBO #661598)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

Dated: April 6, 2005

In April 1996, prior to the filing of the Answer and Counterclaim, Bishay and an entity he owned, 1095 Commonwealth Avenue, Corp., were the subject of a voluntarily filed bankruptcy proceeding. On April 23, 1996, the Bankruptcy Court, following a two day hearing, confirmed a plan of reorganization (the "Confirmed Plan"). A true and accurate copy of the Court Order and the Confirmed Plan is attached hereto as <u>Exhibit H</u>.

One of the provisions of the Confirmed Plan addressed Bishay's right to pursue lender liability claims against Citizens in the state courts. (<u>Exhibit H</u> at 32-34). In order to provide Citizens with security to recover legal fees it would incur in the defense of those claims, as provided by its loan documents, the Bankruptcy Court required Bishay to either post a $500,000 letter of credit (the "LOC") or allow Citizens to retain a $500,000 lien on a certain piece of real property. (<u>See Exhibit H</u> at 33). Bishay elected to post the LOC. A copy of the LOC is attached hereto as <u>Exhibit I</u>.

Following the third of the summary judgment decisions, Citizens was awarded $360,000 in fees by the Superior Court. A copy of the fee order is attached as <u>Exhibit J</u>.

Following the fee order, Citizens made demand on Bishay to pay the award in advance of drawing on the LOC. A copy of the demand letter to Bishay is attached hereto as <u>Exhibit K</u>. Bishay ignored the demand. Thus, Citizens made the draw in accordance with the terms of the LOC. A copy of the draw letter is attached hereto as <u>Exhibit L</u>. The draw was made in May 1999.

3.    <u>Current Allegations</u>

Paragraphs 5, 6, 14, and 15 of the complaint characterize the former bankruptcy proceeding and Confirmed Plan as a contract between Citizens and Bishay that constituted an agreement that Bishay could "prosecute" his claims against Citizens if he posted the $500,000

3

other. Thus, the breach of fiduciary duty claim fails on its face.

      D.   <u>Unjust Enrichment Claim</u>

      Unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience." <u>Taylor Woodrow Blitman Constr. Co. v. Southfield, Gardens Co.</u>, 534 F. Supp. 340, 347 (D. Mass. 1982). As an equitable remedy, unjust enrichment is "available to a court inclined to allow recovery in situations where, <u>although the court finds no enforceable contract</u>, the circumstances require imposition of a legal obligation in the interest of justice." <u>Rezendes d/b/a First Atlantic Credit Corp. v. Barrows</u>, No. 96-1625, 1997 Mass. Super. LEXIS 264, at *3 (July 31, 1997) (emphasis added). Here, of course, any dispute that exists between the parties is governed by the contracts and court orders that exist and that are referenced in the complaint. Unjust enrichment "is not available to a party with an adequate remedy at law." <u>Mass. Cash Register, Inc. v. Comtrex Sys. Corp.</u>, 901 F. Supp. 404 (D. Mass. 1995). Thus, the claim for unjust enrichment fails to state a claim upon which relief can be granted.

      E.   <u>The 93A Claim.</u>

      Count VI alleges unfair and deceptive trade practices pursuant to G.L. c. 93A, §§ 9 and 11. Obviously, a claim cannot exist simultaneously under both sections. As for the § 9 claim, Bishay failed to mail or deliver a demand letter to Citizens 30 days in advance of the filing of the complaint. The 30-day demand letter is a jurisdictional pre-requisite to filing a consumer claim under G.L. c. 93A, § 9. <u>Thorpe v. Omaha Ins. Co.</u>, 984 F.2d 541, 544 (1st Cir. 1993); <u>Entrialgo v. Twin City Dodge, Inc.</u>, 368 Mass. 812, 813 (1975). Thus, Count VI, insofar as it is based on § 9, must be dismissed.

      The Section 11 claim also falls on its face because it is based on the successful

LOC. Bishay alleges that the "contract" allowed him the right to "freely prosecute his claims without limitations." (Compl., ¶ 16). These allegations appear to state that Citizens could not interpose any defense that might cause the dismissal of his claims short of trial.

Paragraphs 7-13 make allegations about the former loan relationship between Bishay and Citizens (and Citizen's predecessor-in-interest, NewWorld Bank) that Bishay characterizes as wrongful. These same allegations appear in the original counterclaim at ¶¶1 -3. (See Exhibit D at p. 5, Counterclaim ¶¶ 1- 3)

In Paragraph 15 of the new complaint, Bishay alleges that the defenses thereafter asserted by Citizens and found compelling by the courts constitute a breach of the "contract" (i.e., the "Confirmed Plan.") (Compl., ¶ 15). Finally, in Paragraph 18, Bishay alleges that Citizens made an improper draw on the LOC in April 1999, because the orders of the Superior Court dismissing his claims and awarding fees came as a result of summary judgment orders that did not allow Bishay "to freely prosecute" his claims. (Compl., ¶18).

Based on these allegations, Bishay asserts six counts: Breach of the Covenant of Good Faith and Fair Dealing (Count I), Breach of Contract (Count II), Fraud (Count III), Breach of Fiduciary Duty (Count IV), Unjust Enrichment (Count V) and Violation of c.93A (Count VI).

## LEGAL ARGUMENT

Bishay's latest attempt at litigation fails for a number of reasons. First, the complaint fails to set forth facts and allegations that establish subject matter jurisdiction. Second, the complaint collaterally attacks a final judgment of the Massachusetts Superior Court, and is barred by the doctrine of res judicata. Third, even if the claims were viable, each is barred by the applicable statute of limitations. Finally, the complaint fails to state claims upon which relief can be granted. For these reasons, the complaint must be dismissed with prejudice.

Fair Dealing Claims

The breach of contract and breach of the implied covenant of good faith and fair

dealing claims fail to state a claim because they rely on the flawed premise that dismissal on

summary judgment means that Bishay was not allowed to "prosecute" his claims. Put

differently, Bishay treats the Confirmed Plan as a contract and concludes that the "bargain"

struck was to allow Bishay to prosecute his claims at a trial. Of course, the Confirmed Plan did

not guarantee Bishay a trial nor did it force Citizens to waive any defenses. Citizens' defenses

were raised at the summary judgment stage and found compelling by the Superior Court and

the Appeals Court. (See Exhibits A - C & E). The allowance of those defenses means that

Bishay had the opportunity to prosecute his claims; he simply lost. Thus on the face of the

complaint, there is no claim for breach of contract or breach of the implied covenant of good

faith and fair dealing.

B.    The Fraud Claim

The fraud claim fails for the same reasons. There was never an agreement to waive any

of Citizens' defenses. Those defenses were adjudicated adverse to Bishay. Such actions do

not constitute fraud.

C.    The Breach of Fiduciary Duty Claim

The breach of fiduciary duty claim fails on its face as Bishay and Citizens were not in a

relationship of trust and confidence, a necessary predicate to establishing a breach of fiduciary

duty. See e.g., Nat'l Shawmut Bank of Boston v. Hallett, 322 Mass. 596, 602 (1948)

(relationship of debtor and creditor is not a fiduciary one). At the time of the Confirmed Plan,

the relationship between Citizens and Bishay was not only that of lender and borrower, a

quintessentially non-fiduciary relationship, but they were also engaged in litigation with each

12

## I.    <u>Legal Standard</u>

The standard for dismissal under Rule 12(b) in the First Circuit is well settled.  In ruling

on such a motion, the facts and allegations set forth in the complaint must be viewed in the light

most favorable to the plaintiff.  <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st

Cir. 1989).  The plaintiff, however, may not rely merely on "bald assertions" or "unsupportable

epithets" to establish its claim—the plaintiff must set forth factual allegations supporting some

actionable legal theory.  <u>Remco Distributors, Inc. v. Oreck Corp.</u>, 814 F. Supp. 171, 174 (D.

Mass. 1992), <u>aff'd</u>, 981 F.2d 1245 (1st Cir. 1992).

Where the complaint presents no set of facts justifying recovery for the plaintiff, it is

subject to dismissal.  <u>Dartmouth Review</u>, 889 F.2d at 16 (affirming dismissal of discrimination

claim because no facts alleged that would warrant recovery).  Deficiencies in the complaint

which subject it to dismissal may consist of an absence of law or facts sufficient to support the

claim.  <u>See</u> <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998) (dismissal

based on statute of limitations appropriate because if time-barred there is no right of recovery);

<u>Day v. Moscow</u>, 955 F.2d 807, 811 (2nd Cir. 1992) (dismissal under Rule 12(b)(6) appropriate

for claims barred by doctrine of res judicata).

A court may rely on materials outside of the pleadings and on matters of which the court

can take judicial notice (i.e. prior court orders) in considering a motion to dismiss where they are

central to the complaint.  <u>Fudge v. Penthouse</u>, 840 F.2d 1012, 1015 (1st Cir. 1988) (considering

magazine article that plaintiffs alleged was libelous); <u>Romani v. Shearson Lehman Hutton</u>, 929

F.2d 875, 879 (1st Cir. 1991) (considering document plaintiffs alleged to be fraudulent); <u>Colby v.</u>

<u>Hologic, Inc.</u>, 817 F. Supp. 204, 209 n.6 (D. Mass. 1993) (considering exhibits to complaint

which formed basis of claim); <u>see also</u> <u>Allen v. Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d

in his favor against any claim Citizens may have for attorneys' fees incurred in defending

Bishay's counterclaims and to strike the LOC requirement. The Court refused to do so as early

as December 1997. (See Exhibit A at p. 26-28). Thus, Bishay received notice as to unjust

enrichment claim in December 1997 as well and the statute of limitations expired in December

2003.

Count III is for fraud and is based on the same conduct as the contract claims (see

Compl., ¶¶ 25-26), plus the alleged failure to disclose to the Superior Court the Disclosure

Statement filed by Citizens in Bishay's Bankruptcy case. (See Compl., ¶ 27). Again, these

allegations concern events that occurred in the Superior Court in 1997. Thus, the three year

statute of limitations expired in May 2000.

Count IV relates to the draw on the LOC made by Citizens in April 1999. (Compl. ¶¶ 29-

36). Count IV is styled as breach of fiduciary duty. That is a tort claim that must be brought

within three years of accrual. Patsos, 433 Mass. at 327 n.6. As the draw on the LOC occurred in

April, 1999, the statute of limitations expired in April, 2002.

Count VI alleges a violation of c. 93A in that Citizens "wrongfully, and willfully, took

funds of the Plaintiff without lawful justification." (Compl., ¶ 38). This allegation appears to be

based on the same LOC draw that occurred in April, 1999. As c. 93A claims must be brought

within four years of the accrual of the action, G.L. c. 260 §5 A, the time in which to bring that

claim expired in April, 2003.

## V.    The Complaint Must Be Dismissed For Failure To State Claims Upon Which Relief Can Be Granted.

The Complaint must also be dismissed for failure to state a claim upon which relief can

be granted.

### A.    The Breach of Contract and Breach of the Implied Covenant of Good Faith and

11

Cir. 1991) (stating that court can consider documents incorporated in the complaint by reference and matters of which judicial notice can be taken in considering Rule 12(b)(6) motion). This is especially true where nothing a plaintiff can introduce will affect "the disposition of the purely legal questions" raised in the motion to dismiss. <u>Fudge</u>, 840 F.2d at 1015.

This Court can consider the Confirmed Plan, the previous decisions of the various courts, the LOC, the demand letter and the draw letter that are at the heart of this case in deciding this motion because they are central to Bishay's claim and are referenced in the complaint. <u>See</u> <u>Cortec Indus., Inc. v. Sum Holding, L.P.</u>, 949 F.2d 42, 47 (2nd Cir. 1991) (if plaintiff's claims are predicated on a document, movant may attach the document to a 12(b) motion for consideration by the court even if plaintiff's complaint does not explicitly refer to it).

## II.    The Motion Must Be Dismissed For Lack of Subject Matter Jurisdiction

In the first instance, this complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. It is axiomatic that Federal Courts have limited jurisdiction and can only adjudicate cases that fall within Article III of the United States Constitution. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §1350 (3d ed. 2004); <u>see</u> <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 695 (1992). A claim must set forth facts and allegations that involve either a federal question or diversity of citizenship. <u>See</u> 28 U.S.C. §§ 1331, 1332.

As can be seen from the face of the complaint, neither jurisdictional predicate exists. Bishay is an individual having a residence in Westwood, Massachusetts (Compl., ¶ 3), and Citizens is a Massachusetts banking corporation with a principal place of business in Boston, Massachusetts. (Compl., ¶ 4) Thus, diversity jurisdiction is lacking. <u>See</u> 28 U.S.C. §1332. Further, the complaint alleges only state law claims. Thus, federal question is lacking. (Compl.,

6

Confirmed Plan is dated April 1996. Citizens filed its summary judgment motion in April 1997 raising the defenses of which Bishay now complains. Further, Bishay raised his view of the impropriety of Citizens' claims for fees in each of his summary judgment oppositions. Thus, he was also on notice of the validity of the LOC as early as December 1997. Summary judgment was entered in December 1997, February 1998, and October 1998. Thus, Bishay was on notice as early as April 1997 that Citizens was raising the defenses of which he now complains. A claim accrues when a party is on notice that his rights may have been violated. <u>Bowen v. Eli Lilly & Co.</u>, 408 Mass. 204, 207 (1990) (all that is necessary is that an event or events have occurred that are reasonably likely to put the plaintiff on notice that he has been harmed). Of the six claims, three sound in contract (Counts I, II and V), two in tort (Counts III and IV) and one rises under c.93A (Count II).

Claims for breach of contract, breach of implied covenant of good faith and fair dealing and unjust enrichment must be brought within six years after the cause of the action accrues. G.L. c. 260, § 2; <u>see</u> <u>also</u> <u>Patsos v. First Albany Corp.</u>; 433 Mass. 323, 327 n.6 (2001). Tort claims are subject to a three year statute of limitations. G.L. c. 260, § 2A. Claims brought under 93A must be brought within four years of the accrual of the action. G.L. c. 260, § 5A.

A.     <u>The Claims</u>

Because Bishay's contract claims are based on the allegation of wrongly asserted defenses by Citizens, his claims accrued when he first received Citizens' motion for summary judgment raising those defenses. This occurred in April 1997. The six year limitation period expired in April 2003. Suit was not filed until March 2005. Thus, the contract claims are barred.[3] Further, Bishay raised his own arguments asking the court to enter summary judgment

---

[3] Even if one took the later date of entry of summary judgment by the Superior Court, the claims are still barred by the last order issued in October 1998, the complaint was not filed until 2005.

Counts I - VI)  Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction.  See 28 U.S.C. §§ 1331, 1332.

### III.    The Complaint is Barred by the Doctrine of Res Judicata

Beyond the lack of jurisdiction, Bishay's claims constitute an impermissible collateral attack on a final judgment and are thus barred by principles of claim and issue preclusion.  See Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) (if dissatisfied with Bankruptcy Court's ultimate decision, appeal to district court for the district in which bankruptcy judge is sitting is proper course of action; failure to do so does not permit collateral attack of decision in another district court); Western Water Mgmt, Inc. v. Brown, 40 F.3d 105, 108 (5th Cir. 1994) ("collateral attack on an injunction during contempt proceedings is prohibited if earlier review of the injunction was available"); In Re Space Bldg. Corp., 206 B.R. 269, 273 (D. Mass. 1996) ("because of its res judicata effect, a confirmed Plan is not vulnerable to collateral attack").  Bishay alleges that because he lost his claims on summary judgment and thus did not receive a trial, he was not able to "freely prosecute" his claims.  (Compl., ¶¶ 14-18).  Bishay's assertion is no more than a collateral attack on the judgments and decisions of the Superior Court, the Appeals Court, the Supreme Judicial Court, and the Supreme Court.  Paragraph 15 of the complaint summarizes the gravaman of Bishay's claims: "Citizens . . . led the state court to believe that Bishay's claims were  (a) extinguished in the Bankruptcy Court; (b) Bishay allegedly released said Claims in the Bankruptcy Court; and (c) Citizens was entitled to summary judgment, by disingenuously invoking the doctrine of res judicata, as if Bishay's Claims had already been tried and lost, which Citizens knew never happened." (Compl., ¶ 15).

All of these claims, however, have been heard and rejected by the Superior Court and the Appeals Court.  Indeed, Bishay made virtually identical arguments below. (See Exhibits A-C).

suits are the same:  Bishay and Citizens; and this action simply is an attempt to re-litigate claims already decided.  Therefore, the complaint must be dismissed.

In addition, the complaint must be dismissed on grounds of collateral estoppel.  Collateral estoppel bars re-litigation of any factual or legal issue actually decided in the previous litigation between the parties, whether on the same or a different claim.  Id.  The essential elements of collateral estoppel are:  (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment.  Id.  The parties to this suit are the same.  Bishay wishes to re-litigate his claims based on his miscomprehension of the legal system.  The issues have been litigated and determined by a valid and binding judgment.  Therefore, the complaint is barred by the doctrine of collateral estoppel.

Bishay did prosecute his claims.  He filed a six-count counterclaim against Citizens.  Those claims were resolved adversely to Bishay on a motion for summary judgment.  He appealed those orders to the Appeals Court and the Appeals court affirmed the dismissal.  Bishay sought further appellate review from both the Supreme Judicial Court and the Supreme Court.  Those requests were rejected.  He cannot now claim that he was unable to prosecute his claims.  Res judicata bars the complaint.

### IV.    All Claims are Barred by the Applicable Statutes of Limitations

Even if there were viable claims not subject to dismissal for lack of jurisdiction or on res judicata grounds, each claim is barred by its applicable statutes of limitations.

As stated above, the gravamen of Bishay's claims is that Citizens raised defenses to his claims in the Superior Court which Bishay says it agreed not to raise in the Confirmed Plan.  The

For example, Bishay contended that the Superior Court erred in ruling that the "blanket reservation contained in the Plan was insufficient to preserve the remaining four counts of the amended counterclaim for post-confirmation adjudication." (Exhibit B at p. 4; see also Exhibit C at p. 3-4). Bishay further argued, "the confirmation of the Chapter 11 plan does not constitute res judicata as to his counterclaims against Citizens because said claims were "non-core" to the bankruptcy proceeding and thus could not have been adjudicated in that forum." (Exhibit C at p. 5). In addition, Bishay asked the court to strike the LOC. (Exhibit A at p. 26). The Superior Court declined to adopt Bishay's interpretation despite consideration on three separate occasions. Moreover, Bishay continues to confuse the absence of a trial with the absence of a resolution of the claims on their merits. In other words, Bishay refuses to accept the fact that the summary judgment process resolved his claims on their merits. Bishay prosecuted his claims. Therefore, his complaint is now barred by the doctrine of res judicata.

Public policy considerations of fairness and judicial efficiency dictate that there be an end to litigation, that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688 (1974). The doctrine of res judicata encompasses two different aspects—claim preclusion and collateral estoppel (issue preclusion). Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. 1994). The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. Id. Once these elements are established, claim preclusion also bars the re-litigation of any issue that was or might have been raised in respect to the subject matter of the prior litigation. Id. The elements are met: there is a final judgment on the merits; the parties in the

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BAHIG F. BISHAY,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        CIVIL ACTION
                                    )        NO. 05-10451-RGS
CITIZENS BANK OF MASSACHUSETTS,     )
                                    )
        Defendant.                  )
                                    )
                                    )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

This complaint is the latest chapter in a decade old dispute between Plaintiff, Bahig F.

Bishay ("Bishay") and Citizens Bank of Massachusetts ("Citizens"). In 1998, the Massachusetts

Superior Court dismissed on summary judgment a series of lender liability counterclaims Bishay

brought after Citizens sued over a defaulted loan. The summary judgment order was affirmed by

the Massachusetts Appeals Court, and further appellate review was denied by the Supreme

Judicial Court and the United States Supreme Court. Two years after the last dismissal Bishay

brings this meritless complaint pro se.

The complaint must be dismissed. First, the Court lacks subject matter jurisdiction

because there is neither federal question nor diversity jurisdiction. Second, this complaint is an

improper collateral attack on a final judgment; it is barred by res judicata principles. Third, if

there were any viable claims, they would all be barred by the passage of the applicable statutes of

limitations. Fourth, the complaint fails to state claims upon which relief can be granted because

the premise of each of Bishay's claims, i.e., that he was prevented by Citizens from receiving an

adjudication on the merits of his claims, is wrong. Summary judgment was entered dismissing

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April 2005, I served a true copy of the within Memorandum in Support of Motion to Dismiss by first class mail on the party listed below.

Bahig F. Bishay
163 Blue Hill Drive
Westwood, MA 02090


Dated:  April 7, 2005                     Jennifer M. Ryan

# 1354843 v1 - RYANJM - 017813/0113

15

the claims on their merits.  For these and other reasons set forth below, Citizens requests that the

Court dismiss the complaint with prejudice.

## STATEMENT OF FACTS[1]

1.    Jurisdiction Facts

Bishay is an individual having a residence in Westwood, Massachusetts.  (Compl., ¶ 3)

Citizens is a banking corporation within the Commonwealth of Massachusetts with a principal

place of business in Boston, Massachusetts.  (Compl., ¶ 4)

2.    Prior Litigation

Because all of these allegations have been tried before, Citizens will start there.  The

prior litigation resulted in three summary judgment decisions by the Massachusetts Superior

Court dated December 1997, February 1998 and October 1998.  True and accurate copies of

these decisions are attached hereto as Exhibits A – C, respectively.  The three decisions

dismissed, in its entirety, a six-count counterclaim filed by Bishay against Citizens in August

1996. A copy of the 1996 Answer and Counterclaim is attached hereto as Exhibit D.[2]  Bishay

appealed the decisions to the Massachusetts Appeals Court.  The Appeals Court affirmed.  A true

and accurate copy of the Appeals Court decision is attached as Exhibit E.  That decision is also

reported at 56 Mass. App. Ct. 1104 (2002).  Bishay sought further appellate review with the

Massachusetts Supreme Judicial Court and filed a Petition for Writ of Certiorari with the United

States Supreme Court.  Both requests were denied.  Copies of those orders are attached hereto as

Exhibits F and G, respectively.

---

[1] The factual citations are to both the new complaint and the former decisions of the Massachusetts Superior and Appeals Courts.
[2] The counterclaim alleged the following six counts: Count I (breach of good faith and fair dealing); Count II (promissory estoppel); Count III (intentional interference with contractual and advantageous relations); Count IV (declaratory judgment as to the validity of the September 1994 Agreement); Count V (intentional infliction of emotional distress); and Count VI (violations of c. 93A).

assertion by Citizens of certain legal defenses.  The assertion by a party of his legal rights cannot be the basis for a later lawsuit.  The doctrine of absolute privilege bars any such claims.  See, e.g., Doe v. Nutter, McClennan & Fish, 41 Mass. App. Ct. 137, 140-41 (1996) (all statements and actions made in litigation are subject to absolute privilege which protects litigants from any civil liability based thereon).  Accordingly, the Section 11 claim must also be dismissed.

## CONCLUSION

In summary, the complaint must be dismissed because this Court lacks subject matter jurisdiction, it is barred by res judicata and the passage of the applicable statutes of limitations, and it fails to state claims upon which relief can be granted.

Respectfully submitted,

**CITIZENS BANK OF MASSACHUSETTS,**

By its attorneys,

James W. Stoll, Esq. (BBO # 544136)
Jennifer M. Ryan, Esq. (BBO #661598)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

Dated:  April 6, 2005

In April 1996, prior to the filing of the Answer and Counterclaim, Bishay and an entity he owned, 1095 Commonwealth Avenue, Corp., were the subject of a voluntarily filed bankruptcy proceeding. On April 23, 1996, the Bankruptcy Court, following a two day hearing, confirmed a plan of reorganization (the "Confirmed Plan"). A true and accurate copy of the Court Order and the Confirmed Plan is attached hereto as Exhibit H.

One of the provisions of the Confirmed Plan addressed Bishay's right to pursue lender liability claims against Citizens in the state courts. (Exhibit H at 32-34). In order to provide Citizens with security to recover legal fees it would incur in the defense of those claims, as provided by its loan documents, the Bankruptcy Court required Bishay to either post a $500,000 letter of credit (the "LOC") or allow Citizens to retain a $500,000 lien on a certain piece of real property. (See Exhibit H at 33). Bishay elected to post the LOC. A copy of the LOC is attached hereto as Exhibit I.

Following the third of the summary judgment decisions, Citizens was awarded $360,000 in fees by the Superior Court. A copy of the fee order is attached as Exhibit J.

Following the fee order, Citizens made demand on Bishay to pay the award in advance of drawing on the LOC. A copy of the demand letter to Bishay is attached hereto as Exhibit K. Bishay ignored the demand. Thus, Citizens made the draw in accordance with the terms of the LOC. A copy of the draw letter is attached hereto as Exhibit L. The draw was made in May 1999.

3.    Current Allegations

Paragraphs 5, 6, 14, and 15 of the complaint characterize the former bankruptcy proceeding and Confirmed Plan as a contract between Citizens and Bishay that constituted an agreement that Bishay could "prosecute" his claims against Citizens if he posted the $500,000

3

other. Thus, the breach of fiduciary duty claim fails on its face.

    D.    <u>Unjust Enrichment Claim</u>

    Unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience." <u>Taylor Woodrow Blitman Constr. Co. v. Southfield, Gardens Co.</u>, 534 F. Supp. 340, 347 (D. Mass. 1982). As an equitable remedy, unjust enrichment is "available to a court inclined to allow recovery in situations where, <u>although the court finds no enforceable contract</u>, the circumstances require imposition of a legal obligation in the interest of justice." <u>Rezendes d/b/a First Atlantic Credit Corp. v. Barrows</u>, No. 96-1625, 1997 Mass. Super. LEXIS 264, at *3 (July 31, 1997) (emphasis added). Here, of course, any dispute that exists between the parties is governed by the contracts and court orders that exist and that are referenced in the complaint. Unjust enrichment "is not available to a party with an adequate remedy at law." <u>Mass. Cash Register, Inc. v. Comtrex Sys. Corp.</u>, 901 F. Supp. 404 (D. Mass. 1995). Thus, the claim for unjust enrichment fails to state a claim upon which relief can be granted.

    E.    <u>The 93A Claim.</u>

    Count VI alleges unfair and deceptive trade practices pursuant to G.L. c. 93A, §§ 9 and 11. Obviously, a claim cannot exist simultaneously under both sections. As for the § 9 claim, Bishay failed to mail or deliver a demand letter to Citizens 30 days in advance of the filing of the complaint. The 30-day demand letter is a jurisdictional pre-requisite to filing a consumer claim under G.L. c. 93A, § 9. <u>Thorpe v. Omaha Ins. Co.</u>, 984 F.2d 541, 544 (1st Cir. 1993); <u>Entrialgo v. Twin City Dodge, Inc.</u>, 368 Mass. 812, 813 (1975). Thus, Count VI, insofar as it is based on § 9, must be dismissed.

    The Section 11 claim also falls on its face because it is based on the successful

LOC. Bishay alleges that the "contract" allowed him the right to "freely prosecute his claims without limitations." (Compl., ¶ 16). These allegations appear to state that Citizens could not interpose any defense that might cause the dismissal of his claims short of trial.

Paragraphs 7-13 make allegations about the former loan relationship between Bishay and Citizens (and Citizen's predecessor-in-interest, NewWorld Bank) that Bishay characterizes as wrongful. These same allegations appear in the original counterclaim at ¶¶1 -3. (See Exhibit D at p. 5, Counterclaim ¶¶ 1- 3)

In Paragraph 15 of the new complaint, Bishay alleges that the defenses thereafter asserted by Citizens and found compelling by the courts constitute a breach of the "contract" (i.e., the "Confirmed Plan.") (Compl., ¶ 15). Finally, in Paragraph 18, Bishay alleges that Citizens made an improper draw on the LOC in April 1999, because the orders of the Superior Court dismissing his claims and awarding fees came as a result of summary judgment orders that did not allow Bishay "to freely prosecute" his claims. (Compl., ¶18).

Based on these allegations, Bishay asserts six counts: Breach of the Covenant of Good Faith and Fair Dealing (Count I), Breach of Contract (Count II), Fraud (Count III), Breach of Fiduciary Duty (Count IV), Unjust Enrichment (Count V) and Violation of c.93A (Count VI).

## LEGAL ARGUMENT

Bishay's latest attempt at litigation fails for a number of reasons. First, the complaint fails to set forth facts and allegations that establish subject matter jurisdiction. Second, the complaint collaterally attacks a final judgment of the Massachusetts Superior Court, and is barred by the doctrine of res judicata. Third, even if the claims were viable, each is barred by the applicable statute of limitations. Finally, the complaint fails to state claims upon which relief can be granted. For these reasons, the complaint must be dismissed with prejudice.

Fair Dealing Claims

The breach of contract and breach of the implied covenant of good faith and fair

dealing claims fail to state a claim because they rely on the flawed premise that dismissal on

summary judgment means that Bishay was not allowed to "prosecute" his claims. Put

differently, Bishay treats the Confirmed Plan as a contract and concludes that the "bargain"

struck was to allow Bishay to prosecute his claims at a trial. Of course, the Confirmed Plan did

not guarantee Bishay a trial nor did it force Citizens to waive any defenses. Citizens' defenses

were raised at the summary judgment stage and found compelling by the Superior Court and

the Appeals Court. (See Exhibits A - C & E). The allowance of those defenses means that

Bishay had the opportunity to prosecute his claims; he simply lost. Thus on the face of the

complaint, there is no claim for breach of contract or breach of the implied covenant of good

faith and fair dealing.

B.     The Fraud Claim

The fraud claim fails for the same reasons. There was never an agreement to waive any

of Citizens' defenses. Those defenses were adjudicated adverse to Bishay. Such actions do

not constitute fraud.

C.     The Breach of Fiduciary Duty Claim

The breach of fiduciary duty claim fails on its face as Bishay and Citizens were not in a

relationship of trust and confidence, a necessary predicate to establishing a breach of fiduciary

duty. See e.g., Nat'l Shawmut Bank of Boston v. Hallett, 322 Mass. 596, 602 (1948)

(relationship of debtor and creditor is not a fiduciary one). At the time of the Confirmed Plan,

the relationship between Citizens and Bishay was not only that of lender and borrower, a

quintessentially non-fiduciary relationship, but they were also engaged in litigation with each

12

I.    **Legal Standard**

The standard for dismissal under Rule 12(b) in the First Circuit is well settled.  In ruling on such a motion, the facts and allegations set forth in the complaint must be viewed in the light most favorable to the plaintiff.  Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  The plaintiff, however, may not rely merely on "bald assertions" or "unsupportable epithets" to establish its claim—the plaintiff must set forth factual allegations supporting some actionable legal theory.  Remco Distributors, Inc. v. Oreck Corp., 814 F. Supp. 171, 174 (D. Mass. 1992), aff'd, 981 F.2d 1245 (1st Cir. 1992).

Where the complaint presents no set of facts justifying recovery for the plaintiff, it is subject to dismissal.  Dartmouth Review, 889 F.2d at 16 (affirming dismissal of discrimination claim because no facts alleged that would warrant recovery).  Deficiencies in the complaint which subject it to dismissal may consist of an absence of law or facts sufficient to support the claim.  See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (dismissal based on statute of limitations appropriate because if time-barred there is no right of recovery); Day v. Moscow, 955 F.2d 807, 811 (2nd Cir. 1992) (dismissal under Rule 12(b)(6) appropriate for claims barred by doctrine of res judicata).

A court may rely on materials outside of the pleadings and on matters of which the court can take judicial notice (i.e. prior court orders) in considering a motion to dismiss where they are central to the complaint.  Fudge v. Penthouse, 840 F.2d 1012, 1015 (1st Cir. 1988) (considering magazine article that plaintiffs alleged was libelous); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 (1st Cir. 1991) (considering document plaintiffs alleged to be fraudulent); Colby v. Hologic, Inc., 817 F. Supp. 204, 209 n.6 (D. Mass. 1993) (considering exhibits to complaint which formed basis of claim); see also Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d

in his favor against any claim Citizens may have for attorneys' fees incurred in defending

Bishay's counterclaims and to strike the LOC requirement. The Court refused to do so as early

as December 1997. (See Exhibit A at p. 26-28). Thus, Bishay received notice as to unjust

enrichment claim in December 1997 as well and the statute of limitations expired in December

2003.

Count III is for fraud and is based on the same conduct as the contract claims (see

Compl., ¶¶ 25-26), plus the alleged failure to disclose to the Superior Court the Disclosure

Statement filed by Citizens in Bishay's Bankruptcy case. (See Compl., ¶ 27). Again, these

allegations concern events that occurred in the Superior Court in 1997. Thus, the three year

statute of limitations expired in May 2000.

Count IV relates to the draw on the LOC made by Citizens in April 1999. (Compl. ¶¶ 29-

36). Count IV is styled as breach of fiduciary duty. That is a tort claim that must be brought

within three years of accrual. Patsos, 433 Mass. at 327 n.6. As the draw on the LOC occurred in

April, 1999, the statute of limitations expired in April, 2002.

Count VI alleges a violation of c. 93A in that Citizens "wrongfully, and willfully, took

funds of the Plaintiff without lawful justification." (Compl., ¶ 38). This allegation appears to be

based on the same LOC draw that occurred in April, 1999. As c. 93A claims must be brought

within four years of the accrual of the action, G.L. c. 260 §5 A, the time in which to bring that

claim expired in April, 2003.

## V.    The Complaint Must Be Dismissed For Failure To State Claims Upon Which Relief Can Be Granted.

The Complaint must also be dismissed for failure to state a claim upon which relief can

be granted.

### A.    The Breach of Contract and Breach of the Implied Covenant of Good Faith and

Cir. 1991) (stating that court can consider documents incorporated in the complaint by reference and matters of which judicial notice can be taken in considering Rule 12(b)(6) motion). This is especially true where nothing a plaintiff can introduce will affect "the disposition of the purely legal questions" raised in the motion to dismiss. Fudge, 840 F.2d at 1015.

This Court can consider the Confirmed Plan, the previous decisions of the various courts, the LOC, the demand letter and the draw letter that are at the heart of this case in deciding this motion because they are central to Bishay's claim and are referenced in the complaint. See Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2nd Cir. 1991) (if plaintiff's claims are predicated on a document, movant may attach the document to a 12(b) motion for consideration by the court even if plaintiff's complaint does not explicitly refer to it).

## II.   The Motion Must Be Dismissed For Lack of Subject Matter Jurisdiction

In the first instance, this complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. It is axiomatic that Federal Courts have limited jurisdiction and can only adjudicate cases that fall within Article III of the United States Constitution. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1350 (3d ed. 2004); see Ankenbrandt v. Richards, 504 U.S. 689, 695 (1992). A claim must set forth facts and allegations that involve either a federal question or diversity of citizenship. See 28 U.S.C. §§ 1331, 1332.

As can be seen from the face of the complaint, neither jurisdictional predicate exists. Bishay is an individual having a residence in Westwood, Massachusetts (Compl., ¶ 3), and Citizens is a Massachusetts banking corporation with a principal place of business in Boston, Massachusetts. (Compl., ¶ 4) Thus, diversity jurisdiction is lacking. See 28 U.S.C. §1332. Further, the complaint alleges only state law claims. Thus, federal question is lacking. (Compl.,

Confirmed Plan is dated April 1996. Citizens filed its summary judgment motion in April 1997 raising the defenses of which Bishay now complains. Further, Bishay raised his view of the impropriety of Citizens' claims for fees in each of his summary judgment oppositions. Thus, he was also on notice of the validity of the LOC as early as December 1997. Summary judgment was entered in December 1997, February 1998, and October 1998. Thus, Bishay was on notice as early as April 1997 that Citizens was raising the defenses of which he now complains. A claim accrues when a party is on notice that his rights may have been violated. Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990) (all that is necessary is that an event or events have occurred that are reasonably likely to put the plaintiff on notice that he has been harmed). Of the six claims, three sound in contract (Counts I, II and V), two in tort (Counts III and IV) and one rises under c.93A (Count II).

Claims for breach of contract, breach of implied covenant of good faith and fair dealing and unjust enrichment must be brought within six years after the cause of the action accrues. G.L. c. 260, § 2; see also Patsos v. First Albany Corp.; 433 Mass. 323, 327 n.6 (2001). Tort claims are subject to a three year statute of limitations. G.L. c. 260, § 2A. Claims brought under 93A must be brought within four years of the accrual of the action. G.L. c. 260, § 5A.

A.    The Claims

Because Bishay's contract claims are based on the allegation of wrongly asserted defenses by Citizens, his claims accrued when he first received Citizens' motion for summary judgment raising those defenses. This occurred in April 1997. The six year limitation period expired in April 2003. Suit was not filed until March 2005. Thus, the contract claims are barred.[3] Further, Bishay raised his own arguments asking the court to enter summary judgment

---

[3] Even if one took the later date of entry of summary judgment by the Superior Court, the claims are still barred by the last order issued in October 1998, the complaint was not filed until 2005.

Counts I - VI)  Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction.  See 28 U.S.C. §§ 1331, 1332.

**III.    The Complaint is Barred by the Doctrine of Res Judicata**

Beyond the lack of jurisdiction, Bishay's claims constitute an impermissible collateral attack on a final judgment and are thus barred by principles of claim and issue preclusion.  See Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) (if dissatisfied with Bankruptcy Court's ultimate decision, appeal to district court for the district in which bankruptcy judge is sitting is proper course of action; failure to do so does not permit collateral attack of decision in another district court); Western Water Mgmt, Inc. v. Brown, 40 F.3d 105, 108 (5th Cir. 1994) ("collateral attack on an injunction during contempt proceedings is prohibited if earlier review of the injunction was available"); In Re Space Bldg. Corp., 206 B.R. 269, 273 (D. Mass. 1996) ("because of its res judicata effect, a confirmed Plan is not vulnerable to collateral attack").  Bishay alleges that because he lost his claims on summary judgment and thus did not receive a trial, he was not able to "freely prosecute" his claims.  (Compl., ¶¶ 14-18).  Bishay's assertion is no more than a collateral attack on the judgments and decisions of the Superior Court, the Appeals Court, the Supreme Judicial Court, and the Supreme Court.  Paragraph 15 of the complaint summarizes the gravaman of Bishay's claims: "Citizens . . . led the state court to believe that Bishay's claims were  (a) extinguished in the Bankruptcy Court; (b) Bishay allegedly released said Claims in the Bankruptcy Court; and (c) Citizens was entitled to summary judgment, by disingenuously invoking the doctrine of res judicata, as if Bishay's Claims had already been tried and lost, which Citizens knew never happened." (Compl., ¶ 15).

All of these claims, however, have been heard and rejected by the Superior Court and the Appeals Court.  Indeed, Bishay made virtually identical arguments below. (See Exhibits A-C).

7

suits are the same: Bishay and Citizens; and this action simply is an attempt to re-litigate claims already decided. Therefore, the complaint must be dismissed.

In addition, the complaint must be dismissed on grounds of collateral estoppel. Collateral estoppel bars re-litigation of any factual or legal issue actually decided in the previous litigation between the parties, whether on the same or a different claim. Id. The essential elements of collateral estoppel are: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. Id. The parties to this suit are the same. Bishay wishes to re-litigate his claims based on his miscomprehension of the legal system. The issues have been litigated and determined by a valid and binding judgment. Therefore, the complaint is barred by the doctrine of collateral estoppel.

Bishay did prosecute his claims. He filed a six-count counterclaim against Citizens. Those claims were resolved adversely to Bishay on a motion for summary judgment. He appealed those orders to the Appeals Court and the Appeals court affirmed the dismissal. Bishay sought further appellate review from both the Supreme Judicial Court and the Supreme Court. Those requests were rejected. He cannot now claim that he was unable to prosecute his claims. Res judicata bars the complaint.

## IV.    All Claims are Barred by the Applicable Statutes of Limitations

Even if there were viable claims not subject to dismissal for lack of jurisdiction or on res judicata grounds, each claim is barred by its applicable statutes of limitations.

As stated above, the gravamen of Bishay's claims is that Citizens raised defenses to his claims in the Superior Court which Bishay says it agreed not to raise in the Confirmed Plan. The

9

For example, Bishay contended that the Superior Court erred in ruling that the "blanket reservation contained in the Plan was insufficient to preserve the remaining four counts of the amended counterclaim for post-confirmation adjudication." (Exhibit B at p. 4; see also Exhibit C at p. 3-4). Bishay further argued, "the confirmation of the Chapter 11 plan does not constitute res judicata as to his counterclaims against Citizens because said claims were "non-core" to the bankruptcy proceeding and thus could not have been adjudicated in that forum." (Exhibit C at p. 5). In addition, Bishay asked the court to strike the LOC. (Exhibit A at p. 26). The Superior Court declined to adopt Bishay's interpretation despite consideration on three separate occasions. Moreover, Bishay continues to confuse the absence of a trial with the absence of a resolution of the claims on their merits. In other words, Bishay refuses to accept the fact that the summary judgment process resolved his claims on their merits. Bishay prosecuted his claims. Therefore, his complaint is now barred by the doctrine of res judicata.

Public policy considerations of fairness and judicial efficiency dictate that there be an end to litigation, that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688 (1974). The doctrine of res judicata encompasses two different aspects—claim preclusion and collateral estoppel (issue preclusion). Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. 1994). The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. Id. Once these elements are established, claim preclusion also bars the re-litigation of any issue that was or might have been raised in respect to the subject matter of the prior litigation. Id. The elements are met: there is a final judgment on the merits; the parties in the

54

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 95-1312A

CITIZENS BANK OF MASSACHUSETTS,
Plaintiff,

vs.

BAHIG BISHAY[1] & others[2],
Defendants.

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
12-1-99

## MEMORANDUM OF DECISION AND ORDER ON
## PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiff, Citizens Bank of Massachusetts (Citizens), brought this action in an attempt to recover more than $1.5 million owed by defendant Bahig Bishay and various trusts and corporations controlled by him under a defaulted promissory note. This debt has since been repaid as a result of a Chapter 11 plan confirmed by the Bankruptcy Court on April 23, 1996. However, numerous counterclaims by Bishay against Citizens remain pending in this action. This matter is before the court on the parties' cross-motions for summary judgment pursuant to Mass. R. Civ. P. 56(c). For the reasons discussed below, Citizens' motion for summary judgment is ALLOWED in part and DENIED in part. Further, the defendants' cross-motion for partial summary judgment is DENIED.

---

[1] Individually and as Trustee of Old Post Realty Trust.

[2] Commonwealth Realty Trust, Bishay Motors & Leasing, Inc. f/k/a Bishay Motors, Inc., Massachusetts Auto Group, Ltd., and 1095 Commonwealth Ave. Corp.

Finally, it is hereby **ORDERED** that the defendants' motion for partial summary judgment be **DENIED**.

_____
Gordon L. Doerfer
Justice of the Superior Court

DATED: November 24 , 1997

A TRUE COPY

Attest: _____
Deputy Assistant Clerk

12-1-97

29

## BACKGROUND

The undisputed facts as revealed by the summary judgment record are as follows. The defendant Bahig Bishay (Bishay) is the president and founder of Bishay Motors and Leasing, Inc. f/k/a Bishay Motors, Inc. (Bishay Motors), a business that sells, leases and services Mercedes Benz and other luxury automobiles in East Walpole, Massachusetts. Bishay is a trustee and beneficiary of the Old Post Realty Trust (Old Post Trust), which holds 13.5 acres of registered land located on Old Post Road in Sharon and Walpole, Massachusetts. Bishay is also a trustee and beneficiary of the Commonwealth Realty Trust (Commonwealth Trust), which holds eight parcels of land on or near Commonwealth Avenue in Boston, Massachusetts.

Bishay transacted a great deal of financial business with Citizens' predecessor in interest, Neworld Bank (Neworld), including the borrowing of a line of credit to fund inventory for Bishay Motors and to support his numerous real estate investments. On June 8, 1988, Bishay obtained a loan from Neworld in a principal amount of $2,560,000, as evidenced by a Note and Credit Agreement. The Note, which is dated June 8, 1988 and entitled "Demand Note", provided in relevant part:

> For value received, I, Bahig Bishay of Westwood, Massachusetts, (hereinafter called "Maker" ) promise to pay, ON DEMAND, to NEWORLD BANK FOR SAVINGS . . . the lessor [sic] of (a) $2,560,000.00 or (b) the aggregate amount of all loans outstanding by Payee under the Credit Agreement (the "Credit Agreement") of even date between the Payee and the Maker together with all interest due thereunder and all other charges due Payee.
>
> Until demand for payment in full is made, this Note shall be paid as follows: interest only from the date of disbursement hereunder . . . which interest shall be

billing arrangement.   The Bankruptcy Court further determined that the appropriate sanction for Citizens' misconduct was the reduction of its fee award and the payment of the legal fees incurred by Bishay in the fee dispute hearings.   Implicit in and necessary to the Bankruptcy Court's decision was a determination that Citizens' misconduct did not preclude its recovery under the Note's provision for attorneys fees.   The Bankruptcy Court's January 21, 1997 Memorandum and Order thus constitutes res judicata as to the enforceability of the Note's fee provision, and Bishay is barred from re-litigating that issue here by attempting to cast it as a breach of contract claim.  Citizens' misconduct with respect to the dual billing arrangement thus does not constitute a valid ground for denying Citizens attorneys fees incurred in connection with defending Bishay's counterclaims in the present action. Accordingly, Bishay is not entitled to partial summary judgment sought.

### ORDER

For the foregoing reasons, it is hereby **ORDERED** that Citizens' motion for summary judgment be **ALLOWED** as to Counts I, II, III, IV and V of the amended counterclaim.   It is further **ORDERED** that Citizens' motion for summary judgment be **ALLOWED** as to Subsections a, b, c, d, e, g, h and i of Count VI but **DENIED** as to Subsections f, j, k, l and m of Count VI.

payable monthly in arrears commencing on July 8, 1988, and on the 8th day of each month thereafter until demand for payment in full is made at which time the entire principal balance, accrued interest, and such other charges as may be due and payable hereunder or under any other instrument given to secure payment hereof, shall be immediately due and payable. . . .

The Maker agrees to pay all charges of the holder hereof in connection with the collection and enforcement of this Note, including reasonable attorneys' fees.

The Credit Agreement of the same date, entitled "Credit Agreement (Revolving Demand)," provided in relevant part:

Subject to the terms and conditions hereof, and until demand for payment in full is made, the Borrower may from time to time not later than June 8, 1989 borrow, repay and borrow from the Bank and the Bank will make such advance of funds (a "Loan," or collectively "Loans") to the Borrower not exceeding in the aggregate of $2,560,000.00 at any one time outstanding (the "Credit Availability") in such amounts, and for such duration as Borrower shall have specified to Bank in a Loan Request. In any event all amounts due Bank unless sooner demanded by Bank, shall be paid on or before June 8, 1989. . . .

Upon the occurrence of one or more of the defaults above specified, at any time thereafter while such Event of Default is continuing, the Bank may by notice in writing to the Borrower declare the Note to be, and it shall thereupon become, forthwith due and payable together with all accrued interest to such date and any and all changes to which the Bank would be entitled hereunder, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived.

The Note and Credit Agreement were secured by unlimited and unconditional guaranties from Bishay Motors, Old Post Trust, and Commonwealth Trust. Each guaranty provided in relevant part:

Upon any default by the Borrower in the full and punctual payment and performance of the Obligations, the liabilities and obligations of the Guarantor hereunder shall, at the option of the Bank, become forthwith due and payable to the Bank without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be

3

ground that Citizens' attempt to fraudulently collect attorney's fees under an undisclosed dual fee arrangement in the bankruptcy proceeding[12] constitutes a wilful breach of the attorneys fees clause in the Note, precluding any further recovery under it.

Bishay's claim that Citizens' conduct precludes it from recovering under the contractual provision for attorney's fees is barred by the res judicata effect of both the Bankruptcy Court's April 23, 1996 Confirmation Order and its January 21, 1997 Order awarding attorney's fees pursuant to Chapter 11, section 506(b). The Confirmation Order established the $500,000 lien as security for Citizens' contractual right to recover attorneys fees in the present Superior Court action.    Having failed to appeal the Bankruptcy Court's Confirmation Order, Bishay cannot now be permitted to collaterally attack it in the present summary judgment proceeding.

Further, during the July and October 1996 hearings on Citizens' contractual right to recover attorneys fees incurred in connection with the bankruptcy proceedings, Bishay repeatedly argued that Citizens' misconduct with respect to the dual billing arrangement precluded any recovery under the fee reimbursement provision of the Note on public policy grounds.    Nonetheless, the Bankruptcy Court concluded that Citizens was entitled to recover reasonable fees under the Note, but only to the extent of the lower rate the bank would have been obligated to pay under the dual

_____

[12]See pages 11-12 of this decision, _supra_, for a discussion of the Bankruptcy Court proceedings with respect to attorneys fees.

27

required by the Bank on any number of occasions. . . .

     The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Bank forthwith upon demand, in funds immediately available to the Bank, all costs and expenses (including court costs and legal expenses) incurred or expended by the Bank in connection with this Guaranty and the enforcement hereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment at the usual rate charged by the Bank in similar circumstances, but in no event less than 12% per annum. . . .

The Note and Credit Agreement were further secured by a mortgage on real estate located at 75 Providence Highway in East Walpole, Massachusetts, the site of Bishay Motors, and a security interest in all assets of Bishay Motors.

Pursuant the Credit Agreement, the entire debt became due and payable to Neworld on June 8, 1989, but Bishay failed to repay the loan by this date. Neworld thus entered into an agreement with Bishay on December 18, 1989 that extended the time for repayment so long as Bishay reduced the line of credit by at least $1,700,000 by May 31, 1990. On May 31st, the parties entered into another extension agreement in which Neworld extended the time for repayment to August 31, 1990, in exchange for Bishay's grant of additional security for the loan: a first mortgage on 13.5 acres of registered land located on Old Post Road in Sharon and Walpole, a second mortgage on his automobile dealership at 1095 Commonwealth Avenue in Boston, and a second mortgage on property located at 5 Station Street in Brookline. In November of 1990, Neworld informed Bishay via letter that it intended to terminate its lending relationship with him through repayment of the loan.

4

## II. BISHAY'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Finally, Bishay moves this Court to enter partial summary judgment in his favor against any claim Citizens may have for attorneys' fees incurred in defending against Bishay's counterclaims, and to strike Citizens' lien on his property located at 75 Providence Highway in Walpole as well as the alternative $500,000 surety company bond requirement. In the confirmed reorganization plan, the Bankruptcy Court allowed Bishay to proceed with his pending counterclaims in the present action but retained a $500,000 lien on Bishay's property in favor of Citizens as security for its contractual right to recover attorney's fees in the event that it successfully defended against Bishay's counterclaims. The reorganization plan provides in relevant part:

> the Debtors may obtain the discharge of such liens within thirty (30) days . . . by delivering to Citizens (i) an irrevocable letter of credit (in form and substance reasonably acceptable by Citizens) issued for the benefit of Citizens by a reputable domestic commercial bank in the amount of $500,000 <u>subject to being drawn by Citizens by presentation of a sworn statement that a court of competent jurisdiction has determined that Citizens has the right to recover costs or expenses (including, without limitation, attorneys' fees or expenses) incurred in connection with defense of the Alleged Claims in an amount equal to or greater than the amount of such draw.</u> (emphasis added).

Bishay correctly notes that the Bankruptcy Court thus reserved to this Court the power to determine whether Citizens is entitled to recover attorneys fees for successfully defending against Bishay's counterclaims in the present matter. He then urges this Court to determine that Citizens is barred from recovering fees even if successful in defending against Bishay's counterclaims on the

Thereafter, on March 15, 1991, Neworld entered into an agreement that extended the time for repayment of the loan until December 31, 1991 but required Bishay to make monthly principal payments of $5,000. According to Neil T. O'Hurley (O'Hurley), the direct account officer who represented Neworld in its dealings with Bishay, this extension agreement converted Bishay's line of credit from an "evergreen loan"[3] to a non-revolving term loan requiring monthly amortization of $5,000. Neworld and Bishay then entered into a series of additional agreements, each of which further extended the time for repayment of the loan.[4]

On August 10, 1993, Neworld and Bishay entered into yet another agreement extending repayment until June 30, 1994 but increasing the monthly principal repayments from $5,000 to $7,500. The following month, Bishay paid interest in the amount of $6,088.63 but requested a hold on the monthly principal reduction of $7,500. Thereafter, on April 18, 1994, Bishay wrote to O'Hurley and informed him that he was enclosing an interest payment of $14,058.91 but could not make the monthly principal reduction payments for May and June due to the cash flow shortfall caused in

---

[3]This term is generally used in the banking industry to mean a loan essentially set up to require repayment of interest only, with no formal principal repayment schedule implemented. According to O'Hurley, granting Bishay an evergreen loan arrangement was unusual under the circumstances because his collateral structure was a pool of corporate business assets and commercial real estate, which is high risk.

[4]A December 27, 1991 agreement extended repayment until 6/30/92; a July 8, 1992 agreement extended repayment until 12/31/92; and a December 30, 1992 agreement extended repayment until 6/30/93.

Moreover, Bishay continued to perform under the Forbearance Agreement by making sporadic payment reductions on the loan. Thus, this Court concludes that even if Bishay were able to establish that the Forbearance Agreement was executed under economic duress, he nonetheless ratified the agreement through his subsequent conduct, thereby waiving his right to challenge the release on the grounds of duress. See In re Boston Shipyard Corp., supra at 455 (holding that by accepting payments under contract and continuing to perform for several months until the other party terminated the contract, the plaintiff ratified the contract, waiving any claim of duress); In re A.J. Lane & Co., Inc., 171 B.R. 1, 3 (D. Mass. 1994), aff'd, 50 F.3d 1 (1st Cir. 1995) (holding that a party ratified an agreement allegedly entered into under economic duress by continuing to perform under it).

Accordingly, the general release contained in the parties' Forbearance Agreement is valid and binding on Bishay, who is precluded from asserting any claim against Citizens arising from the parties' relationship prior to September 16, 1994. Citizens is thus entitled to judgment as a matter of law on Count III and Subsections a, b, c, d, e, g, h and i of Count VI of Bishay's amended counterclaim. The remainder of the claims in Count VI present genuine issues of material fact not appropriate for resolution at this time stage of the proceedings.

starting a new Isuzu business.  O'Hurley responded by informing Bishay that he was in default of the August 6, 1993 agreement due to his failure to make the required principal payments.

Plaintiff Citizens Bank acquired Neworld Bank on April 14, 1994.  On May 9, 1994, Citizens sent Bishay a letter stating that his failure to make the monthly principal payments was a default under the parties' extension agreement and informing him that Neworld's merger with Citizens did not affect his obligations under said agreement.  The letter further stated that Citizens reserved all rights under the agreement and that Bishay's obligations were due in full on June 30, 1994.

When Bishay failed to make the April and May principal payments, his account was turned over to Robert Bender (Bender) of Citizens' loan workout group.  Bishay informed Bender that he was attempting to refinance a first mortgage held by the FDIC on the 1095 Commonwealth Avenue property, which the FDIC had agreed to release at a 50% discount, and requested that Citizens loan him sufficient funds for this purpose.  Citizens refused this request, and by certified letter dated June 14, 1994, accelerated the Note and made demand on Bishay and all other guarantors for immediate payment of all sums due under the Note and all related agreements. At that time, the Note had an unpaid principal balance of $2,330,660.25 and outstanding interest of $13,138.29.  Bender contacted the FDIC to determine whether it was in fact prepared to compromise its debt as Bishay had represented.  In an effort to protect Citizens' secured interest in Bishay's assets, Bender

6

Police of Wareham, supra at 407.

Moreover, a release or other contract, the execution of which was induced by duress, is voidable, not void, and the party claiming duress must act promptly to repudiate the agreement or be deemed to have waived his right to do so. Ismert & Associates v. New England Mut. Life Ins., 801 F.2d 536, 547-548 (1st Cir. 1986); In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st Cir. 1989); Vasapolli v. Rostoff, 39 F.3d 27, 35 n.5 (1st Cir. 1994). If the coerced party fails within a reasonable time to contest an agreement allegedly executed under duress, that agreement may be ratified and affirmed. Id. A party may ratify an agreement entered into under duress by intentionally accepting benefits under it; by acquiescing in it for a period of time after having the opportunity to avoid it; or by acting upon or performing under it. In re Boston Shipyard Corp., supra at 455; See also Delaney v. Chief of Police of Wareham, supra at 408.

In the present case, Bishay failed to object to the September 16, 1994 Forbearance Agreement until some nine months after its execution, when Citizens finally initiated suit to collect on the Note. Bishay then for the first time raised economic duress as a defense to the Forbearance Agreement and the release contained therein. In the meantime, Bishay accepted the benefits of the agreement by utilizing the extension of time in which to pay back the loan, and by obtaining financing from Framingham Savings, which would not have been possible if Citizens had not agreed to subordinate its mortgage on the Commonwealth Avenue property.

inquired as to whether the FDIC would allow Citizens to purchase the FDIC loan. The FDIC responded that it would sell the loan only if Bishay failed to pay the price agreed. Thereafter, on June 29, 1994, Bishay wrote to Citizens, alluding to inappropriate misconduct that Citizens had committed that could lead to liability. Further, in a letter dated July 14, 1994, counsel for Bishay asserted that Bender's communications with the FDIC constituted an unfair and deceptive trade practice in violation of General Laws Chapter 93A.

A week later, on July 20, 1994, Bishay again wrote to Citizens, requesting that the bank grant him an additional forbearance period and agree to subordinate its secured mortgage on the 1095 Commonwealth Avenue property to a two million dollar loan to be given by Framingham Savings Bank for the purpose of obtaining a release of the FDIC mortgage for $1.2 million and renovating the property. Citizens refused to subordinate its mortgage on the property unless Bishay agreed to a variety of terms acceptable to the bank, including a general release of any and all claims Bishay might have against Citizens.

Thus, on September 16, 1994, Citizens entered into a Forbearance Agreement with Bishay; Old Post Trust; Commonwealth Trust; the U.S. Auto Exchange Group, Ltd. (Auto Exchange), an entity which operates the automobile business at Bishay's Commonwealth Avenue property; and the 1095 Commonwealth Avenue Corporation, an entity which acquired property from the Commonwealth Trust. Under this Forbearance Agreement, Citizens

7

already oversecured loan of $2.4 million plus a general release of all claims against the bank in exchange for Citizens' withdrawal of its demand for full payment and subordination of its security position on the Commonwealth Ave. property.   The coercive acts which Bishay alleges created his financial difficulties, leaving him no alternative but to sign the Forbearance Agreement, are Citizens' demand for repayment of the entire principal balance of the loan upon default, its failure to give Bishay a reasonable opportunity to cure, its oversecuring of the loan, and its interference with Bishay's dealings with the FDIC.

This Court concludes that Bishay has no reasonable expectation of proving his claim that he executed the September 16, 1994 Forbearance Agreement and general release under economic duress. The undisputed facts reveal that Bishay informed Citizens in April of 1994 that he was stopping his monthly principal payments because the expenses associated with the start-up of a new dealership had left him without available cash flow.   Thus, the financial difficulties leading to his default on the Note were of Bishay's own making rather than caused by Citizens' conduct.  Once Bishay was in default, Citizens was entitled under the terms of the Note to accelerate the debt and demand full payment, and its actions in doing so cannot be deemed to be oppressive or wrongful.   Merely taking advantage of  another's financial difficulty and doing that which one has a legal right to do cannot form the basis of a claim of economic duress. International Underwater Contractors, Inc. v. New England Rel. & Tel. Co., supra at 342; Delaney v. Chief of

23

withdrew its demand and extended the maturity date of the Note until July 31, 1995, at which time the entire remaining balance of the Note would become absolutely due and payable without notice. Citizens also agreed to subordinate its second mortgage position on 1095 Commonwealth Avenue to Framingham Savings Bank, enabling Bishay to finance and discharge the debt owed to the FDIC.

In exchange, Bishay agreed to pay down the outstanding principal by an amount of not less than one million dollars on or before January 31, 1995, to pay a $10,000 forbearance fee, and to pay the $5,314.85 in legal fees Citizens had incurred in connection with the Note, as well as any legal fees and expenses incurred by Citizens from July 1, 1994 forward. Further, Bishay agreed to pledge additional collateral to secure the Note, including among other things, an unlimited guaranty from Massachusetts Auto Group, Ltd. d/b/a Bishay Isuzu, the Auto Exchange, and the Commonwealth Avenue Corp. dated September 16, 1994 (the 1994 Guaranty). In addition, Bishay Motors pledged as collateral fifteen antique automobiles. The Forbearance Agreement further provided that:

> upon the happening of an event of default under any of the documents securing the Note, including, but not limited to, (a) failure to pay when due any installment of principal or interest which failure continues for fifteen (15) days after receipt of monthly bill or (b) upon the failure to observe or perform any of the agreements contained in this letter which failure continues for five (5) days after written notice from Citizens, all amounts outstanding under the Note and this letter shall be immediately due and payable in full. . .

> You hereby waive, release and forever discharge Citizens and Neworld Bank, and each of their employees, officers, directors, and agents (collectively the "Banks") from any and all claims, suits, actions or liabilities of any kind which you, Bishay Motors, or any

8

must show that he has been the victim of a wrongful or unlawful act or threat, which has deprived him of his unfettered will, compelling him to make a disproportionate exchange of values. International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 8 Mass. App. Ct. 340, 342 (1979); Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398, 406, rev. den., 405 Mass. 1204 (1989). Alternatively, a party may establish economic duress by showing that he involuntarily accepted the terms of the other party, under circumstances which permitted no other alternative, and that said circumstances were the result of coercive acts by the other party. International Underwater Contractors, Inc. v. New England Rel. & Tel. Co., supra at 342. It is well established that merely taking advantage of another's financial difficulty is not economic duress. Further, doing or threatening to do that which one has a legal right to do cannot form the basis of a claim of economic duress. Id.; Delaney v. Chief of Police of Wareham, supra at 407. Rather, the plaintiff must show that the defendant's wrongful and oppressive conduct created the plaintiff's financial difficulties, which the defendant then took advantage of. International Underwater Contractors, Inc. v. New England Rel. & Tel. Co., supra at 342.

In the present case, Bishay contends that Citizens committed numerous wrongful acts which left him with no alternative but to agree to Citizens' demand that he make a disproportionate exchange of value in the September 16, 1994 Forbearance Agreement: the assignment of $18 million in additional collateral to secure an

22

entity controlled by you have arising out of relating to your or their relationships with the Banks arising prior to the date hereof including, without limitation, any allegation that Citizens dealt improperly with respect to the Commonwealth Avenue property.

Bishay failed to make the monthly debt service payments under the Note and further failed to pay the one million dollars as required by the Forbearance Agreement. On February 8, 1995, Citizens amended the Forbearance Agreement to reduce the attorneys fees owed to $25,000 and extend the $1,000,0000 principal payment obligation to April 30, 1995 in exchange for an extension fee of $5,000 and payment of $75,000 from the sale of Bishay's Beacon Street property. In March of 1995, Bishay sold 14 residential lots in Walpole and used the proceeds to pay $759,358.45 to Citizens in partial compliance of his principal paydown obligation. However, he made no further payments. On April 20, 1995, Citizens requested that Bishay liquidate or refinance certain of his assets and use the proceeds to pay down his debt, but Bishay refused. The following week, Citizens demanded that he turn over possession of the antique automobiles for sale by Citizens. Bishay refused to turn over the automobiles, inform Citizens of the location of the automobiles, or voluntarily sell the automobiles himself. Thereafter, by certified letter dated May 3, 1995, Citizens accelerated the Note and made demand on Bishay and all other guarantors for immediate payment of all sums due under the Note and related agreements. However, Bishay failed to repay the loan and refused several offers by Citizens to forbear legal action in exchange for Bishay's voluntary liquidation of various collateral

9

Court further concludes that the Bankruptcy Court Order expressly reserves Counts III and VI for post-confirmation adjudication in the present Superior Court action.

## B. General Release

Citizens next contends that Count III and most of Count VI of the amended counterclaim are nonetheless barred by the general release contained in the parties' September 16, 1994 Forbearance Agreement. Paragraph 14 of the Agreement provides:

> Lender Liability. You hereby waive, release and forever discharge Citizens and Neworld Bank, and each of their employees, officers, directors, and agents (collectively the "Banks") from any and all claims, suits, actions or liabilities of any kind which you, Bishay Motors, or any entity controlled by you have arising out of relating to your or their relationships with the Banks arising prior to the date hereof including, without limitation, any allegation that Citizens dealt improperly with respect to the Commonwealth Avenue property.

Citizens contends that this release serves as a defense not only to Count III, which alleges that Citizens interfered with Bishay's relations with the FDIC and other entities concerning the 1095 Commonwealth Ave. property, but also to all allegations in Count VI concerning events occurring prior to September 16, 1994.[11] Bishay argues, however, that the entire Forbearance Agreement, including the release, is not binding on him because he signed it under economic duress.

To avoid a contract on the basis of economic duress, a party

_____

[11]This would include subsections a, b, c, d, e, g, h and i of Count IV. Subsections f, j, k, l and m concern events occurring after 9/16/94.

21

to pay down the loan and execution of a general release with respect to any and all claims against Citizens.

Accordingly, on June 9, 1995, Citizens commenced this action alleging in Counts I and II that Bishay breached the Note and Credit Agreement and the Forbearance Agreement; alleging in Counts III, IV and V that Bishay Motors, Old Post Trust and Commonwealth Trust breached their respective Guaranties; alleging in Count VI that Bishay Motors breached the Forbearance Agreement; and alleging in Count VII that Auto Exchange, Bishay Isuzu and Commonwealth Ave. Corp. breached the 1994 Guaranty. Citizens' complaint sought all amounts due under the Note and Credit Agreement, including attorneys fees and all other costs of collection. In response, Bishay filed two counterclaims against Citizens alleging breach of the obligation of good faith and fair dealing and a violation of General Laws Chapter 93A.

Shortly thereafter, on July 25, 1995, Commonwealth Ave. Corp. filed a voluntary Chapter 11 petition in the Bankruptcy Court[5] and on September 19th, Bishay individually filed a voluntary Chapter 11 petition.[6]  On April 23, 1996, following a two-day hearing, the Bankruptcy Court (Kenner, J.) issued a Confirmation Order in both bankruptcies over Bishay's objections confirming a Chapter 11 plan of reorganization proposed by Citizens. The plan required Bishay to pay in full Citizens' claim for principal in the amount of $1,582,315.11 and accrued pre-petition interest of $26,795.21 on or

---

[5]U.S. Bankruptcy Docket #95-15015-CJK.

[6]U.S. Bankruptcy Docket #95-16331.

Agreement are extortionate in violation of public policy and are thus null and void, as well as an order requiring Citizens to disgorge all payments made thereunder. These claims in essence seek to litigate the validity of the Note and Forbearance Agreement. However, in allowing Citizens' claim in full and ordering Bishay and 1095 Commonwealth Ave. Corp. to repay the obligation incurred pursuant to the Note and related instruments, the Bankruptcy Court necessarily determined that these agreements were valid and enforceable. The issues which Bishay seeks to raise in Counts I, II, IV and V of the amended counterclaim were essential to the final and binding judgment entered in the bankruptcy proceeding, and to interpret the plan's reservation as encompassing such claims would eviscerate the finality of the confirmed plan.

Finally, although Count V of the amended counterclaim alleges an independent claim in the nature of a set-off, that Citizens intentionally inflicted emotional distress on Bishay with respect to the entire loan transaction, such a claim is now barred by the final Confirmation Order because the reorganization plan's express reservation fails to specifically identify an emotional distress claim as reserved for post-confirmation litigation. Hence, this Court concludes that the Bankruptcy Court's April 23, 1996 Confirmation Order constitutes res judicata as to Counts I, II, IV and V of Bishay's amended counterclaim, precluding relitigation of the claims and issues therein. Accordingly, Citizens is entitled to judgment as a matter of law on those Counts. However, this

20

before December 27, 1996, plus any post-petition interest, attorneys' fees and collection charges as the court may allow.

Under the Note and related agreements, Citizens was entitled to its costs of collection, including attorneys' fees. However, a dispute arose between Citizens and Bishay over the nature of the billing arrangement between Citizens and its counsel, Brown, Rudnick, Freed & Gesmer (BRFG). Citizens had repeatedly represented to the Bankruptcy Court that BRFG billed its regular hourly rates for the enforcement and collection of Bishay's loan. During the course of the bankruptcy proceedings, however, Bishay discovered that Citizens had failed to disclose a billing arrangement whereby BRFG would charge Citizens a blended hourly rate unless the debtor at issue had the assets to pay the fees, in which case BRFG would charge its higher standard hourly rate.

On July 10, 1996, the Bankruptcy Court (Kenner, J.) held a hearing on Citizens' fee application. The Court found that Citizens had misrepresented the billing agreement between itself and BRFG and that one Citizens' officer, Steven Mastrovich, had intentionally deceived the Court as to the agreement. Citizens voluntarily agreed to reduce the fees sought to charge the lower blended rate, and to further reduce the award to account for duplicative entries in the billing records, resulting in a $21,692.50 reduction in the fees sought. Accordingly, the Court awarded Citizens $204,936.01 in fees and expenses and $11,175 for appraisal expenses. In addition, the Court entered a sanction against Citizens in the amount of the reasonable attorneys fees

11

Citizens argues, however, that the language permitting Bishay and 1095 Commonwealth Ave. Corp. to assert "their alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters" constitutes a blanket reservation insufficient to preserve the remaining four counts of the amended counterclaim for post-confirmation adjudication. This argument is amply supported by the relevant case law, which requires express and specific identification of the individual causes of action reserved. See D&K Properties Crystal Lake v. Mutual Life Ins., supra at 261; In re Kelly, supra at 703-704. The language of the reservation in the reorganization plan is far too broad and vague to prevent the Confirmation Order from constituting res judicata as to all claims other than the two specific claims pending in Superior Court at the time of the Order.

Moreover, this result is supported by the strong policy of finality inherent in the bankruptcy reorganization process. In contrast to Bishay's original two counterclaims, the additional counts are in the nature of defenses to Bishay's obligation to repay the debt owing to Citizens. Count I of the amended counterclaim asserts that Citizens committed numerous breaches of its express and implied duties under the Note and Forbearance Agreement; Count II asserts that Citizens is estopped from treating the Note as a demand obligation and collecting the full amount; and Count IV seeks a declaratory judgment that the Note and Forbearance

---

present litigation, Norfolk Superior Court Action No. 95-1312A.

incurred by Bishay in litigating the blended-rate agreement issue, and denied Citizens future reimbursement for the time spent in conjunction with applying for fees and costs under the Note.

In the present Superior Court action, Citizens filed a motion to dismiss Bishay's two-count counterclaim in June of 1996, while the bankruptcy case was still pending, and in response, Bishay sought leave to file an amended answer and counterclaim.   On November 8, 1996, this Court (White, J.) allowed Bishay to amend his counterclaim and denied Citizens' motion for summary judgment without prejudice to renew it as to the amended answer and counterclaim.   Count I of Bishay's amended counterclaim alleges breach of good faith and fair dealing, Count II alleges promissory estoppel, and Count III alleges intentional interference with contractual and advantageous relations. Count IV seeks declaratory relief with respect to the validity of the Forbearance Agreement. Finally, Count V alleges intentional infliction of emotional distress and Count VI alleges numerous violations of General Laws Chapter 93A.

Citizens now moves for partial summary judgment on all of Bishay's amended counterclaims on the ground that said claims are barred by the doctrine of res judicata and in any event, fail to state claims upon which relief can be granted. Bishay has filed a cross-motion for partial summary judgment on his counterclaims and alternatively, to eliminate the bond requirement for any attorneys fees which may be incurred by Citizens in defending against said counterclaims.

12

432-434 (Bank. S.D.N.Y. 1993) (holding that res judicata did not bar post-confirmation litigation where confirmed plan expressly stated that creditors had right to assert, settle, compromise or abandon those claims or causes of action listed on "schedule 9 hereto" and schedule identified specific causes of action, both pending and contemplated, against particular parties).

At the time the Bankruptcy Court confirmed the reorganization plan in the present case, Bishay's counterclaim against Citizens in this Superior Court action asserted only two claims. Count I alleged that Citizens breached its duty of good faith and fair dealing by refusing to subordinate its mortgage on the 1095 Commonwealth Ave. property to a new mortgage loan by Framingham Savings Bank until Bishay agreed to certain terms, including a release of all claims against the bank. Count II further alleged that Citizens' conduct with respect to the subordination of its mortgage constituted an unfair trade practice in violation of Chapter 93A. These two claims, which are restated as Counts III and VI of Bishay's amended counterclaim, do not go to the validity of the loan obligation owed to Citizens but rather, constitute independent claims which could be characterized as a set-off to Bishay's debt. Citizens thus concedes that the Bankruptcy Court intended these two claims to survive the final confirmation order.[10]

---

[10]This result is confirmed by the fact that on September 4, 1996, the Bankruptcy Court (Kenner, J.) allowed a joint motion by Bishay and the Consummation Agent to appoint Bishay as the representative of the debtors' estates and to authorize him to employ the firm Brown & Stadfeld as special counsel to pursue the

18

## DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. <u>Community Nat'l. Bank</u> v. <u>Dawes</u>, 369 Mass. 550, 553 (1976); <u>Cassesso</u> v. <u>Commissioner of Correction</u>, 390 Mass. 419, 422 (1983); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. <u>Pederson</u> v. <u>Time, Inc.</u>, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. <u>Kourouvacilis</u> v. <u>General Motors Corp.</u>, 410 Mass. 706, 716 (1991); <u>Flesner</u> v. <u>Technical Communications Corp.</u>, 410 Mass. 805, 809 (1991).

## I. CITIZENS' MOTION FOR SUMMARY JUDGMENT

### A. Res Judicata

Citizens first contends that it is entitled to judgment as a matter of law on the ground that most of Bishay's counterclaims are precluded by the Bankruptcy Court's April 23, 1996 Confirmation Order. The doctrine of prior adjudication[7] has two aspects. Res

---

[7]The doctrine of prior adjudication is founded on the necessity for finality in litigation. Public policy considerations of fairness and judicial efficiency dictate that there be an end to litigation, that those who have contested an issue shall be bound by the result of the contest, and that

the confirmed plan expressly reserves the debtor's right to litigate post-confirmation claims. D&K Properties Crystal Lake v. Mutual Life Ins., supra at 261; In re Kelly, 199 B.R. 698, 703 (9th Cir. BAP 1996). See also In re DiBerto, supra at 474-475. However, any reservation of a debtor's right to pursue rights and remedies outside of the bankruptcy proceeding must specifically identify the cause of action reserved. "[A] blanket reservation that seeks to reserve all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan." D&K Properties Crystal Lake v. Mutual Life Ins., supra at 261.

Thus, language in a confirmation plan that the disbursing agent "shall enforce all causes of action existing in favor of the Debtor" was insufficient to reserve the debtor's claim that a creditor breached its financing contract by raising the interest rate in bad faith. Id. Similarly, language in a confirmed plan which stated "Within thirty days of the Plan Confirmation, the Debtor shall initiate adversary proceedings to contest the amount, allowability, priority and/or secured status of any claims which the Debtor believe are not proper. The Debtors may at the same time bring any counter-claims that they believe proper against any creditors asserting claims" failed to reserve the debtor's counterclaims for improper modification of the underlying obligation and improper disposal of collateral. In re Kelly, supra at 703-704. Compare In re Hooker Investments, Inc., 162 B.R. 426,

17

judicata, or claim preclusion, dictates that a valid and final judgment rendered by a court of competent jurisdiction bars relitigation between the same parties of any claim that was or might have been raised with respect to the subject matter of the prior litigation. <u>Willett</u> v. <u>Webster</u>, 337 Mass. 98, 102 (1958); <u>Wright Machine Corp.</u> v. <u>Seaman-Andwall Corp.</u>, 364 Mass. 683, 688 (1974). Collateral estoppel, or issue preclusion, prevents a party from relitigating a factual or legal issue which was actually decided and essential to a valid and final judgment in prior litigation between the parties. <u>Boyd</u> v. <u>Jamaica Plain Cooperative Bank</u>, 7 Mass. App. Ct. 153, 159-160 (1979); <u>In re Markarian</u>, 298 B.R. 249, 251 (1st Cir. B.A.P. 1997). An issue may be actually litigated and resolved even if it is not explicitly decided as long as it is logically or practically necessary to the court's final decision. <u>Grella</u> v. <u>Salem Five Cent Sav. Bank</u>, 42 F.3d 26, 31 (1st. Cir. 1994); <u>Keystone Shipping Co.</u> v. <u>New England Power Co.</u>, 109 F.3d 46, 52 (1st Cir. 1997).

Citizens contends that Bishay's counterclaims allege either defenses to repayment of the Note or wrongful conduct by the bank in connection with negotiating and enforcing the Note and as such, are precluded by the April 23, 1996 Confirmation Order of the Bankruptcy Court, which allowed Citizens' claim for repayment of the Note in full. It is well established that the normal rules of res judicata and collateral estoppel apply to the decisions of the

---

matters once tried shall be considered forever settled as between the parties. <u>Wright Machine Corp.</u> v. <u>Seaman-Andwall Corp.</u>, 364 Mass. 683, 688 (1974).

14

(1938); <u>Matter of Baudoin</u>, 981 F.2d 736, 739 (5th Cir. 1993); <u>In re</u>

<u>DiBerto</u>, 171 B.R. 461, 471-472 (Bank. N.H. 1994).

Nonetheless, Bishay relies on explicit language in the

reorganization plan in arguing that the Bankruptcy Court's April

23, 1996 Confirmation Order does not preclude his counterclaims in

the present action.    The reorganization plan provides in relevant

part:

> The Class One Claim[9] is impaired . . . The Debtors'
> estates may retain and, by its duly authorized
> representative(s) settle, release or prosecute, their
> alleged claims against Citizens arising from the
> transactions between the Debtors and Citizens and
> related matters (the "Alleged Claims").   However, the
> Alleged Claims, until and unless reduced by Final Order
> to a judgment against Citizens, shall not reduce, delay
> or otherwise interfere with the timely and full
> satisfaction of Citizens' Class One Claim in accordance
> with this Plan.   In addition, until Citizens actually
> receives . . . a release from (and evidence of dismissal
> with prejudice of) all Alleged Claims, Citizens shall
> retain its lien on all Estate Assets not disposed of in
> accordance with this Plan as security for Citizens'
> contractual right to reimbursement from the Debtors
> for Citizens' costs and anticipated costs of defending
> the Alleged Claim.

Under a generally accepted exception to the res judicata doctrine,

a party's claims are not precluded by a prior action if the court

in that action expressly reserves those claims for later

adjudication. <u>Apparel Art Intern.</u> v. <u>Amertex Enterprises</u>, 48 F.3d

576, 586 (1st Cir. 1995); <u>D&K Properties Crystal Lake</u> v. <u>Mutual</u>

<u>Life Ins.</u>, 112 F.3d 257, 260 (7th Cir. 1997).   Thus, a bankruptcy

court order confirming a reorganization plan will not bar the

debtor from asserting a cause of action against the creditor where

---

[9]Pursuant to Article III of the plan, "<u>Class One</u>, consist[s]
of the secured claim of Citizens Bank of Massachusetts."

bankruptcy courts. Katchen v. Landy, 382 U.S. 323, 324 (1966):
F.D.I.C. v. Shearson-American Exp., Inc., 996 F.2d 493, 497 (1st
Cir. 1993), cert. den., 510 U.S. 1111 (1994).  Final orders of the
bankruptcy court are res judicata as to all matters that were or
could have been litigated before the bankruptcy court.[8]  Chicot
County Drainage District v. Baxter State Bank, 308 U.S. 371, 377
(1940); A. Musto Co., Inc. v. Satran, 477 F. Supp. 1172, 1176-1177
(D. Mass. 1979) (holding that plaintiff's action for damages
against former trustee in bankruptcy for breach of fiduciary duty
was barred by prior proceedings in the bankruptcy court dismissing
with prejudice the debtor's petition for removal of the trustee).
See also O'Donoghue v. Manning, 331 Mass. 23, 24 (1954) (holding
that a suit in equity to establish plaintiff's title to land based
on a deed from the trustee in bankruptcy of a former owner was
barred by the determination of the bankruptcy court in a prior
proceeding that the trustee had no title).

The application of res judicata to a bankruptcy court order
confirming a Chapter 11 reorganization plan generally bars later
proceedings on all claims and issues concerning the debtor-creditor
relationship that were actually raised during the confirmation
process as well as those that could have been raised during said
process, thus supporting the strong policy of finality in
bankruptcy reorganization. Stoll v. Gottlieb, 305 U.S. 165, 172

---

[8]The res judicata effect of an order of a bankruptcy court,
a federal tribunal, is governed by federal preclusion principles.
Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir.
1995). However, Massachusetts and the federal courts apply the
same tests for res judicata and collateral estoppel.

15

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 95-1312A

CITIZENS BANK OF MASSACHUSETTS,
Plaintiff,

vs.

BAHIG BISHAY[1] & others[2],
Defendants.

MEMORANDUM OF DECISION AND ORDER ON
PARTIES' CROSS-MOTIONS FOR RECONSIDERATION

INTRODUCTION

The plaintiff, Citizens Bank of Massachusetts (Citizens), brought this action in an attempt to recover more than $1.5 million owed by defendant Bahig Bishay and various trusts and corporations controlled by him under a defaulted promissory note. This debt has since been repaid as a result of a Chapter 11 plan confirmed by the Bankruptcy Court on April 23, 1996. However, numerous counterclaims by Bishay against Citizens remain pending in this action. In a Memorandum of Decision and Order dated November 24, 1997 and filed December 1, 1997, this Court granted Citizens' motion for summary judgment on the vast majority of Bishay's amended counterclaim and denied Bishay's cross-motion for partial summary judgment. This matter is now before the court on the parties' cross-motions for reconsideration pursuant to Super. Ct.

_____

[1]Individually and as Trustee of Old Post Realty Trust.

[2]Commonwealth Realty Trust, Bishay Motors & Leasing, Inc. f/k/a Bishay Motors, Inc., Massachusetts Auto Group, Ltd., and 1095 Commonwealth Ave. Corp.

## 3399

### ORDER

For the foregoing reasons, it is hereby **ORDERED** that Citizen Bank's renewed motion for reconsideration be **ALLOWED**. Upon reconsideration, it is **ORDERED** that Citizen Bank's motion for summary judgment on the remainder of Count VI of the amended counterclaim be **ALLOWED**.

It is further **ORDERED** that the defendants' renewed motion for reconsideration be **DENIED**.

_____
Gordon L. Doerfer
Justice of the Superior Court

DATED: October *16*, 1998

A TRUE COPY
Attest: _____
Deputy Assistant Clerk

11

R. 9D. For the reasons discussed below, Citizens' motion for reconsideration is <u>ALLOWED</u>. Further, the defendants' cross-motion for reconsideration is <u>DENIED</u>.

## DISCUSSION

### I. BISHAY'S MOTION FOR RECONSIDERATION

In its November 24, 1997 Memorandum of Decision and Order, this Court granted Citizens summary judgment on Counts I, II, IV and V of Bishay's amended counterclaim on the ground that the Bankruptcy Court's April 23, 1996 Confirmation Order in the Chapter 11 bankruptcy proceedings constituted res judicata as to those claims. This Court further granted Citizens summary judgment on Count III and subparts a, b, c, d, e, g, h and i of Count VI of the amended counterclaim on the ground that a valid and binding general release in the parties' September 16, 1994 Forbearance Agreement precluded Bishay from asserting any claims against Citizens arising from the parties' relationship prior to that date.

Bishay now asks this Court to reconsider those rulings, urging this Court to reinstate Count III of the amended counterclaim and to further hold that the broad reservation in the Chapter 11 Reorganization Plan (the Plan) permits the post-bankruptcy litigation of all other counts of the amended counterclaim not affected by the September 16, 1994 release. Bishay first argues that this Court erred in awarding summary judgment on Count III of the amended counterclaim based on the general release in the parties' Forbearance Agreement because the majority of Count III contains allegations of misconduct alleged to have occurred after

3398

Nonetheless, in his answers to interrogatories, Bishay claims $100,000,000 in damages from Citizens' unfair and deceptive practices, which he proceeds to itemize. In addition, he has introduced the affidavit of Howard Gordon, an expert specializing in business valuation and business damages calculations, stating that Bishay's various businesses sustained losses in excess of 90 million dollars due to Citizens' wrongful actions. Bishay seeks to recover these damages in connection with his remaining Chapter 93A claims on the theory that because Citizens wanted to collect excessive fees under the improper dual billing arrangement, it refused repayment of Bishay's loan in November of 1995 and refused to release the collateral for the loan, preventing Bishay from undertaking various business opportunities, forcing him into bankruptcy, and resulting in $10,000 in costs in the bankruptcy proceedings and lost business profits of $94,000,000.

It is well established that in the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery under G.L. c. 93A, § 11. Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 730 (1989). On the record before this Court, Bishay has no reasonable expectation of demonstrating that the millions of dollars of damages he alleges were caused by Citizens' entry into and attempted enforcement of the dual billing arrangement at issue. Accordingly, this Court concludes that Citizens is entitled to summary judgment on Subparts f and k of Count VI of Bishay's amended counterclaim.

10

September 16, 1994.

Bishay overlooks the fact that in determining that Count III was reserved for post-confirmation litigation by the Bankruptcy Court, this Court also determined that any such claim was limited to the allegations as they stood before the Bankruptcy Court when the Plan was confirmed.    At that time, Bishay's counterclaim against Citizens in the present Superior Court action alleged in Count I that Citizens breached its duty of good faith and fair dealing by interfering in the FDIC matter and by refusing to subordinate its mortgage on the 1095 Commonwealth Ave. property. Liability for this conduct is barred by the general release in the September 16, 1994 Forbearance Agreement.  Bishay has now submitted a document which he contends was filed by the parties with the Bankruptcy Court on August 26, 1996: a Joint Stipulation of the Parties Relating to Requested Protective Order that Discovery Not Be Had, to which is appended several exhibits, including Bishay's proposed amended counterclaim in this Superior Court action. However, this Court notes that the Chapter 11 plan was confirmed by the Bankruptcy Court some four months earlier, on April 23, 1996; indeed, the joint stipulation relied proffered by Bishay concerns the post-confirmation attorneys fees proceedings.

Thus, to the extent that amended Count III alleges interference with contractual relations that Bishay had with parties other than the FDIC, after September 16, 1994, such claims were not part of Bishay's original complaint, were not before the Bankruptcy Court at the time of confirmation, and were not saved for post-bankruptcy

3

# 3397

proving that he suffered some loss of money or property within the meaning of G.L. c. 93A, § 11, summary judgment is appropriate. See <u>Lumbermens Mutual Casualty Co.</u> v. <u>Offices Unlimited, Inc.</u>, 419 Mass. 462, 468-469 (1995) (stating that where no judgment entered against the plaintiff, who therefore never paid out any loss, plaintiff failed to establish damages from insurer's disclaimer of coverage).

In the present case, Bishay challenged the dual billing arrangement in the Bankruptcy Court prior to that court's awarding Citizens any attorneys fees. After an extensive evidentiary hearing, the amount of fees owed by Bishay was reduced to reflect the amount Citizens itself would have paid its attorneys for the work. Moreover, the attorney's fees and expenses Bishay incurred in challenging the dual billing arrangement were set off against the fees he owed Citizens under the loan agreement. Thus, Bishay never expended any money out of his pocket as a result of the existence and attempted enforcement of Citizens' dual billing arrangement. Compare <u>Guenard</u> v. <u>Burke</u>, 387 Mass. 802, 809-810 (1982) (concluding that where attorney unfairly withheld funds from a client under an illegal fee agreement, c. 93A damages were the difference between the withheld funds and the reasonable fee owed the attorney); <u>Doucette</u> v. <u>Kwait</u>, 392 Mass. 915, 916-917 (1984) (concluding that where attorney wrongfully charged a separate fee for services that should have been included under the contingent fee already paid by the client, c. 93A damages were the amount of that fee and interest thereon).

9

litigation by the reservation in the Confirmation Plan. Accordingly, Citizens is entitled to judgment as a matter of law on Count III of the amended complaint, which this Court declines to reinstate.

Bishay next contends that this Court erred in ruling that the blanket reservation contained in the Plan was insufficient to preserve the remaining four counts of the amended counterclaim for post-confirmation adjudication.  This Court concluded that because the reservation failed to expressly identify particular claims or types of actions intended to be preserved, its language[3] was too broad and vague to prevent the Confirmation Order from constituting res judicata as to all claims other than the two specific claims pending in Superior Court at the time of confirmation.   Bishay contends that this Court improperly relied on Illinois and New York cases in concluding that a reservation of a debtor's right to pursue rights and remedies outside of the bankruptcy proceeding must specifically identify or refer to the cause of action intended to be reserved.  Citing Apparel Art International, Inc. v. Amertex Enterprises, 48 F.3d 576 (1st Cir. 1995), Bishay argues that Massachusetts law interprets the "express" nature of a reservation more broadly than other jurisdictions and does not require identification of the particular claims reserved for later adjudication.

---

[3]The reservation referred to preserve "the debtors' alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters (the "Alleged Claims")".

4

# 3396

this is not a case of a party seeking a further hearing on an argument unseasonably raised as a mere afterthought. Rather, in sparing subsections f and k of Count VI from summary judgment, this Court, without input from either party, raised the issue of damages, noting that while any award of actual damages under Chapter 93A would have to account for the fact that Bishay had already been compensated for the attorney's fees incurred in resisting the dual billing agreement in the Bankruptcy Court, Bishay might conceivably be able to establish damages beyond those attorney's fees.

Accordingly, because this Court sua sponte raised the issue of Bishay's ability to prove Chapter 93A damages, it is valid for Citizens in response to now seek to present evidence on this issue. Further, given that the only cause of action remaining in this case is a Chapter 93A claim based on two narrow grounds, it is in the interests of judicial economy to consider the possible resolution of the claim on summary judgment. In doing so, this Court notes that both Citizens and Bishay have extensively briefed the issue of Chapter 93A damages in connection with the present motion.

To prevail on a claim under Chapter 93A, section 11, a plaintiff must have suffered a "loss of money or property." G.L. c. 93A, § 11 (1989). In this context, "money" means money, not time, and "property" means the kind of property that is purchased or leased, not such intangibles as a right to sense of security or peace of mind. Halper v. Demeter, 34 Mass. App. Ct. 299, 304 (1993). Where the plaintiff fails to satisfy his burden of

8

In <u>Apparel Art International, Inc.</u>, the plaintiff subcontractor, who had been awarded $387,994 against the defendant contractor during arbitration before the AAA, filed an action in U.S. District Court (Suit #1) to enforce the arbitration award pursuant to the Federal Arbitration Act. 48 F.3d at 579. After confirming the award and entering judgment in plaintiff's favor, the court permitted the plaintiff to conduct post-judgment discovery in supplemental proceedings so that it could execute its judgment. During said discovery, the plaintiff learned of numerous asset transfers by the defendant to a company which the plaintiff believed had been created to defraud the defendant's creditors. <u>Id</u>. While these proceedings were ongoing, the plaintiff filed a separate suit in U.S. District Court (Suit #2) alleging RICO, fraudulent conveyance and alter ego claims against the defendant. <u>Id</u>. at 580. The District Court dismissed the fraudulent conveyance and related claims, stating:

> Essentially, the fraudulent transfer claim is merely one aspect of plaintiff's attempt at collection of the judgment issued in [Suit #1]. Since plaintiff has already begun that process in [Suit #1], we cannot entertain these claims again here without a real risk of allowing multiple judgments to issue for the same harm . . . The dismissal is without prejudice to any legitimate execution of judgment motions which the plaintiff may seek to file [in the supplementary proceedings in Case #1]. <u>Id</u>. at 586.

In concluding that the plaintiff could assert claims for fraudulent conveyance, depletion of corporate assets, and alter ego in the supplementary proceedings, the First Circuit held that Suit #2 did not bar such claims under the doctrine of res judicata because the

5

## 3395

the claims at issue.[6]  Accordingly, Bishay's renewed motion for reconsideration is <u>DENIED</u> in all respects.[7]

## II. CITIZENS' MOTION FOR RECONSIDERATION

Citizens now urges this Court to reconsider its denial of summary judgment on Bishay's remaining claims, subsections f and k of Count VI, on the ground that Bishay has no reasonable expectation of proving actual damages under Chapter 93A.  While Citizens did not argue the absence of Chapter 93A damages in either its original summary judgment motion or motion for consideration,

---

[6]/Moreover, an examination of the merits reveals that Fish's testimony is inadequate to establish the ulterior motive required to prevail on an abuse of process claim. Fish states in his deposition that hundreds of Citizens Bank employees were on an incentified pay plan tied to the performance of the bank. Although Fish agreed that employees in the special assets group would qualify for participation in the pay plan, he stated that he lacked any knowledge as to whether particular members of the assets group actually received incentive pay.  Finally, he admitted that for members of the special asset group on the incentified pay plan, the quality of the assets held by the bank, including loans collected, would affect the incentive pay received.  Bishay's theory is that Citizens' actions with respect to his loan were driven by employees' ulterior motive of obtaining "secret incentive bonuses," because the more fees and expenses the Bank recovered in connection with Bishay's loan, the bigger the bonuses for employees.  Insofar as all loan collection proceedings seek to recover money, the desire to increase the bank's wealth cannot constitute an ulterior motive. Further, Bishay has failed to produce any evidence that the individuals involved in handling his loan in fact received any incentive pay connected therewith.

[7]/Needless to say, this Court also denies Bishay's requests, contained in his opposition to Citizens' renewed motion for reconsideration, to allow him leave to amend his counterclaim to include a separate count for abuse of process, and to grant further discovery pursuant to Mass. R. Civ. P. 56(f).

District Court in Suit #2 had expressly reserved the plaintiff's right to litigate those claims in a later action. Id.

Bishay's argument that Apparel Art International, Inc. demonstrates that the First Circuit requires a less specific reservation than other jurisdictions in order to exempt a claim from the application of res judicata is simply without merit. The District Court's reservation of "any legitimate execution of judgment motions which the plaintiff may seek to file [in the supplementary proceedings in Case #1]" specifically identified the claims which were reserved: those relating to the defendant's attempt to avoid the arbitration judgment. The First Circuit did not interpret the reservation broadly, as Bishay seeks to do here, to preserve any claim the plaintiff might have against the defendant arising out of their contractual relationship. Rather, the claims the plaintiff was allowed to bring in the supplemental proceeding were the very ones pending before the District Court when it made the reservation. Thus, the holding in Apparel Art International, Inc. is consistent with those cases in other jurisdictions rejecting blanket reservations in bankruptcy confirmation plans and requiring that the claims to be reserved for later adjudication be expressly identified. Accordingly, this Court declines to alter its ruling that the language in the Plan permitting Bishay and 1095 Commonwealth Ave. Corp. to assert "their alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters" reserved only the two claims pending in Superior Court at the time of the

6

## 3394

the merits of Bishay's claims in his renewed motion for reconsideration or to reinstate Counts I, II, III, IV, V and subsection j of Count VI of the amended counterclaim.

Finally, Bishay asks this Court to reconsider its determination that he failed to demonstrate some ulterior motive for Citizens' legal efforts to collect on the defaulted loan, which would raise a genuine issue of fact with respect to an abuse of process claim.    Bishay asserts that information revealed in the June 1998 deposition of Citizens Financial Group Chairman Larry Fish[5] supplies an ulterior motive, such that subsections j, l and m of Count VI should be reinstated.    Further, according to Bishay, "important discovery concerning the profit that Citizens could make from foreclosure on the Bishay loans was only produced by Citizens on August 27, 1998."    Bishay does not explain why he was unable to muster this information in support of either the original motion for summary judgment or his motion for reconsideration.    The docket does not reflect that Bishay ever moved pursuant to Mass. R. Civ. P. 56(f) for additional time to conduct discovery necessary to oppose Citizens' motion for summary judgment.    This Court does not consider the belated presentation of Fish's testimony to be a material change in circumstances warranting a reconsideration of

_____

Clause in the April 23, 1996 Confirmed Plan of Reorganization, Nunc Pro Tunc, And Declare That The Alleged Claims of the Debtor Are Non-Core."  The Bankruptcy Court denied this motion, and Bishay's appeal to the Bankruptcy Appellate Panel of the First Circuit is now pending.

[5]/Until 1997, Fish was also a Director of Citizens Bank.

6

reservation, and failed to specifically reserve the additional claims later asserted in Bishay's amended complaint.    Bishay's motion for reconsideration is therefore <u>DENIED</u>.

## II. CITIZENS' MOTION FOR RECONSIDERATION

Citizens urges this Court to reconsider its denial of summary judgment on subparts f, j, k, l and m of Count VI, asserting that although such claims were not encompassed in the parties' general release, they are nonetheless barred by principles of either res judicata or absolute privilege.    Subpart j of Bishay's amended counterclaim alleges that Citizens violated Chapter 93A by causing a false independent appraisal of the 1095 Commonwealth Avenue property.    Subpart f alleges that Citizens violated Chapter 93A by attempting to collect reimbursement for legal fees under the dual billing agreement with its counsel, Brown, Rudnick, Freed & Gesmer. Subpart k further alleges that Citizens violated Chapter 93A by entering into the dual billing agreement, and by submitting false time entries and a false fee petition to the Bankruptcy Court. Citizens contends that these three claims are barred by the res judicata effect of the Bankruptcy Court's January 21, 1997 decision awarding attorney's fees pursuant to 11 U.S.C. § 506(b).

In that decision, the Bankruptcy Court addressed the impropriety of the appraisal at issue as follows:

> Debtors cite "impropriety in the preparation and use of the appraisals, as demonstrated by the testimony elicited at the evidentiary hearing held on April 18, 1996." The Court has reviewed the testimony from that hearing. The testimony on appraisal issues was lengthy and touched on a number of distinct appraisal-related issues; and it

7

3393

the legal question of the proper scope of the reservation and indeed, considerations of judicial economy militate against such action. Compare <u>Hurley</u> v. <u>Berkshire Design Group</u>, Civil No. 92-3275B (Mass. Super. Ct. April 26, 1994) (Toomey, J.); <u>Flores</u> v. <u>Metropolitan Dist. Com'n</u>, Civil No. 92-4265 (Mass. Super. Ct. March 9, 1995) (McDaniel, J.); (allowing motions for reconsideration based on new case law not existing at the time of the prior summary judgment motions).

In addition, Bishay contends, for the first time, that the confirmation of the Chapter 11 plan does not constitute res judicata as to his counterclaims against Citizens because said claims were "non-core" to the bankruptcy proceeding and thus could not have been adjudicated in that forum.    Bishay never even intimated this argument in either the original motion for summary or the first motion for reconsideration.  Following a decision of this Court, a party has no right to a rehearing, and a question of law not seasonably raised cannot be revived by the simple expedient of bringing it forward and demanding a second ruling. <u>Peterson</u> v. <u>Hopson</u>, <u>supra</u> at 599-600. See also <u>Diversified Mortgage Investors</u> v. <u>Viking General Corp.</u>, 16 Mass. App. Ct. 142, 151 (1983).    This Court will not now entertain Bishay's "non-core" argument, given his failure to raise the issue in connection with either the original summary judgment or the cross-motions for reconsideration.[4]    Accordingly, this Court declines to consider

---

[4]/This Court notes that following its decision on the parties' cross-motions for reconsideration, Bishay filed with the Bankruptcy Court a "Motion to Clarify and Amend the Reservation

5

pertained to only one of the ten appraisals for which
compensation is now being sought.  The Debtors do not
identify or cite the specific testimony on which they
rely. They offer no argument as to why the alleged
improprieties warrant denial of the appraisal fees.  Nor
do they even identify the improprieties they have in
mind.  In short, the Debtors have not articulated this
objection in sufficient detail to permit either Citizens
or the Court to understand, respond to, and adjudicate
the substance of their objection.  The compensation
sought for these appraisals is reasonable and will be
allowed in the amount requested.

Given the extensive hearing held by the Bankruptcy Court on the

issue of the allegedly improper appraisal, that court's

determination that Bishay had failed to clearly articulate a basis

on which the court could find said appraisal to be wrongful, and

the court's award of the appraisal fee to Citizens, this Court

concludes that Bishay is barred from now relitigating the propriety

of the appraisal fee in the form of an action under Chapter 93A.

Accordingly, Citizens is correct that the doctrine of res judicata

entitles it to judgment as a matter of law on subpart j on Count

VI.

    With respect to subparts f and k, the Bankruptcy Court noted

in its decision that in opposing Citizens' application for fees,

"the Debtors argue that the dual billing system violates all

notions of good faith and fair dealing and constitutes an unfair

and deceptive practice in violation of Massachusetts G.L. c. 93A."

The Court ultimately concluded that the dual billing agreement,

properly construed, was not illegal or void as against public

policy; that with the exception of one of its attorneys, Citizens

did not intentionally misrepresent or conceal the dual fee

agreement; and that the appropriate sanction for Citizens'

8

## 3392

these matters, Bishay urges this Court to examine the contents of a sealed envelope, containing supplemental answers to interrogatories dated September 30, 1997, which was filed in connection with Bishay's original summary judgment motion but which was apparently placed directly in the impound safe without ever being reviewed by this Court.   In the interests of justice, this Court has examined the contents of the envelope to determine whether any information contained therein warrants reconsideration of the November 24, 1997 and February 11, 1998 Memoranda of Decision and Order.

This Court carefully considered the proper scope of the reservation in the Chapter 11 plan not only in the initial summary judgment decision but also, in even greater detail, on Bishay's first motion for reconsideration.   That issue having been decided adversely to him on two prior occasions, Bishay now asks this Court yet again to adopt his interpretation of the reservation.   This the court declines to do.   Where there has been no material change in circumstances, a court is not bound to reconsider a case, issue, or question of law once decided. Peterson v. Hopson, 306 Mass. 597, 599 (1940); King v. Globe Newspaper Co., 400 Mass. 705, 707, cert. den., 485 U.S. 940 (1987).   Although the court has the power prior to final judgment to reconsider an interlocutory ruling, such power should be exercised only where there are compelling reasons to do so, and a judge should hesitate to undo his own work. Peterson v. Hopson, supra at 603; King v. Globe Newspaper Co., supra at 707-708.   There is simply no valid reason for this Court to revisit

4

misconduct was to award Bishay his attorneys' fees in pursuing the
issue.  The Bankruptcy Court did not, however, address whether
Citizens' conduct with respect to the fee agreement constituted a
violation of Chapter 93A so as to affirmatively entitle Bishay to
damages under that statute.  Rather, the court merely rejected the
argument that Citizens' conduct was so egregious as to warrant a
total denial of attorneys' fees under the promissory notes.
Moreover, this Court cannot conclude that the Chapter 93A issue was
logically or practically necessary to the Bankruptcy Court's fee
decision, as the court could have decided that regardless of
whether Citizens' conduct constituted a Chapter 93A violation under
state law, a balancing of the equities required that Citizens be
allowed to recover some of its fees.  Thus, this Court declines to
hold that the issue of Citizens' Chapter 93A liability was
implicitly determined by the Bankruptcy Court's January 21, 1997
Order so as to bar litigation of said claim in the present action
based on res judicata.[4]

     Nonetheless, Citizens' contends that its conduct with respect
to the dual billing agreement was privileged.  Massachusetts has
long recognized that statements or other communications made by
parties, counsel or witnesses in the institution or conduct of
litigation are absolutely privileged, even when made maliciously or
in bad faith, provided such statements relate to the judicial

---

[4]It should be noted that because Bishay's claim with respect
to the dual fee agreement is based on post-confirmation conduct
and did not exist at the time of the confirmation proceedings,
the scope of the reservation in the confirmation plan is not at
issue here.

# 3391

practices under Chapter 93A.

With respect to Bishay's cross-motion for reconsideration this Court denied Bishay's request to reinstate Count III of the amended counterclaim. In addition, this Court denied Bishay's request that the court reverse its interpretation of the reservation in the Chapter 11 Reorganization Plan and hold that the reservation permits the post-bankruptcy litigation of all other counts of the amended counterclaim not affected by the September 16, 1994 release.

This matter is again before this Court because in August of 1998, the parties filed renewed cross-motions for reconsideration pursuant to Super. Ct. R. 9D. For the reasons discussed below, Citizens' renewed motion for reconsideration is <u>ALLOWED</u>. Further, the defendants' renewed cross-motion for reconsideration is <u>DENIED</u>.

## DISCUSSION

## I. BISHAY'S RENEWED MOTION FOR RECONSIDERATION

Bishay asks this Court to rescind its previous order that the reservation clause in the Chapter 11 plan was insufficient to preserve his counterclaims for post-bankruptcy litigation, and to reinstate Counts I, II, III, IV, V and subsection j of Count VI of the amended counterclaim. Bishay further asks this Court to find that he can state a claim for abuse of process and accordingly, reinstate subsections j, l and m of Count VI. In connection with

3

proceeding. <u>Theran</u> v. <u>Rokoff</u>, 413 Mass. 590, 591 (1992); <u>Sullivan</u> v. <u>Birmingham</u>, 11 Mass. App. Ct. 359, 361 (1981); <u>Doe</u> v. <u>Nutter, McClennan & Fish</u>, 41 Mass. App. Ct. 137, 140, rev. den., 423 Mass. 1111 (1996).   Moreover, the privilege attached to such statements provides a complete defense not only to a defamation suit but to all theories of civil liability based thereon. <u>Sullivan</u> v. <u>Birmingham</u>, <u>supra</u> at 368; <u>Doe</u> v. <u>Nutter, McClennan & Fish</u>, <u>supra</u> at 140.   Subpart f of Bishay's amended counterclaim alleges that Citizens violated Chapter 93A by attempting to collect reimbursement for legal fees under the dual billing agreement with its counsel, Brown, Rudnick, Freed & Gesmer.   Subpart k further alleges that Citizens violated Chapter 93A by entering into the dual billing agreement, submitting false time entries to the Bankruptcy Court and submitting a false fee petition to the Bankruptcy Court.   Insofar as Subpart k is based on the written and oral statements made by Citizens in the Bankruptcy Court fee proceeding, such statements cannot form the basis of civil liability.   However, the bulk of Subparts f and k are based on Citizens' conduct in entering into a dual billing agreement with its attorney and then attempting to collect from debtors such as Bishay a higher billing rate than the bank itself would have to pay for the same work.   These claims do not involve statements or communications made in the course of litigation and are thus not privileged.   Massachusetts does not recognize the broad immunity for all actions taken by participants in the litigation process urged by Citizens.

10

3390

II, IV and V of Bishay's amended counterclaim on the ground that the Confirmation Order entered in the Chapter 11 bankruptcy proceedings constituted res judicata as to those claims. The Court further granted Citizens summary judgment on Count III and subsections a, b, c, d, e, g, h and i of Count VI of the amended counterclaim on the ground that a valid and binding general release in the parties' September 16, 1994 Forbearance Agreement precluded Bishay from asserting any claims against Citizens arising from the parties' relationship prior to that date. Finally, this Court denied Bishay's cross-motion for summary judgment.

Thereafter, both parties moved this Court for reconsideration of that summary judgment decision. In a Memorandum of Decision and Order dated February 11, 1998, this Court granted Citizens' motion for summary judgment as to Subsections j, l and m of Count VI of the amended counterclaim, on the ground that such claims were based on written and oral statements made to the Bankruptcy Court which were privileged and could not form the basis of civil liability.[3] However, this Court denied the motion as to Subsections f and k of Count VI on the ground that Citizens' entering into the improper dual billing agreement with its attorney and then attempting to collect from debtors such as Bishay a higher billing rate than the bank itself would have to pay could constitute unfair and deceptive

---

[3]/This Court further found that to the extent that the filing of the complaint, the petitions to liquidate Bishay's collateral, and the attorney's fees were not privileged, they nonetheless did not support a Chapter 93A claim based on abuse of process because Bishay had presented no evidence of an improper or ulterior motive for such acts.

2

The question then becomes whether Citizens' conduct with respect to the dual billing agreement can form the substantive basis of a Chapter 93A claim. While it is clear that abuse of process may violate Chapter 93A, Bishay cannot demonstrate such a claim in the present case. <u>Datacomm Interface, Inc.</u> v. <u>Computerworld, Inc.</u>, 396 Mass. 760, 777-779 (1986). Abuse of process presupposes the use of legal action for an ulterior purpose: to achieve some end other than the apparent end of the litigation process which has been initiated. <u>Id.</u> at 775-776; <u>Silvia</u> v. <u>Building Inspector of West Bridgewater</u>, 35 Mass. App. Ct. 451, 453, rev. den., 416 Mass. 1104 (1993). Irrespective of the propriety or impropriety of the dual billing agreement, Citizens had no purpose in petitioning the Bankruptcy Court for fees other than the asserted desire to collect attorney's fees under that agreement. Nonetheless, even where the institution of litigation does not constitute an abuse of process it may, in certain circumstances, constitute an unfair or deceptive practice for purposes of Chapter 93A. See <u>Schubach</u> v. <u>Household Finance Corp.</u>, 375 Mass. 133, 137 (1978) (holding that a company's conduct in filing collection suits in distant venues to increase the chances of obtaining default judgments could be unfair for purposes of Chapter 93A although it was permitted by the venue provisions of G.L. c. 233, § 2 and was not an abuse of process). Bishay has a colorable claim that the mere entering into of the dual billing agreement and attempt to enforce it against creditors could be deemed an unfair and deceptive act. See <u>Guenard</u> v. <u>Burke</u>, 387 Mass.

11

OCT 22 1998    75

## 3389

### COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 95-1312A

CITIZENS BANK OF MASSACHUSETTS,
Plaintiff,

vs.

BAHIG BISHAY[1] & others[2],
Defendants.

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
10-21-98

### MEMORANDUM OF DECISION AND ORDER ON
### PARTIES' RENEWED CROSS-MOTIONS FOR RECONSIDERATION

#### INTRODUCTION

This action originated with a complaint by plaintiff, Citizens Bank of Massachusetts (Citizens), seeking to recover more than $1.5 million owed by defendant Bahig Bishay and various trusts and corporations controlled by him under a defaulted promissory note. That debt was repaid as a result of a Chapter 11 plan confirmed by the Bankruptcy Court on April 23, 1996. However, numerous counterclaims by Bishay against Citizens remained pending in this case. In a Memorandum of Decision and Order dated November 24, 1997, this Court granted Citizens' summary judgment on Counts I,

---

[1] Individually and as Trustee of Old Post Realty Trust.

[2] Commonwealth Realty Trust, Bishay Motors & Leasing, Inc. f/k/a Bishay Motors, Inc., Massachusetts Auto Group, Ltd., and 1095 Commonwealth Ave. Corp.

802, 809 (1982) (holding that an attorney's use of a contingent fee agreement in a divorce case was an unfair and deceptive practice where although the agreement was ultimately not enforced against the plaintiff, the attorney relied on the agreement to retain one third of plaintiff's recovery).

Finally, although the court in awarding actual damages under Chapter 93A must take into account that Bishay has already been compensated for those attorney's fees incurred in resisting the dual billing agreement in the Bankruptcy Court, if the court finds a knowing and wilful violation of Chapter 93A, it is arguable, but this Court does not now rule, that fees from that proceeding could be the basis of multiple damages. See Datacomm Interface, Inc. v. Computerworld, Inc., supra at 780 (1986) (holding that where attorney's fees constitute a party's actual damages, as in an abuse of process claim, they may be multiplied under c. 93A). See also Cohen v. Liberty Mutual Insurance Co., 41 Mass. App. Ct. 748, 753 (1996) (discussing the 1989 amendment to c. 93A, § 9(3) which provides that the amount of actual damages to be multiplied is the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence of insurance coverage available in payment of the claim). Moreover, in the absence of other actual damages, Bishay would be entitled to recover statutory damages of twenty-five dollars. See Brow v. Stanton, 12 Mass. App. Ct. 992, 993 (1981); Knott v. Laythe, 42 Mass. App. Ct. 908, 910 (1997). Accordingly, this Court concludes that Citizens is not entitled to summary judgment on

12

lack of cooperation in resolving the debt, Citizens' filing of the present action was justified and for the proper purpose of collecting the money owed. Accordingly, this Court concludes that Bishay has no viable ground for the Chapter 93A claims alleged in Subparts l and m of Count VI, entitling Citizens to judgment as a matter of law.

ORDER

For the foregoing reasons, it is hereby **ORDERED** that Citizens' motion for reconsideration be **ALLOWED**. Upon reconsideration, it is **ORDERED** that Citizens' motion for summary judgment be **ALLOWED** as to Subsections j, l and m of Count VI of the amended counterclaim, but **DENIED** as to Subsections f and k of that Count. It is further **ORDERED** that the defendants' motion for reconsideration be **DENIED**.

_____
Gordon L. Doerfer
Justice of the Superior Court

DATED: February // , 1998

14

Subparts f and k of Count VI of Bishay's amended counterclaim.

Finally, Subpart l of Count VI alleges that Citizens violated Chapter 93A by repeatedly petitioning the Court for authority to sell Bishay's antique car collection, while Subpart m alleges that Citizens violated Chapter 93A by filing the present law suit, by alleging under oath that Bishay owed $2,568,000, and by failing to disclose that part of the debt had been repaid. Citizens' conduct in alleging in its complaint that Bishay owed a particular amount under the promissory notes involves statements made in the institution of litigation which are absolutely privileged and cannot form the basis for liability under Chapter 93A. However, to the extent that Subpart m alleges that the filing of the complaint itself and petitioning of the Court to liquidate Bishay's collateral violate c. 93A, the litigation privilege would not bar an action on theories of malicious prosecution or abuse of process. See Sullivan v. Birmingham, supra at 367 n.8. Nonetheless, based on the summary judgment record, Bishay has no reasonable expectation of demonstrating at trial a Chapter 93A violation under these theories. As noted above, abuse of process presupposes the use of legal action for an ulterior or improper purpose. Silvia v. Building Inspector of West Bridgewater, supra at 453. Similarly, malicious prosecution involves perverse use of the litigation process in the sense that the defendant lacked probable cause to institute the criminal or civil action at issue. Id. at 453-454. Given the size of the debt owed by Bishay, his pattern of default on the parties' various forbearance agreements, and his general

13

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 95-1312A

CITIZENS BANK OF MASSACHUSETTS,
Plaintiff,

vs.

BAHIG BISHAY[1] & others[2],
Defendants.

## MEMORANDUM OF DECISION AND ORDER ON
## PARTIES' CROSS-MOTIONS FOR RECONSIDERATION

### INTRODUCTION

The plaintiff, Citizens Bank of Massachusetts (Citizens), brought this action in an attempt to recover more than $1.5 million owed by defendant Bahig Bishay and various trusts and corporations controlled by him under a defaulted promissory note. This debt has since been repaid as a result of a Chapter 11 plan confirmed by the Bankruptcy Court on April 23, 1996. However, numerous counterclaims by Bishay against Citizens remain pending in this action. In a Memorandum of Decision and Order dated November 24, 1997 and filed December 1, 1997, this Court granted Citizens' motion for summary judgment on the vast majority of Bishay's amended counterclaim and denied Bishay's cross-motion for partial summary judgment. This matter is now before the court on the parties' cross-motions for reconsideration pursuant to Super. Ct.

---

[1]Individually and as Trustee of Old Post Realty Trust.

[2]Commonwealth Realty Trust, Bishay Motors & Leasing, Inc. f/k/a Bishay Motors, Inc., Massachusetts Auto Group, Ltd., and 1095 Commonwealth Ave. Corp.

## 3399

### ORDER

For the foregoing reasons, it is hereby **ORDERED** that Citizen Bank's renewed motion for reconsideration be **ALLOWED**. Upon reconsideration, it is **ORDERED** that Citizen Bank's motion for summary judgment on the remainder of Count VI of the amended counterclaim be **ALLOWED**.

It is further **ORDERED** that the defendants' renewed motion for reconsideration be **DENIED**.

_____
Gordon L. Doerfer
Justice of the Superior Court

DATED: October 16, 1998

A TRUE COPY
Attest: _____
Deputy Assistant Clerk

11

R. 9D. For the reasons discussed below, Citizens' motion for reconsideration is ALLOWED. Further, the defendants' cross-motion for reconsideration is DENIED.

## DISCUSSION

### I. BISHAY'S MOTION FOR RECONSIDERATION

In its November 24, 1997 Memorandum of Decision and Order, this Court granted Citizens summary judgment on Counts I, II, IV and V of Bishay's amended counterclaim on the ground that the Bankruptcy Court's April 23, 1996 Confirmation Order in the Chapter 11 bankruptcy proceedings constituted res judicata as to those claims. This Court further granted Citizens summary judgment on Count III and subparts a, b, c, d, e, g, h and i of Count VI of the amended counterclaim on the ground that a valid and binding general release in the parties' September 16, 1994 Forbearance Agreement precluded Bishay from asserting any claims against Citizens arising from the parties' relationship prior to that date.

Bishay now asks this Court to reconsider those rulings, urging this Court to reinstate Count III of the amended counterclaim and to further hold that the broad reservation in the Chapter 11 Reorganization Plan (the Plan) permits the post-bankruptcy litigation of all other counts of the amended counterclaim not affected by the September 16, 1994 release. Bishay first argues that this Court erred in awarding summary judgment on Count III of the amended counterclaim based on the general release in the parties' Forbearance Agreement because the majority of Count III contains allegations of misconduct alleged to have occurred after

3398

Nonetheless, in his answers to interrogatories, Bishay claims $100,000,000 in damages from Citizens' unfair and deceptive practices, which he proceeds to itemize. In addition, he has introduced the affidavit of Howard Gordon, an expert specializing in business valuation and business damages calculations, stating that Bishay's various businesses sustained losses in excess of 90 million dollars due to Citizens' wrongful actions. Bishay seeks to recover these damages in connection with his remaining Chapter 93A claims on the theory that because Citizens wanted to collect excessive fees under the improper dual billing arrangement, it refused repayment of Bishay's loan in November of 1995 and refused to release the collateral for the loan, preventing Bishay from undertaking various business opportunities, forcing him into bankruptcy, and resulting in $10,000 in costs in the bankruptcy proceedings and lost business profits of $94,000,000.

It is well established that in the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery under G.L. c. 93A, § 11. Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 730 (1989). On the record before this Court, Bishay has no reasonable expectation of demonstrating that the millions of dollars of damages he alleges were caused by Citizens' entry into and attempted enforcement of the dual billing arrangement at issue. Accordingly, this Court concludes that Citizens is entitled to summary judgment on Subparts f and k of Count VI of Bishay's amended counterclaim.

10

September 16, 1994.

Bishay overlooks the fact that in determining that Count III was reserved for post-confirmation litigation by the Bankruptcy Court, this Court also determined that any such claim was limited to the allegations as they stood before the Bankruptcy Court when the Plan was confirmed.    At that time, Bishay's counterclaim against Citizens in the present Superior Court action alleged in Count I that Citizens breached its duty of good faith and fair dealing by interfering in the FDIC matter and by refusing to subordinate its mortgage on the 1095 Commonwealth Ave. property. Liability for this conduct is barred by the general release in the September 16, 1994 Forbearance Agreement.  Bishay has now submitted a document which he contends was filed by the parties with the Bankruptcy Court on August 26, 1996: a Joint Stipulation of the Parties Relating to Requested Protective Order that Discovery Not Be Had, to which is appended several exhibits, including Bishay's proposed amended counterclaim in this Superior Court action. However, this Court notes that the Chapter 11 plan was confirmed by the Bankruptcy Court some four months earlier, on April 23, 1996; indeed, the joint stipulation relied proffered by Bishay concerns the post-confirmation attorneys fees proceedings.

Thus, to the extent that amended Count III alleges interference with contractual relations that Bishay had with parties other than the FDIC, after September 16, 1994, such claims were not part of Bishay's original complaint, were not before the Bankruptcy Court at the time of confirmation, and were not saved for post-bankruptcy

3

3397

proving that he suffered some loss of money or property within the meaning of G.L. c. 93A, § 11, summary judgment is appropriate. See Lumbermens Mutual Casualty Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468-469 (1995) (stating that where no judgment entered against the plaintiff, who therefore never paid out any loss, plaintiff failed to establish damages from insurer's disclaimer of coverage).

In the present case, Bishay challenged the dual billing arrangement in the Bankruptcy Court prior to that court's awarding Citizens any attorneys fees. After an extensive evidentiary hearing, the amount of fees owed by Bishay was reduced to reflect the amount Citizens itself would have paid its attorneys for the work. Moreover, the attorney's fees and expenses Bishay incurred in challenging the dual billing arrangement were set off against the fees he owed Citizens under the loan agreement. Thus, Bishay never expended any money out of his pocket as a result of the existence and attempted enforcement of Citizens' dual billing arrangement. Compare Guenard v. Burke, 387 Mass. 802, 809-810 (1982) (concluding that where attorney unfairly withheld funds from a client under an illegal fee agreement, c. 93A damages were the difference between the withheld funds and the reasonable fee owed the attorney); Doucette v. Kwait, 392 Mass. 915, 916-917 (1984) (concluding that where attorney wrongfully charged a separate fee for services that should have been included under the contingent fee already paid by the client, c. 93A damages were the amount of that fee and interest thereon).

9

litigation by the reservation in the Confirmation Plan. Accordingly, Citizens is entitled to judgment as a matter of law on Count III of the amended complaint, which this Court declines to reinstate.

Bishay next contends that this Court erred in ruling that the blanket reservation contained in the Plan was insufficient to preserve the remaining four counts of the amended counterclaim for post-confirmation adjudication.   This Court concluded that because the reservation failed to expressly identify particular claims or types of actions intended to be preserved, its language[3] was too broad and vague to prevent the Confirmation Order from constituting res judicata as to all claims other than the two specific claims pending in Superior Court at the time of confirmation.   Bishay contends that this Court improperly relied on Illinois and New York cases in concluding that a reservation of a debtor's right to pursue rights and remedies outside of the bankruptcy proceeding must specifically identify or refer to the cause of action intended to be reserved.   Citing Apparel Art International, Inc. v. Amertex Enterprises, 48 F.3d 576 (1st Cir. 1995), Bishay argues that Massachusetts law interprets the "express" nature of a reservation more broadly than other jurisdictions and does not require identification of the particular claims reserved for later adjudication.

---

[3]The reservation referred to preserve "the debtors' alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters (the "Alleged Claims")".

4

## 3396

this is not a case of a party seeking a further hearing on an argument unseasonably raised as a mere afterthought.  Rather, in sparing subsections f and k of Count VI from summary judgment, this Court, without input from either party, raised the issue of damages, noting that while any award of actual damages under Chapter 93A would have to account for the fact that Bishay had already been compensated for the attorney's fees incurred in resisting the dual billing agreement in the Bankruptcy Court, Bishay might conceivably be able to establish damages beyond those attorney's fees.

Accordingly, because this Court sua sponte raised the issue of Bishay's ability to prove Chapter 93A damages, it is valid for Citizens in response to now seek to present evidence on this issue. Further, given that the only cause of action remaining in this case is a Chapter 93A claim based on two narrow grounds, it is in the interests of judicial economy to consider the possible resolution of the claim on summary judgment.  In doing so, this Court notes that both Citizens and Bishay have extensively briefed the issue of Chapter 93A damages in connection with the present motion.

To prevail on a claim under Chapter 93A, section 11, a plaintiff must have suffered a "loss of money or property." G.L. c. 93A, § 11 (1989).  In this context, "money" means money, not time, and "property" means the kind of property that is purchased or leased, not such intangibles as a right to sense of security or peace of mind. Halper v. Demeter, 34 Mass. App. Ct. 299, 304 (1993).    Where the plaintiff fails to satisfy his burden of

8

In __Apparel Art International, Inc.__, the plaintiff subcontractor, who had been awarded $387,994 against the defendant contractor during arbitration before the AAA, filed an action in U.S. District Court (Suit #1) to enforce the arbitration award pursuant to the Federal Arbitration Act. 48 F.3d at 579. After confirming the award and entering judgment in plaintiff's favor, the court permitted the plaintiff to conduct post-judgment discovery in supplemental proceedings so that it could execute its judgment. During said discovery, the plaintiff learned of numerous asset transfers by the defendant to a company which the plaintiff believed had been created to defraud the defendant's creditors. Id. While these proceedings were ongoing, the plaintiff filed a separate suit in U.S. District Court (Suit #2) alleging RICO, fraudulent conveyance and alter ego claims against the defendant. Id. at 580. The District Court dismissed the fraudulent conveyance and related claims, stating:

> Essentially, the fraudulent transfer claim is merely one aspect of plaintiff's attempt at collection of the judgment issued in [Suit #1]. Since plaintiff has already begun that process in [Suit #1], we cannot entertain these claims again here without a real risk of allowing multiple judgments to issue for the same harm . . . The dismissal is without prejudice to any legitimate execution of judgment motions which the plaintiff may seek to file [in the supplementary proceedings in Case #1]. Id. at 586.

In concluding that the plaintiff could assert claims for fraudulent conveyance, depletion of corporate assets, and alter ego in the supplementary proceedings, the First Circuit held that Suit #2 did not bar such claims under the doctrine of res judicata because the

5

## 3395

the claims at issue.[6]  Accordingly, Bishay's renewed motion for reconsideration is <u>DENIED</u> in all respects.[7]


## II. CITIZENS' MOTION FOR RECONSIDERATION

Citizens now urges this Court to reconsider its denial of summary judgment on Bishay's remaining claims, subsections f and k of Count VI, on the ground that Bishay has no reasonable expectation of proving actual damages under Chapter 93A.  While Citizens did not argue the absence of Chapter 93A damages in either its original summary judgment motion or motion for consideration,

---

[6]/Moreover, an examination of the merits reveals that Fish's testimony is inadequate to establish the ulterior motive required to prevail on an abuse of process claim. Fish states in his deposition that hundreds of Citizens Bank employees were on an incentified pay plan tied to the performance of the bank. Although Fish agreed that employees in the special assets group would qualify for participation in the pay plan, he stated that he lacked any knowledge as to whether particular members of the assets group actually received incentive pay.  Finally, he admitted that for members of the special asset group on the incentified pay plan, the quality of the assets held by the bank, including loans collected, would affect the incentive pay received.  Bishay's theory is that Citizens' actions with respect to his loan were driven by employees' ulterior motive of obtaining "secret incentive bonuses," because the more fees and expenses the Bank recovered in connection with Bishay's loan, the bigger the bonuses for employees.  Insofar as all loan collection proceedings seek to recover money, the desire to increase the bank's wealth cannot constitute an ulterior motive. Further, Bishay has failed to produce any evidence that the individuals involved in handling his loan in fact received any incentive pay connected therewith.


[7]/Needless to say, this Court also denies Bishay's requests, contained in his opposition to Citizens' renewed motion for reconsideration, to allow him leave to amend his counterclaim to include a separate count for abuse of process, and to grant further discovery pursuant to Mass. R. Civ. P. 56(f).

District Court in Suit #2 had expressly reserved the plaintiff's right to litigate those claims in a later action. Id.

Bishay's argument that Apparel Art International, Inc. demonstrates that the First Circuit requires a less specific reservation than other jurisdictions in order to exempt a claim from the application of res judicata is simply without merit.  The District Court's reservation of "any legitimate execution of judgment motions which the plaintiff may seek to file [in the supplementary proceedings in Case #1]" specifically identified the claims which were reserved: those relating to the defendant's attempt to avoid the arbitration judgment.  The First Circuit did not interpret the reservation broadly, as Bishay seeks to do here, to preserve any claim the plaintiff might have against the defendant arising out of their contractual relationship.  Rather, the claims the plaintiff was allowed to bring in the supplemental proceeding were the very ones pending before the District Court when it made the reservation.  Thus, the holding in Apparel Art International, Inc. is consistent with those cases in other jurisdictions rejecting blanket reservations in bankruptcy confirmation plans and requiring that the claims to be reserved for later adjudication be expressly identified.  Accordingly, this Court declines to alter its ruling that the language in the Plan permitting Bishay and 1095 Commonwealth Ave. Corp. to assert "their alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters" reserved only the two claims pending in Superior Court at the time of the

6

## 3394

the merits of Bishay's claims in his renewed motion for reconsideration or to reinstate Counts I, II, III, IV, V and subsection j of Count VI of the amended counterclaim.

Finally, Bishay asks this Court to reconsider its determination that he failed to demonstrate some ulterior motive for Citizens' legal efforts to collect on the defaulted loan, which would raise a genuine issue of fact with respect to an abuse of process claim.    Bishay asserts that information revealed in the June 1998 deposition of Citizens Financial Group Chairman Larry Fish[5] supplies an ulterior motive, such that subsections j, l and m of Count VI should be reinstated.    Further, according to Bishay, "important discovery concerning the profit that Citizens could make from foreclosure on the Bishay loans was only produced by Citizens on August 27, 1998."    Bishay does not explain why he was unable to muster this information in support of either the original motion for summary judgment or his motion for reconsideration.    The docket does not reflect that Bishay ever moved pursuant to Mass. R. Civ. P. 56(f) for additional time to conduct discovery necessary to oppose Citizens' motion for summary judgment.    This Court does not consider the belated presentation of Fish's testimony to be a material change in circumstances warranting a reconsideration of

---

Clause in the April 23, 1996 Confirmed Plan of Reorganization, Nunc Pro Tunc, And Declare That The Alleged Claims of the Debtor Are Non-Core."    The Bankruptcy Court denied this motion, and Bishay's appeal to the Bankruptcy Appellate Panel of the First Circuit is now pending.

[5]Until 1997, Fish was also a Director of Citizens Bank.

6

reservation, and failed to specifically reserve the additional claims later asserted in Bishay's amended complaint. Bishay's motion for reconsideration is therefore DENIED.

## II. CITIZENS' MOTION FOR RECONSIDERATION

Citizens urges this Court to reconsider its denial of summary judgment on subparts f, j, k, l and m of Count VI, asserting that although such claims were not encompassed in the parties' general release, they are nonetheless barred by principles of either res judicata or absolute privilege. Subpart j of Bishay's amended counterclaim alleges that Citizens violated Chapter 93A by causing a false independent appraisal of the 1095 Commonwealth Avenue property. Subpart f alleges that Citizens violated Chapter 93A by attempting to collect reimbursement for legal fees under the dual billing agreement with its counsel, Brown, Rudnick, Freed & Gesmer. Subpart k further alleges that Citizens violated Chapter 93A by entering into the dual billing agreement, and by submitting false time entries and a false fee petition to the Bankruptcy Court. Citizens contends that these three claims are barred by the res judicata effect of the Bankruptcy Court's January 21, 1997 decision awarding attorney's fees pursuant to 11 U.S.C. § 506(b).

In that decision, the Bankruptcy Court addressed the impropriety of the appraisal at issue as follows:

> Debtors cite "impropriety in the preparation and use of the appraisals, as demonstrated by the testimony elicited at the evidentiary hearing held on April 18, 1996." The Court has reviewed the testimony from that hearing. The testimony on appraisal issues was lengthy and touched on a number of distinct appraisal-related issues; and it

7

## 3393

the legal question of the proper scope of the reservation and indeed, considerations of judicial economy militate against such action. Compare <u>Hurley</u> v. <u>Berkshire Design Group</u>, Civil No. 92-3275B (Mass. Super. Ct. April 26, 1994) (Toomey, J.); <u>Flores</u> v. <u>Metropolitan Dist. Com'n</u>, Civil No. 92-4265 (Mass. Super. Ct. March 9, 1995) (McDaniel, J.); (allowing motions for reconsideration based on new case law not existing at the time of the prior summary judgment motions).

In addition, Bishay contends, for the first time, that the confirmation of the Chapter 11 plan does not constitute res judicata as to his counterclaims against Citizens because said claims were "non-core" to the bankruptcy proceeding and thus could not have been adjudicated in that forum. Bishay never even intimated this argument in either the original motion for summary or the first motion for reconsideration. Following a decision of this Court, a party has no right to a rehearing, and a question of law not seasonably raised cannot be revived by the simple expedient of bringing it forward and demanding a second ruling. <u>Peterson</u> v. <u>Hopson</u>, <u>supra</u> at 599-600. See also <u>Diversified Mortgage Investors</u> v. <u>Viking General Corp.</u>, 16 Mass. App. Ct. 142, 151 (1983). This Court will not now entertain Bishay's "non-core" argument, given his failure to raise the issue in connection with either the original summary judgment or the cross-motions for reconsideration.[4] Accordingly, this Court declines to consider

---

[4]/This Court notes that following its decision on the parties' cross-motions for reconsideration, Bishay filed with the Bankruptcy Court a "Motion to Clarify and Amend the Reservation

5

> pertained to only one of the ten appraisals for which
> compensation is now being sought. The Debtors do not
> identify or cite the specific testimony on which they
> rely. They offer no argument as to why the alleged
> improprieties warrant denial of the appraisal fees. Nor
> do they even identify the improprieties they have in
> mind. In short, the Debtors have not articulated this
> objection in sufficient detail to permit either Citizens
> or the Court to understand, respond to, and adjudicate
> the substance of their objection. The compensation
> sought for these appraisals is reasonable and will be
> allowed in the amount requested.

Given the extensive hearing held by the Bankruptcy Court on the issue of the allegedly improper appraisal, that court's determination that Bishay had failed to clearly articulate a basis on which the court could find said appraisal to be wrongful, and the court's award of the appraisal fee to Citizens, this Court concludes that Bishay is barred from now relitigating the propriety of the appraisal fee in the form of an action under Chapter 93A. Accordingly, Citizens is correct that the doctrine of res judicata entitles it to judgment as a matter of law on subpart j on Count VI.

With respect to subparts f and k, the Bankruptcy Court noted in its decision that in opposing Citizens' application for fees, "the Debtors argue that the dual billing system violates all notions of good faith and fair dealing and constitutes an unfair and deceptive practice in violation of Massachusetts G.L. c. 93A." The Court ultimately concluded that the dual billing agreement, properly construed, was not illegal or void as against public policy; that with the exception of one of its attorneys, Citizens did not intentionally misrepresent or conceal the dual fee agreement; and that the appropriate sanction for Citizens'

8

## 3392

these matters, Bishay urges this Court to examine the contents of a sealed envelope, containing supplemental answers to interrogatories dated September 30, 1997, which was filed in connection with Bishay's original summary judgment motion but which was apparently placed directly in the impound safe without ever being reviewed by this Court.    In the interests of justice, this Court has examined the contents of the envelope to determine whether any information contained therein warrants reconsideration of the November 24, 1997 and February 11, 1998 Memoranda of Decision and Order.

This Court carefully considered the proper scope of the reservation in the Chapter 11 plan not only in the initial summary judgment decision but also, in even greater detail, on Bishay's first motion for reconsideration.  That issue having been decided adversely to him on two prior occasions, Bishay now asks this Court yet again to adopt his interpretation of the reservation.    This the court declines to do.  Where there has been no material change in circumstances, a court is not bound to reconsider a case, issue, or question of law once decided. Peterson v. Hopson, 306 Mass. 597, 599 (1940); King v. Globe Newspaper Co., 400 Mass. 705, 707, cert. den., 485 U.S. 940 (1987).  Although the court has the power prior to final judgment to reconsider an interlocutory ruling, such power should be exercised only where there are compelling reasons to do so, and a judge should hesitate to undo his own work. Peterson v. Hopson, supra at 603; King v. Globe Newspaper Co., supra at 707-708.    There is simply no valid reason for this Court to revisit

4

misconduct was to award Bishay his attorneys' fees in pursuing the issue.  The Bankruptcy Court did not, however, address whether Citizens' conduct with respect to the fee agreement constituted a violation of Chapter 93A so as to affirmatively entitle Bishay to damages under that statute.  Rather, the court merely rejected the argument that Citizens' conduct was so egregious as to warrant a total denial of attorneys' fees under the promissory notes. Moreover, this Court cannot conclude that the Chapter 93A issue was logically or practically necessary to the Bankruptcy Court's fee decision, as the court could have decided that regardless of whether Citizens' conduct constituted a Chapter 93A violation under state law, a balancing of the equities required that Citizens be allowed to recover some of its fees.  Thus, this Court declines to hold that the issue of Citizens' Chapter 93A liability was implicitly determined by the Bankruptcy Court's January 21, 1997 Order so as to bar litigation of said claim in the present action based on res judicata.[4]

Nonetheless, Citizens' contends that its conduct with respect to the dual billing agreement was privileged.  Massachusetts has long recognized that statements or other communications made by parties, counsel or witnesses in the institution or conduct of litigation are absolutely privileged, even when made maliciously or in bad faith, provided such statements relate to the judicial

---

[4]It should be noted that because Bishay's claim with respect to the dual fee agreement is based on post-confirmation conduct and did not exist at the time of the confirmation proceedings, the scope of the reservation in the confirmation plan is not at issue here.

## 3391

practices under Chapter 93A.

With respect to Bishay's cross-motion for reconsideration this Court denied Bishay's request to reinstate Count III of the amended counterclaim.   In addition, this Court denied Bishay's request that the court reverse its interpretation of the reservation in the Chapter 11 Reorganization Plan and hold that the reservation permits the post-bankruptcy litigation of all other counts of the amended counterclaim not affected by the September 16, 1994 release.

This matter is again before this Court because in August of 1998, the parties filed renewed cross-motions for reconsideration pursuant to Super. Ct. R. 9D.   For the reasons discussed below, Citizens' renewed motion for reconsideration is <u>ALLOWED</u>.   Further, the defendants' renewed cross-motion for reconsideration is <u>DENIED</u>.

<u>DISCUSSION</u>

### I. BISHAY'S RENEWED MOTION FOR RECONSIDERATION

Bishay asks this Court to rescind its previous order that the reservation clause in the Chapter 11 plan was insufficient to preserve his counterclaims for post-bankruptcy litigation, and to reinstate Counts I, II, III, IV, V and subsection j of Count VI of the amended counterclaim.   Bishay further asks this Court to find that he can state a claim for abuse of process and accordingly, reinstate subsections j, l and m of Count VI.   In connection with

3

proceeding. <u>Theran</u> v. <u>Rokoff</u>, 413 Mass. 590, 591 (1992); <u>Sullivan</u> v. <u>Birmingham</u>, 11 Mass. App. Ct. 359, 361 (1981); <u>Doe</u> v. <u>Nutter, McClennan & Fish</u>, 41 Mass. App. Ct. 137, 140, rev. den., 423 Mass. 1111 (1996).   Moreover, the privilege attached to such statements provides a complete defense not only to a defamation suit but to all theories of civil liability based thereon. <u>Sullivan</u> v. <u>Birmingham</u>, <u>supra</u> at 368; <u>Doe</u> v. <u>Nutter, McClennan & Fish</u>, <u>supra</u> at 140.   Subpart f of Bishay's amended counterclaim alleges that Citizens violated Chapter 93A by attempting to collect reimbursement for legal fees under the dual billing agreement with its counsel, Brown, Rudnick, Freed & Gesmer.   Subpart k further alleges that Citizens violated Chapter 93A by entering into the dual billing agreement, submitting false time entries to the Bankruptcy Court and submitting a false fee petition to the Bankruptcy Court.   Insofar as Subpart k is based on the written and oral statements made by Citizens in the Bankruptcy Court fee proceeding, such statements cannot form the basis of civil liability.   However, the bulk of Subparts f and k are based on Citizens' conduct in entering into a dual billing agreement with its attorney and then attempting to collect from debtors such as Bishay a higher billing rate than the bank itself would have to pay for the same work.   These claims do not involve statements or communications made in the course of litigation and are thus not privileged.   Massachusetts does not recognize the broad immunity for all actions taken by participants in the litigation process urged by Citizens.

10

## 3390

II, IV and V of Bishay's amended counterclaim on the ground that the Confirmation Order entered in the Chapter 11 bankruptcy proceedings constituted res judicata as to those claims. The Court further granted Citizens summary judgment on Count III and subsections a, b, c, d, e, g, h and i of Count VI of the amended counterclaim on the ground that a valid and binding general release in the parties' September 16, 1994 Forbearance Agreement precluded Bishay from asserting any claims against Citizens arising from the parties' relationship prior to that date. Finally, this Court denied Bishay's cross-motion for summary judgment.

Thereafter, both parties moved this Court for reconsideration of that summary judgment decision. In a Memorandum of Decision and Order dated February 11, 1998, this Court granted Citizens' motion for summary judgment as to Subsections j, l and m of Count VI of the amended counterclaim, on the ground that such claims were based on written and oral statements made to the Bankruptcy Court which were privileged and could not form the basis of civil liability.[3] However, this Court denied the motion as to Subsections f and k of Count VI on the ground that Citizens' entering into the improper dual billing agreement with its attorney and then attempting to collect from debtors such as Bishay a higher billing rate than the bank itself would have to pay could constitute unfair and deceptive

---

[3]This Court further found that to the extent that the filing of the complaint, the petitions to liquidate Bishay's collateral, and the attorney's fees were not privileged, they nonetheless did not support a Chapter 93A claim based on abuse of process because Bishay had presented no evidence of an improper or ulterior motive for such acts.

The question then becomes whether Citizens' conduct with respect to the dual billing agreement can form the substantive basis of a Chapter 93A claim. While it is clear that abuse of process may violate Chapter 93A, Bishay cannot demonstrate such a claim in the present case. Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 777-779 (1986). Abuse of process presupposes the use of legal action for an ulterior purpose: to achieve some end other than the apparent end of the litigation process which has been initiated. Id. at 775-776; Silvia v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451, 453, rev. den., 416 Mass. 1104 (1993). Irrespective of the propriety or impropriety of the dual billing agreement, Citizens had no purpose in petitioning the Bankruptcy Court for fees other than the asserted desire to collect attorney's fees under that agreement. Nonetheless, even where the institution of litigation does not constitute an abuse of process it may, in certain circumstances, constitute an unfair or deceptive practice for purposes of Chapter 93A. See Schubach v. Household Finance Corp., 375 Mass. 133, 137 (1978) (holding that a company's conduct in filing collection suits in distant venues to increase the chances of obtaining default judgments could be unfair for purposes of Chapter 93A although it was permitted by the venue provisions of G.L. c. 233, § 2 and was not an abuse of process). Bishay has a colorable claim that the mere entering into of the dual billing agreement and attempt to enforce it against creditors could be deemed an unfair and deceptive act. See Guenard v. Burke, 387 Mass.

11

OCT 22 1998    75

## 3389

### COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 95-1312A

CITIZENS BANK OF MASSACHUSETTS,
Plaintiff,

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
10-21-98

vs.

BAHIG BISHAY[1] & others[2],
Defendants.

### MEMORANDUM OF DECISION AND ORDER ON
### PARTIES' RENEWED CROSS-MOTIONS FOR RECONSIDERATION

#### INTRODUCTION

This action originated with a complaint by plaintiff, Citizens Bank of Massachusetts (Citizens), seeking to recover more than $1.5 million owed by defendant Bahig Bishay and various trusts and corporations controlled by him under a defaulted promissory note. That debt was repaid as a result of a Chapter 11 plan confirmed by the Bankruptcy Court on April 23, 1996. However, numerous counterclaims by Bishay against Citizens remained pending in this case. In a Memorandum of Decision and Order dated November 24, 1997, this Court granted Citizens' summary judgment on Counts I,

---

[1] Individually and as Trustee of Old Post Realty Trust.

[2] Commonwealth Realty Trust, Bishay Motors & Leasing, Inc. f/k/a Bishay Motors, Inc., Massachusetts Auto Group, Ltd., and 1095 Commonwealth Ave. Corp.

802, 809 (1982) (holding that an attorney's use of a contingent fee agreement in a divorce case was an unfair and deceptive practice where although the agreement was ultimately not enforced against the plaintiff, the attorney relied on the agreement to retain one third of plaintiff's recovery).

Finally, although the court in awarding actual damages under Chapter 93A must take into account that Bishay has already been compensated for those attorney's fees incurred in resisting the dual billing agreement in the Bankruptcy Court, if the court finds a knowing and wilful violation of Chapter 93A, it is arguable, but this Court does not now rule, that fees from that proceeding could be the basis of multiple damages. See Datacomm Interface, Inc. v. Computerworld, Inc., supra at 780 (1986) (holding that where attorney's fees constitute a party's actual damages, as in an abuse of process claim, they may be multiplied under c. 93A). See also Cohen v. Liberty Mutual Insurance Co., 41 Mass. App. Ct. 748, 753 (1996) (discussing the 1989 amendment to c. 93A, § 9(3) which provides that the amount of actual damages to be multiplied is the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence of insurance coverage available in payment of the claim). Moreover, in the absence of other actual damages, Bishay would be entitled to recover statutory damages of twenty-five dollars. See Brow v. Stanton, 12 Mass. App. Ct. 992, 993 (1981); Knott v. Laythe, 42 Mass. App. Ct. 908, 910 (1997). Accordingly, this Court concludes that Citizens is not entitled to summary judgment on

12

lack of cooperation in resolving the debt, Citizens' filing of the present action was justified and for the proper purpose of collecting the money owed.  Accordingly, this Court concludes that Bishay has no viable ground for the Chapter 93A claims alleged in Subparts l and m of Count VI, entitling Citizens to judgment as a matter of law.


ORDER

For the foregoing reasons, it is hereby **ORDERED** that Citizens' motion for reconsideration be **ALLOWED**.  Upon reconsideration, it is **ORDERED** that Citizens' motion for summary judgment be **ALLOWED** as to Subsections j, l and m of Count VI of the amended counterclaim, but **DENIED** as to Subsections f and k of that Count.  It is further **ORDERED** that the defendants' motion for reconsideration be **DENIED**.


_____
Gordon L. Doerfer
Justice of the Superior Court


DATED: February // , 1998


14

Subparts f and k of Count VI of Bishay's amended counterclaim.

Finally, Subpart l of Count VI alleges that Citizens violated Chapter 93A by repeatedly petitioning the Court for authority to sell Bishay's antique car collection, while Subpart m alleges that Citizens violated Chapter 93A by filing the present law suit, by alleging under oath that Bishay owed $2,568,000, and by failing to disclose that part of the debt had been repaid.  Citizens' conduct in alleging in its complaint that Bishay owed a particular amount under the promissory notes involves statements made in the institution of litigation which are absolutely privileged and cannot form the basis for liability under Chapter 93A.  However, to the extent that Subpart m alleges that the filing of the complaint itself and petitioning of the Court to liquidate Bishay's collateral violate c. 93A, the litigation privilege would not bar an action on theories of malicious prosecution or abuse of process. See Sullivan v. Birmingham, supra at 367 n.8.  Nonetheless, based on the summary judgment record, Bishay has no reasonable expectation of demonstrating at trial a Chapter 93A violation under these theories.  As noted above, abuse of process presupposes the use of legal action for an ulterior or improper purpose. Silvia v. Building Inspector of West Bridgewater, supra at 453.  Similarly, malicious prosecution involves perverse use of the litigation process in the sense that the defendant lacked probable cause to institute the criminal or civil action at issue. Id. at 453-454. Given the size of the debt owed by Bishay, his pattern of default on the parties' various forbearance agreements, and his general

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

00-P-798

CITIZENS BANK OF MASSACHUSETTS

vs.

BAHIG BISHAY & others.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

This appeal by the defendants (collectively Bishay), is from
the entry of a judgment ordered in 1999 by a Superior Court judge
in favor of Citizens Bank for $360,427.99 for attorney's fees and
costs which were allowed as reasonable collection costs relating
to a loan made to Bishay in 1988 (A.4225,4229).  Bishay also
appeals from three prior summary judgement orders of the same
judge which dismissed his counterclaims against Citizens Bank
related to its collection of the loan (A.4230).  The loan was
repaid through a proceeding in the United States Bankruptcy
Court, concluded pursuant to a confirmatory order issued in 1996
(A.288,4230).

In this appeal, Bishay principally presents the issue
whether, and to what extent, his rights were preserved in the

---

Individually and as trustee of Old Post Road Realty Trust
and Commonwealth Realty Trust.

Bishay Motors & Leasing, Inc., formerly known as Bishay
Motors, Inc.; Massachusetts Auto. Group, doing business as Bishay
Isuzu; U.S. Auto Exchange Group Ltd.; and 1095 Commonwealth Ave.
Group (A.2).

SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, D. C. 20543

June 9, 2003

Mr. James W. Stoll
Brown Rudnick Freed & Gesmer
One Financial Center
Boston, MA 02111

                 Re:  Bahig Bishay
                      v. Citizens Bank of Massachusetts
                      No.  02-1479

Dear Mr. Stoll:

     The Court today entered the following order in the above
entitled case:

     The petition for a writ of certiorari is denied.

                              Sincerely,

                              William K Suter

                              William K. Suter, Clerk

bankruptcy proceeding to pursue his counterclaims against Citizens Bank in the Massachusetts courts (B.Br.3-4). He argues that the Superior Court judge's rulings, principally based on res judicata grounds, did not reach the full extent of those claims and thereby deprived him of his day in court. We conclude the judge's decisions were correct and affirm.

Citizens Bank commenced this action in June, 1995, by filing a verified complaint in the Superior Court (A.19). Bishay's answer contained a counterclaim in two counts, the first alleging a breach of good faith and fair dealing, and the second an alleging unfair trade practices under G. L. c. 93A (A.70,74). Bishay then filed two voluntary petitions in bankruptcy, the first in July, 1995, for 1095 Commonwealth Ave. Corp., and the second, individually, in September, 1995, which subsequently were consolidated for administration (A.218). The plan, confirmed by order of the Bankruptcy Court in April, 1996, permitted Bishay to pursue his counterclaim.✔ After Citizens Bank moved in the Superior Court to dismiss the counterclaim in June, 1996, Bishay moved to amend it, and the amendment was allowed by a motion judge in November, 1996 (A.690), resulting in a counterclaim of six counts (A.692-726). Four decisions by a different Superior

---

✔ The plan allowed Citizens Bank's claim for payment of the loan balance and also allowed retention of a lien on Bishay's assets to permit recovery of attorney's fees and costs in defending against Bishay's counterclaim (A.279-280).

2

# Supreme Judicial Court for the Commonwealth of Massachusetts

### 1412 Courthouse, Boston, Massachusetts 02108
### (617) 557-1020


James W. Stoll, Esquire
Brown Rudnick Berlack Israels LLP
1 Financial Center, 17th floor
Boston, MA 02111


RE:  Docket No. FAR-12993

**CITIZENS BANK OF MASSACHUSETTS**
        **vs.**
**BAHIG BISHAY & others**

> Norfolk Superior Court No. 95-1312
> A.C. No. 2000-P-0798

### NOTICE OF DENIAL OF F.A.R. APPLICATION

Please take note that on January 7, 2003, the above-captioned Application for Further Appellate Review was denied.

Susan Mellen, Clerk


Dated: January 7, 2003

To:  James W. Stoll, Esquire
     Kenneth A. Sweder, Esquire
     Michael B. Cosentino, Esquire
     Alan M. Dershowitz, Esquire
     Lynn A. Moretti, Esquire
     L. Michael Hankes, Esquire

Court judge followed, resulting in the dismissal of Bishay's entire amended counterclaim and the award of collection costs to Citizens Bank.

1.  Application of res judicata.  In the first of the Superior Court orders challenged by Bishay in this appeal, the judge considered the parties' cross motions for summary judgment on Bishay's several counts in the amended counterclaim (A.2205,2216).  The judge correctly stated the controlling principle as follows: "The application of res judicata to a bankruptcy court order confirming a Chapter 11 reorganization plan generally bars later proceedings on all claims and issues concerning the debtor-creditor relationship that were actually raised during the confirmation process as well as those that could have been raised . . . ." (A.2219).  See Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 & n.8 (1st Cir. 1995) (res judicata principles applicable to confirmation orders of a bankruptcy court).  "Under a generally accepted exception to the res judicata doctrine, a party's claims are not precluded by a prior action if the court in that action expressly reserves those claims for later adjudication.  Apparel Art Intern. v. Amertex Enterprises[, Ltd.], 48 F.3d 576, 586 (1st Cir. 1995).  D & K Properties Crystal Lake v. Mutual Life Ins. [Co.], 112 F.3d 257, 260 (7th Cir. 1997)." (A.2220).

The judge reviewed the relevant language in the reservation

3

allowed in the Superior Court, and to March 17, 1999, when the award was entered (C.B.Br 45-46).  Because this request concerns matters beyond our purview in another court, we decline to consider the request.  Citizens Bank may, however, request its attorney's fees and costs in connection with this appeal by filing a petition with this court, together with the necessary back-up materials, within fifteen days of the issuance of the rescript in this case.  Bishay shall have ten days to respond to that submission, in accordance with <u>Yorke Mgmt</u>. v. <u>Castro</u>, 406 Mass. 17, 20 (1989).

<u>Judgments affirmed</u>.

> By the Court (Jacobs, Cypher, & Kantrowitz, JJ.),
>
> *Ashley Ahearn*
> Clerk

Entered: October 22, 2002.

12

clause of the plan confirmed by the Bankruptcy Court, ⩔ correctly
concluding from its wording and the record in that court that the
original two counts in Bishay's counterclaim had not been
adjudicated in that court and had been preserved so as to survive
the confirmation order.  Moreover, he stated those two counts
"constitute independent claims which could be characterized as a
set-off to Bishay's debt." (A.2222).

    In contrast, however, the judge concluded that the
additional four claims in the amended counterclaim ⩔ were in the
nature of defenses to Bishay's obligations under the note, and
that he essentially sought to relitigate the validity of that
note and the forbearance agreement. ⩔  These additional claims

---

⩔ "The Debtors' estates may retain, and by its duly
authorized representative(s) settle, release or prosecute, their
alleged claims against Citizens arising from the transactions
between the Debtors and Citizens and related matters (the
'Alleged Claims')." (A.280).

⩔ We adopt the judge's summary description of the counts as
follows:  (I) allegations of "numerous breaches of [Citizens
Bank's] express and implied duties" under the note and a
forbearance agreement; (II) a claim that Citizens Bank is
"estopped from treating the Note as a demand obligation and
collecting the full amount"; (III) first count of prior
counterclaim restated; (IV) a request for a declaratory judgment
that the "Note and Forebearance Agreement are extortionate," and
all payments should be ordered disgorged; (V) a claim of
intentional infliction of emotional distress; and (VI) second
count of prior counterclaim restated. (A.2222-2224; 712-724).

⩔ There is no merit in Bishay's argument that general or
blanket type language in the reservation clause preserved his
claims in the amended counterclaim.  "A blanket reservation that
seeks to reserve all causes of action reserves nothing.  To hold
otherwise would eviscerate the finality of a bankruptcy plan

4

Bank's complaint and Bishay's counterclaim then were pending in the Superior Court, it cannot be said that the parties had reached an end to all "charges of the holder . . . in connection with the collection and enforcement of [the note]." (A.32). Bishay's counterclaim was grounded in allegations of improper conduct by Citizens Bank in collecting the note, which Bishay not only pressed after the note had been paid, but had he been successful, he essentially would have overturned the validity of Citizens Bank's collection of the note.  Citizens Bank incurred additional fees and costs in withstanding Bishay's continuing attack on the validity of its collection of the note, and those fees and costs properly were an integral part of the collection process.  Compare <u>Penney</u> v. <u>First Natl. Bank of Boston</u>, 385 Mass. 715, 723 (1982) (attorney's fees and costs incurred by bank in defending against debtor's action brought after sale of debtor's collateral "were an integral part of the collection process").¹⁵/ See <u>Leventhal</u> v. <u>Krinsky</u>, 325 Mass. 336, 342 (1950); <u>Covich</u> v. <u>Chambers</u>, 8 Mass. App. Ct. 740, 752 (1979).

     4.   <u>Costs incurred after judgment and in this appeal</u>. Citizens Bank requests attorney's fees and costs it claims were

---

costs of Citizens Bank . . . ." (A.3070-3071).

     ¹⁵/ Bishay no longer challenges the judge's conclusion that Citizens Bank was entitled to $117,765.24 in fees as a prevailing party in connection with its first motion for summary judgment, an amount which was included in the total award (A.4223-4224).

11

were not expressly identified in the reservation clause, the

bankruptcy schedules (A.3224-3267), or in the previously filed

counterclaim in Bishay's answer to Citizens Bank's complaint.∇

---

otherwise would eviscerate the finality of a bankruptcy plan
containing such a reservation, a result at odds with the very
purpose of a confirmed bankruptcy plan."  D & K Properties
Crystal Lake v. Mutual Life Ins. Co., 112 F.3d at 261.

    Bishay's assertion that classification of Citizens Bank's
claim as "impaired," means that approval of the claim was not
final (B.Br.18), is without merit.  That assertion ignores the
plain language of section 6(a) of the reorganization plan which
required full  payment of the loan balance on or before December
27, 1996 (A.279).  Further, no reasonable reading of 11 U.S.C.
§ 1124 (1984) supports that assertion.

    There also is no merit in Bishay's assertion that he should
receive a more favorable interpretation of the reservation clause
because it was drafted by Citizens Bank.  Compare Union Carbide
Corp. v. Newboles, 686 F.2d 593, 595 (7th Cir. 1982) (approval of
a plan by a creditor "cannot be deemed an act of assent having
significance beyond the confines of the bankruptcy proceedings,
simply because the gamesmanship imported from state contract law
into the bankruptcy proceedings would be intolerable").
Moreover, there is no indication that Bishay did not have
adequate opportunity to contest the plan or seek its
modification.

    Similarly, there is no merit in Bishay's request that we
consider statements made by counsel for Citizens Bank at the
confirmation hearing (B.Br.20-23).  Compare Sure-Snap Corp. v.
State Street Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991)
(even comments by a judge in a colloquy with debtors were "not
dispositive of . . . allegedly reserved right," and did not
affect application of res judicata principles).  In the judge's
third decision he stated, " Bishay now asks this Court yet again
to adopt his interpretation of the reservation [clause].  This
the court declines to do." (A.3392).  We similarly decline any
invitation by Bishay to consider any reinterpretation by reading
any "intent" into the reservation clause (see B.R.Br.2-8).

    ∇ The judge noted that the Bankruptcy Court allowed a joint
motion on September 4, 1996, authorizing Bishay to employ special
counsel to pursue the litigation then pending in the Superior

summary judgment at A.3702-3721), Bishay is not entitled to consideration of that argument in this court.  See <u>Royal Indem. Co.</u> v. <u>Blakely</u>, 372 Mass. 86, 87-88 (1977).

In any event, Bishay fails to show that the language of the note (A.32), his guarantees (A.40,44,56), or the relevant provisions of the Bankruptcy Court's approval of a lien on his assets (A.280), restricted his contractual obligations after the note was paid.  He also fails to show how the fees awarded were not related to litigation arising out of the collection process, or that there was any error in the judge's thorough analysis of the course of this litigation (A.4216-4224).[13]  The judge properly concluded that "Bishay vigorously pursued his purported $100 million counterclaim against [Citizens Bank] to no avail, despite his clear contractual obligation to pay . . . collection costs in the event his claim was unsuccessful." (A.4224). Although Citizens Bank's claim with respect to the unpaid loan balance was satisfied on December 27, 1996,[14] because Citizens

---

[13] The judge noted that the fees requested represented nearly two thousand hours of work, that Bishay asserted a counterclaim he valued at $100 million, involving complex issues of bankruptcy law, res judicata, contract, and c. 93A, and the filing of over one hundred pleadings.  He stated that "every point on every issue was vigorously contested by both parties," and that Citizens Bank ultimately succeeded in obtaining judgment in its favor on Bishay's entire counterclaim (A.4220).

[14] The Bankruptcy Court order regarding discharge of debtors states in relevant part:  "In accordance with the terms of the Confirmed Plan, all claims of creditors were satisfied in full on December 27, 1996 with the exception of certain legal fees and

Because the Bankruptcy Court ordered the payment of Citizens Bank's claim, inherent in that order is the court's determination of the validity and enforceability of the note and forbearance agreement.  The judge therefore properly stated that "[f]inal orders of the bankruptcy court are res judicata as to all matters that were or could have been litigated before the bankruptcy court," see Federal Deposit Ins. Corp. v. Shearson-American Exp., Inc., 996 F.2d 493, 497 (1st Cir. 1993), cert. denied, 510 U.S. 1111 (1994), and correctly concluded that the confirmation order had res judicata effect as to counts I, II, IV, and V of Bishay's amended counterclaim (A.2219,2224).⁹

    2.  The surviving claims in the amended counterclaim.

Bishay seeks to pursue his dismissed amended count III and most of the count VI claims by raising events which occurred after the

---

Court, No. 95-1312A (A.2222 n.10).

    There is no merit in Bishay's assertion that the counts in his amended counterclaim were preserved because his proposed version of that counterclaim was attached to a stipulation filed in the Bankruptcy Court with respect to a fee dispute.  That filing occurred before the joint motion was allowed, and there is no indication that the amended counterclaim was brought within the scope of that motion.

    In any event, the amended counterclaim was first filed in the Superior Court in August, 1996, some four months after the confirmation order dated April 23, 1996 (A.294), and after the expiration of the applicable bankruptcy appeal period.  Bishay did not appeal the confirmation order.

    ⁹ The judge subsequently denied Bishay's two motions for reconsideration of these rulings in his second and third decisions (A.2481-2482,3391-3395).

6

between that arrangement and Citizen Bank's refusal to accept
payment of the loan in 1995, and contrary to the judge's
conclusion, that he suffered damages. There is nothing in this
assertion warranting disturbing the judge's careful analysis,
concluding Bishay has no reasonable expectation of demonstrating
that his alleged damages were caused by Citizens Bank's
involvement in the two-tiered fee arrangement (A.3396-3398) №2/

3. <u>Award of attorney's fees</u>. In his fourth decision, and
after a thorough analysis of the parties' claims, the judge
determined that Citizens Bank had a right to recover $360,427.99
in attorney's fees and costs incurred as the reasonable costs of
collection of the loan from April 25, 1996, through November 30,
1998 (A.4224). Bishay claims that the note was paid "some time
before a substantial part of those legal fees were incurred," and
accordingly when the note was paid, the fees incurred thereafter
could not constitute reasonable fees for "collection and
enforcement" of the note (B.Br.49). Arguing this point for the
first time in this appeal (see memorandum in opposition to

---

№2/Acting on a motion of Citizens Bank for reconsideration,
the judge addressed the c. 93A issues raised in subsections f and
k of count VI in his third decision (A.3396). He concluded that
Bishay had not suffered any monetary loss in the course of the
Bankruptcy Court's resolution of the two-tiered fee issue. He
explained that "the amount of fees owed by Bishay was reduced to
reflect the amount Citizens [Bank] itself would have paid its
attorneys for the work. Moreover, the attorney's fees and
expenses Bishay incurred in challenging the dual billing
arrangement were set off against the fees he owed Citizens [Bank]
under the loan agreement." (A.3397).

9

general release in a September 16, 1994, forbearance agreement he executed.⁷/ He argues that these counts were preserved by the reservation clause, and he asserts that the judge improperly dismissed those claims, essentially ignoring the effect of the release and res judicata (B.Br.27-48).⁸/

Bishay asserts that in 1995, Citizens Bank's refusal to accept full payment of the loan constituted (1) a breach of its obligations to him; (2) interfered with his business obligations; and (3) violated c. 93A (B.Br.31).⁹/ Even if we were to consider

---

⁷/ In his first decision, the judge addressed Citizens Bank's contention that the general release served as a defense to count III and so much of count VI concerning events occurring prior to the release, and Bishay's claim that the release was not binding because he signed it under economic duress (A.2225). The judge's conclusion that Bishay's failure timely to object to the forbearance agreement, his subsequent conduct in accepting the benefits of Citizens Bank's forbearance, and his partial performance in making sporadic payments, constituted ratification of the agreement. The judge further concluded that because the general release was valid and binding, Bishay is precluded from asserting any claim against Citizens Bank arising from their relationship prior to September 16, 1994, and allowed summary judgment for Citizens Bank on count III and subsections a, b, c, d, e, g, h, and i of count VI (A.2229).

⁸/ In the judge's second decision, he declined to reconsider his prior rulings on count III after Bishay filed a motion for reconsideration and submitted a joint stipulation which contained a proposed amended counterclaim. The judge rejected consideration of Bishay's claims alleging interference with contractual relations after the September 16, 1994, release, and declined to alter his ruling that only the two claims pending in the Superior Court at the time of the bankruptcy confirmation order had been preserved (A.2477-2479, 2481-2482).

⁹/ The related factual background is that after filing the bankruptcies, in November, 1995, Bishay asked what terms Citizens Bank would require to discharge all its security for the

those claims not barred by the release and res judicata
principles, they lack merit. In summary, (1) at the time in
issue, there is no indication that Bishay ever tendered any
payment or actually had a commitment for financing from another
lender, and in indicating its intent to require a release, in the
circumstances, Citizens Bank was not in breach of any obligation
to Bishay; (2) no claim of interference could arise because
Citizens Bank did not induce anyone to act unfavorably toward
Bishay or impede his performance; and (3) the Bankruptcy Court's
determination that the release of claims was proper thus
precludes the c. 93A claim to the extent that it was based on
Citizens Bank's collection efforts.  Also, Bishay's argument
(B.Br.36-44) attempting to revive his claim for intentional
infliction of emotional distress and his unsupported
characterization of Citizens Bank's conduct as unethical,
oppressive, and unscrupulous and violative of c. 93A, fail to
raise genuine issues of material fact.

With respect to Bishay's c. 93A argument (B.Br.45-48) based
on Citizens Bank's two-tiered billing arrangement with its
attorneys, for which it was sanctioned in the Bankruptcy Court
(A.1310-1350), Bishay asserts that a causal relationship existed

---

defaulted loan if he could obtain financing to repay the loan.
The response was that a release of all theoretical claims would
be required (A.642-646).  Bishay claims the collateral then
securing the loan balance of $2.4 million was, disproportionally,
worth $18 million (B.Br.30).

3529

DOCKETED

Copy, Original in case # 95-15015

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| IN RE:<br><br>1095 COMMONWEALTH AVENUE,<br>CORP.,<br><br>Debtor | ) Chapter 11<br>)<br>) Case No. 95-15015-CJK<br>)<br>) |
| IN RE:<br><br>BAHIG F. BISHAY,<br><br>Debtor | ) Chapter 11<br>)<br>) Case No. 95-16331-CJK<br>)<br>) |

ORDER CONFIRMING CHAPTER 11 PLAN PROPOSED BY CITIZENS BANK OF
MASSACHUSETTS AND AUTHORIZING AND DIRECTING CERTAIN ACTION IN
CONNECTION THEREWITH

This matter came before this Court on April 18, 1996 and April 23, 1996, pursuant to this

Court's March 5, 1996 Order Approving Second Amended Disclosure Statement and Setting

Hearing Dates, Objection Deadlines and Ballot Deadline (the "Disclosure Statement Order")

concerning the Chapter 11 Plan Proposed By Citizens Bank of Massachusetts dated January 10,

1996, as modified by the First Modification thereto filed April 10, 1996 (the "First

Modification") and as further modified by the Second Modification thereto filed April 18, 1996

(the "Second Modification") (such Plan, as modified, the "Plan"), which Disclosure Statement

Order approved the Second Amended Disclosure Statement For Chapter 11 Plan Proposed By

Citizens Bank of Massachusetts (the "Disclosure Statement"), and fixed the time for filing

acceptances or rejections of and objections to the Plan. Pursuant to the Disclosure Statement

Order, Citizens Bank of Massachusetts ("Citizens") served the Plan and the Disclosure



3515

the per annum rate of twelve (12%) percent (or any other rate of interest determined by the Court to be fair and equitable), made by the Consummation Agent on behalf of the Debtor(s) liable for such Claim and recourse to the Estate Assets (but not recourse to the Consummation Agent), which note shall be satisfied by the Consummation Agent as promptly as practical, fair and equitable from the Net Proceeds of the Estate Assets in accordance with Section 7.3 hereof (but in no event later than September 30, 1996); and (b) retain any valid liens securing such Claim, to the extent of the Allowed Amount of such Claim."

8.    Section 4.7 of the Plan is deleted in its entirety and replaced by the following:

"4.7  Class Seven (General Unsecured Claims). The Class Seven Claim is impaired. Unless a holder of a particular Class Seven Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of a Class Seven Claim, in full satisfaction of such Class Seven Claim, shall receive a promissory note in the full Allowed Amount of such Claim, payable in full on or before September 30, 1996, together with interest accrued from the date of the allowance of such Claim through the date of payment at the per annum rate of fifteen (15%) percent (or any other rate of interest determined by the Court to be fair and equitable), made by the Consummation Agent on behalf of the Debtor(s) liable for such Claim and recourse to the Estate Assets (but not recourse to the Consummation Agent), which note shall be satisfied by the Consummation Agent as promptly as practical, fair and equitable from the Net Proceeds of the Estate Assets in accordance with Section 7.3 hereof (but in no event later than September 30, 1996)."

9.    The following sentence shall be added to the end of Section 5.1 of the Plan:

"The Consummation Agent or Citizens or either Debtor shall be entitled to move for the rejection of any such executory contract or unexpired lease at any time on or before the Effective Date, and the Consummation Agent's or Citizens' or a Debtor's motion for rejection shall automatically extend the date of automatic assumption of such executory contract or unexpired lease to the date 11 days after the allowance or denial of such motion by the Court by Final Order."

10.    Section 6.2 of the Plan is deleted in its entirety and replaced by the following:

"6.2  Disposition of Certain Property. After the entry of the Confirmation Order, the Consummation Agent shall have the combined authority of a Chapter 7 trustee and a Chapter 11 trustee with respect to the management and disposition of the Estate Assets and the conduct of the Debtors' affairs. All dispositions of Estate Assets with a value of more than $2,500 shall be conducted by the Consummation Agent only with prior approval of the Court (which approval shall be deemed granted automatically if a motion seeking such approval is filed and served upon the Debtors and all other parties in interest and no objection is filed and served within 10 days of filing and posting) and subject to a competitive bidding procedure supervised by the Consummation Agent or the Court. Such disposition shall be conducted generally in accordance with the procedures and standards governing a Chapter 7 trustee's sale of assets free and clear of all claims, liens and interests under Section 363 of the Bankruptcy Code. The Consummation

-5-

## 3530

Statement, together with the Disclosure Statement Order and ballots, on the Debtors and all known creditors on March 11, 1996, served the First Modification on the Debtors and all known creditors on April 10, 1996, filed the Second Modification in open Court at the Confirmation Hearing on April 18, 1996, and subsequently served the Second Modification on the Debtors and all known creditors on April 19, 1996. Such notice being sufficient, and having considered the objections submitted by the Debtors and by Dedham Institute for Savings ("DIS"), the evidence provided and offered, and arguments of counsel at the confirmation hearing; and having considered the terms of the Plan, as modified by the First Modification and the Second Modification, I make the following findings of facts and rulings of law:

## FINDINGS OF FACT

1.    All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2.    The Disclosure Statement, the Plan, the Ballots, the Order and the other solicitation materials were submitted and served in compliance with the applicable Federal Rules of Bankruptcy Procedure and orders of this Court, and such transmittal and service were adequate and sufficient. Notice of the confirmation hearing and deadlines described in the Order was adequate and sufficient and no further notice was required; notice and disclosure regarding each of the First Modification and the Second Modification was adequate and sufficient and no further notice or disclosure is required.

3.    The Plan has been accepted by the creditors whose acceptance is required by law for confirmation of the Plan.

## 3514

as practicable thereafter, the holder of the Class Three Claim shall be treated in accordance with Section 1124(2) of the Bankruptcy Code (specifically, all defaults with respect to such Claim shall be cured (other than any default of a kind specified in Bankruptcy Code Section 365(b)(2)), the maturity of such Claim shall be reinstated as such maturity existed before such default, the holder of such Claim shall be compensated for any damages incurred as a result of such reinstatement, and the holder of such Claim shall otherwise retain the legal, equitable and contractual rights to which it is entitled on account of such Claim). The holder of the Class Three Claim also shall reserve its right to file at any time a motion seeking relief from the automatic stay as to its collateral in the Chapter 11 Cases."

5.     Section 4.4 of the Plan is deleted in its entirety and is replaced by the following:

"4.4. Class Four (Marine Midland). The Class Four Claim is not impaired. Unless the holder of the Class Four Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Four Claim shall be treated in accordance with Section 1124(2) of the Bankruptcy Code (specifically, all defaults with respect to such Claim shall be cured (other than any default of a kind specified in Bankruptcy Code Section 365(b)(2)), the maturity of such Claim shall be reinstated as such maturity existed before such default, the holder of such Claim shall be compensated for any damages incurred as a result of such reinstatement, and the holder of such Claim shall otherwise retain the legal, equitable and contractual rights to which it is entitled on account of such Claim). In addition, Citizens shall withdraw its motion to disallow such Claim filed on or about January 29, 1995."

6.     Section 4.5 of the Plan is deleted in its entirety and is replaced by the following:

"4.5. Class Five (Hale & Dorr). The Class Five Claim is impaired. Unless the holder of the Class Five Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Five Claim shall (a) receive a promissory note in the full Allowed Amount of such Claim, payable in full on or before September 30, 1996, together with interest accrued from the date of allowance of such Claim through the date of payment at the per annum rate of twelve (12%) percent (or any other rate of interest determined by the Court to be fair and equitable), made by the Consummation Agent on behalf of the Debtor(s) liable for such Claim and recourse to the Estate Assets (but not recourse to the Consummation Agent), which note shall be satisfied by the Consummation Agent as promptly as practical, fair and equitable from the Net Proceeds of the Estate Assets in accordance with Section 7.3 hereof (but in no event later than September 30, 1996); and (b) retain any valid liens securing such Claim, to the extent of the Allowed Amount of such Claim."

7.     Section 4.6 of the Plan is deleted in its entirety and is replaced by the following:

"4.6. Class Six (Warner & Stackpole). The Class Six Claim is impaired. Unless the holder of the Class Six Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Six Claim shall (a) receive a promissory note in the full Allowed Amount of such Claim, payable in full on or before September 30, 1996, together with interest accrued from the date of allowance of such Claim through the date of payment at

3531

4.    The First Modification and the Second Modification are deemed accepted by all parties who previously accepted the Plan and are not materially and adversely affected thereby, and re-soliciting votes from creditors or the Debtors for the Plan as modified was not necessary.

5.    The Plan complies with all of the applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code").

6.    Citizens has complied with the applicable provisions of the Bankruptcy Code in connection with the Plan.

7.    The Plan has been proposed in good faith and not by any means forbidden by law. Citizens has acted in good faith during the confirmation process and in connection with the Plan.

8.    Citizens' Objections to the Claims of Marine Midland Bank and Framingham Savings Bank were not filed or later withdrawn in bad faith.

9.    The Confirmation process afforded the Debtors both substantive and procedural due process.

10.    All payments made or promised to be made under the Plan for services or for costs and expenses in connection with the Plan and incident to these Chapter 11 cases, remain subject to Court approval.

11.    The requirements of Sections 1129(a)(5) of the Bankruptcy Code have been met with regard to the Consummation Agent, David J. Ferrari. His qualifications and any potential conflicts of interest have been fully disclosed.

12.    No regulatory approval is required to implement the Plan.

13.    Based on the evidence presented and the representations of counsel, each holder of a Claim or Interest will receive or retain under the Plan property of a value, as of the Effective

3

# 3513

Consummation Agent (or, after the Consummation Agent's discharge, the Debtor) may sell, refinance or otherwise dispose of any property subject to Citizens' retained liens described above on reasonable, arms' length, good faith terms with independent third parties, free and clear of such liens, provided that such liens attach to the proceeds of such disposition or refinancing in the same order and priority as with respect to such property and such proceeds are escrowed with the Court or with a reputable financial institution pending resolution of the Alleged Claims.

All payments made to Citizens under the terms of the Plan shall be applied to the Debtors' outstanding obligations to Citizens in such order and amount as Citizens may determine in its sole discretion. Citizens shall retain all of its liens that secure its Claim, subject to the rights of the Consummation Agent and the Debtors to dispose of or refinance the same in accordance with this Plan. However, Citizens will release those liens on Estate Assets to the extent necessary to permit the Consummation Agent to consummate this Plan, provided that the Net Proceeds from the sale or refinancing of those collateral assets are applied according to Section 7.3 of this Plan, or as provided in the preceding paragraph."

3.      Section 4.2 of the Plan is deleted in its entirety and is replaced by the following:

"4.2.  Class Two (Framingham Savings).  The Class Two Claim is impaired, unless the Court permits any request of the Debtors made pursuant to Section 4.2(b) below. Unless the holder of the Class Two Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Two Claim shall retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled; provided, however, (a) that such Claim shall be fully paid on or before August 15, 1996, and the holder of such Claim shall not exercise its enforcement remedies against its collateral unless the Consummation Agent fails to achieve full payment of that Claim by that date, and (b) that at the hearing on confirmation of this Plan the Debtors shall be permitted to request that the Class Two Claim be treated in accordance with Section 1124(2) of the Bankruptcy Code and be permitted an opportunity to prove that such treatment (i) is acceptable to the holder of such Claim, or (ii) is not acceptable to such holder, but may be nonetheless approved by the Court because such treatment is fair and equitable and otherwise permitted by Section 1129(b) and that such treatment does not render the Plan not feasible or otherwise unconfirmable. If the Court allows the Debtors' request for such alternative treatment of the Class Two Claim, the Class Two Claim shall be treated in accordance with the Debtors' request (provided, however, that if the Debtors do reinstate the Class Two Claim, in the event that the Debtors thereafter default with respect to the loan representing such Claim (as defined under the relevant loan documents), the holder of such Claim may enforce its rights and remedies under and in accordance with such loan documents without any need for relief from stay or other proceedings in the Chapter 11 Cases). In addition, Citizens shall withdraw its motion to disallow such Claim filed on or about January 25, 1996."

4.      Section 4.3 of the Plan is deleted in its entirety and is replaced by the following:

"4.3.  Class Three (Dedham).  The Class Three Claim is not impaired. Unless the holder of the Class Three Claim and Citizens otherwise agree, on the Effective Date, or as soon

3532

Date of the Plan, that is not less than the amount that such holder would receive or retain under Chapter 7 of the Bankruptcy Code.

14.    The holders of each Allowed Administrative Claim incurred through the Effective Date or other priority claim of the kind specified in Section 507 of the Bankruptcy Code, who has not agreed otherwise, will receive cash on the Effective Date of the Plan equal to the allowed amount of its claim, consistent with Section 1129(a)(9) of the Bankruptcy Code.

15.    The requirements of Section 1129(a)(10) of the Bankruptcy Code have been met in that Class One, an impaired class that contains no insiders, has accepted the Plan.

16.    Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, except as contemplated by the Plan.

17.    All fees due under 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, have been paid, or the Plan provides for the payment of all such fees on the Effective Date.

18.    The Debtor has no retiree benefit obligations.

19.    The Plan is fair and equitable with respect to the claims of Class Three.

20.    The Plan is fair and equitable with respect to the claims of any other impaired class of creditors that has not accepted the Plan.

21.    The Plan is fair and equitable with respect to the interests of Class Eight.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:

1.    After appropriate notice and hearing, the objection to the confirmation of the Plan asserted by the Debtors are hereby over-ruled and denied.

4

## 3512

2.    Section 4.1(a) of the Plan is deleted in its entirety and replaced by the following:

"(a)    Allowance    *Citizens Bank*

The Class One Claim is impaired. The holder of the Class One Claim shall retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled: provided, however, that such Claim shall be fully paid on or before August 15, 1996, and the holder of such Claim shall not exercise its enforcement remedies against its collateral unless the Consummation Agent fails to achieve full payment of that Claim (and full payment of the outstanding balance of any Plan Funding Loan) by that date. Entry of the Confirmation Order shall also constitute confirmation of the final allowance of the Citizens Claim in the amount, as of September 19, 1995, in the principal amount of $1,582,315.11, less any amounts paid to Citizens against that Claim from the Debtors or the Debtors' estates since that date, plus late fees in the amount of $4,289.91, plus prepetition fees, expenses and costs of collection, plus accrued prepetition interest in the amount of $26,795.21, plus (to the extent allowed by the Court pursuant to Code Section 506(b), for which Citizens may apply at any time before or after entry of the Confirmation Order) postpetition interest and charges arising under the loan documents between the Debtors and Citizens, including Citizens' postpetition attorneys' fees and other costs of collection incurred through the Effective Date. The Debtors' estates may retain and, by its duly authorized representative(s) settle, release or prosecute, their alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters (the "Alleged Claims"). However, the Alleged Claims, until and unless reduced by Final Order to a judgment against Citizens, shall not reduce, delay or otherwise interfere with the timely and full satisfaction of Citizens' Class One Claim in accordance with this Plan. In addition, until Citizens actually receives (in form and substance reasonably acceptable to it) a release from (and evidence of dismissal with prejudice of) all Alleged Claims, Citizens shall retain its liens on all Estate Assets not disposed of in accordance with this Plan as security for Citizens' contractual right to reimbursement from the Debtors for Citizens' costs and anticipated costs of defending the Alleged Claim; provided, however, (a) that the Debtors may obtain the discharge of such liens within thirty (30) days after the date on which the Class One Claim has been paid in full (but in any event not later than September 15, 1996) by delivering to Citizens (i) an irrevocable letter of credit (in form and substance reasonably acceptable by Citizens) issued for the benefit of Citizens by a reputable domestic commercial bank in the amount of $500,000 subject to being drawn by Citizens by presentation of a sworn statement that a court of competent jurisdiction has determined that Citizens has the right to recover costs or expenses (including, without limitation, attorneys' fees or expenses) incurred in connection with defense of the Alleged Claims in an amount equal to or greater than the amount of such draw, or (ii) a bond (in form and substance reasonably acceptable to Citizens) issued for the benefit of Citizens by a reputable domestic bonding or insurance company securing such possible right of recovery up to a sum of not less than $500,000; and (b) the Consummation Agent shall be entitled (if necessary to generate funds to consummate this Plan), after the full payment of the Class One Claim and any Plan Funding Loan, but before dismissal and release of the Alleged Claims, to obtain discharges of Citizens liens on any or all Estate Assets except for the single family residence at 4 Yew Drive, Norwood, Massachusetts. At any time, the Consummation Agent may settle the Alleged Claims, subject to Court approval after notice to the Debtors and other parties in interest. At any time, the

-2-

# 3533

2. After appropriate notice and hearing, the objection to the confirmation of the Plan asserted by DIS are hereby over-ruled and denied.

3. The Plan, as modified, is hereby confirmed and the Debtors, the Consummation Agent and all other parties in interest to these Chapter 11 cases are authorized and enjoined to act, or to refrain from acting, as set forth in the Plan and consistent with the provisions of the Plan.

4. The Plan and its provisions shall be binding upon (i) the Debtors, (ii) any entity acquiring or receiving property or securities under the Plan, (iii) any lessor or lessee of property to or from the Debtors, (iv) any creditor or equity security holder of the Debtors including all governmental entities, whether or not the Claim or Interest of such creditor or equity security holder is impaired under the Plan and whether or not such creditor, equity security holder or entity has accepted the Plan.

5. All applications for payment of professional fees and services incurred through the date of entry of this Order shall be submitted to the Court on the date no later than 30 days after entry of this Order. Applications for payments of professional fees and services for the period subsequent to this date through the Effective Date should be submitted at a later time to be set by the Court.

6. In accordance with the relevant provisions of the Plan, distributions required to be made on account of Allowed Administrative Expense and distributions required to be made to the holders of Claims in Classes One, Two, Three, Four, Five, Six and Seven, as specified in the Plan shall be made to the persons and entities entitled thereto on or after the Effective Date, in accordance with the Plan.

3511

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: )
) Chapter 11
1095 COMMONWEALTH AVENUE, )
CORP., ) Case No. 95-15015-CJK
)
Debtor )
)

IN RE: )
) Chapter 11
BAHIG F. BISHAY, )
) Case No. 95-16331-CJK
Debtor )
)

## FIRST MODIFICATION TO CHAPTER 11 PLAN PROPOSED BY CITIZENS BANK OF MASSACHUSETTS

Citizens Bank of Massachusetts ("Citizens"), proponent of the Chapter 11 Plan (the "Plan") filed in these cases on January 10, 1996, hereby modifies the Plan in accordance with Bankruptcy Rule 3019 and Bankruptcy Code Section 1127(a), as described below. Each modification described below was made by Citizens for one or more of the following reasons: (a) to satisfy an objection to confirmation of the Plan raised by the Debtors or the Chapter 11 Trustee; (b) to add provisions regarding the means for consummation of the Plan requested by the Trustee; and (c) to accommodate the particular treatment of certain claims requested by the holders of such claims from among the alternative permissible treatments offered by Citizens in the Plan as originally submitted.

All modifications made to the Plan do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing or will accept the modification and, accordingly, no further solicitation of acceptances of the Plan is required or requested. A hearing on confirmation of the Plan (as so modified) has been set for April 18, 1996.

The modifications to the Plan are as follows:

1.    Section 1.12 of the Plan is modified by adding the following sentence to the end thereof:

"Estate Assets shall also include all property currently held in entities owned by the Debtors which the Consummation Agent may realize upon in accordance with Section 6.2 thereof."

-1-



## 3534

7.  All creditors and equity security holders of the Debtors whose Claims or Interests are discharged or whose rights and interest are terminated or impaired by the Plan and this Order are hereby jointly and severally restrained and enjoined from instituting or continuing any action or employing any process to collect such debts or pursue such interest as liabilities or obligations of the Debtor, except as otherwise specifically provided for by this Order or the Plan.

8.  Pursuant to the Plan, all executory contracts and unexpired leases of every name and nature will be assumed by the Debtors on the Plan's Effective Date. However, the Consummation Agent or Citizens shall be entitled to move for the rejection of any such executory contract or unexpired lease at any time on or before the Effective Date, and the Consummation Agent's or Citizens' motion for rejection shall automatically extend the date of automatic assumption of such executory contract or unexpired lease to the date 11 days after the allowance or denial of such motion by the Court by Final Order

9.  Pursuant to Article XI of the Plan, David J. Ferrari is hereby appointed to serve the estates as Consummation Agent, effective upon the Effective Date, and shall serve as Chapter 11 Trustee for Mr. Bishay's estate until the Effective Date. The Consummation Agent is hereby empowered to perform all of the acts and shall have all the rights described in the Plan.

10. This Court hereby retains jurisdiction of Chapter 11 Cases to the extent provided in Section 8.3 of the Plan.

11. Bahig F. Bishay, whether as Debtor or as an officer, director or shareholder of a corporation, the stock of which is an Estate Asset, is hereby ordered and directed to cooperate with the Trustee and/or the Consummation Agent in the consummation of the Plan and the disposition of the Estate Assets. Nothing herein shall deprive Bahig F. Bishay of any rights he

# 3510

EXHIBIT B

Debtors' Property

1095 Commonwealth Avenue

Brookline Warehouse

Sharon/Walpole commercial lots

75 Providence Highway

Chambers litigation

2 Edgehill Lots

Florida Lots

House on Yew Drive

House on Nantucket

House on Bluehill Drive

15 Antique Cars

3535

may have to object to the disposition of any Estate Assets or any other action which may be

contemplated by the Trustee or the Consummation Agent pursuant to the Plan by the filing of

appropriate pleadings with this Court.

_(signature)_

United States Bankruptcy Judge

Dated: April 23, 1996

12. Section 4.1 (e) of The PLAN is Amended By Adding Section (e)(iii) As Follows: " or (iii) A continuing Lien AND ASSIGNMENT OF RENTS ON PROPERTY Known AS 75 PROVIDENCE HIGHWAY, WALPOLE, MASSACHUSETTS TO SECURE SUCH POSSIBLE RIGHT OF RECOVERY UP TO $500,000."

13. The Court makes no Determination As To The Relief To Be GRANTED To Any PARTY IF THE EFFECTIVE DATE Does not occur on or Before JULY 31, 1996.

14. The Court makes no Determination As To The VALIDITY, ENFORCEABILITY or PRIORITY OF ANY Lien ASSERTED BY THE HOLDER OF A CLASS FIVE, CLASS SIX or CLASS SEVEN CLAIM.

15. FRAMINGHAM SAVINGS BANK CONSENTS TO THE REINSTATEMENT AND EXTENSION OF THE CLASS Two CLAIM AS Follows: THE Two $500,000 Notes will HAVE AN EXTENDED MATURITY OF DECEMBER 27, 1996. IN EXCHANGE, THE OBLIGORS will PAY TO FRAMINGHAM SAVINGS BANK AN extension Fee OF $10,000 ON THE EARLIER OF DECEMBER 27, 1996 OR UPON FULL PAYMENT OF THE CLASS Two CLAIM. THERE IS NO PREPAYMENT PENALTY ON THE CLASS Two ↑ CLAIM.

3509

(e)  To hear and determine any motion to assume, reject or assign an executory contract or unexpired lease pursuant to Code Section 365; and

(f)  To enforce all discharge provisions of the Plan and Code Sections 1141 and 524 through appropriate means, including without limitation the granting of injunctive relief.

Dated at Boston, Massachusetts this 11th day of January, 1996.

                    Respectfully submitted,

                    CITIZENS BANK OF MASSACHUSETTS
                    By its attorneys,


                    William R. Baldiga
                    Kelly A. McEnaney
                    Brown, Rudnick, Freed & Gesmer, P.C.
                    One Financial Center
                    Boston, MA 02111
                    (617) 856-8200


4455102 v1 - MCENANKA - 9bq601!.DOC - 17813/74

3497

# DOCKETED

## EXHIBIT A

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| 1095 COMMONWEALTH AVENUE, CORP., | ) | |
| | ) | Case No. 95-15015-CJK |
| | ) | |
| Debtor | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Chapter 11 |
| BAHIG F. BISHAY, | ) | |
| | ) | Case No. 95-16331-CJK |
| Debtor | ) | |
| | ) | |

### CHAPTER 11 PLAN PROPOSED BY
### CITIZENS BANK OF MASSACHUSETTS

January 10, 1996

Citizens Bank of Massachusetts ("Citizens"), a secured creditor, hereby proposes the following Chapter 11 Plan (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code:

Article I:  Certain Definitions

1.1.  Allowed Amount means, as to any Claim, the amount of such Claim as allowed by the Court by Final Order.

1.2.  Cash, with respect to any payment, means payment in readily available funds by check or wire transfer issued by the Consummation Agent.

1.3.  Chapter 11 Cases means, collectively, the cases under Chapter 11 of the Bankruptcy Code with respect to 1095 Commonwealth Avenue Corp. (Case No. 95-15015-CJK, "1095 Case") and Bahig F. Bishay (Case No. 95-16331-CJK, "Bishay Case").

1.4.  Claim means a claim, as defined in Code Section 101(5), against the Debtors that currently exists or arises before the Effective Date.

1.5.  Code Section means, except where otherwise indicated, a section of the United States Bankruptcy Code (Title 11, United States Code) ("Bankruptcy Code"), as in effect with respect to the Chapter 11 Cases.

# 3508

Agent shall cancel the check and such holder shall have no right to receive the distribution represented by such canceled check.

7.9.  Discharge.  Except as expressly provided in the Plan, each of the Debtors shall, on the Effective Date, be discharged pursuant to Code Section 1141(d)(1) from all liens. Claims and debts that arose on or before the Effective Date and from any liability of any kind specified in Code Section 1141, whether or not a proof of claim has been filed or deemed filed, such Claim is allowed, or the holder of such Claim has accepted the Plan. In accordance with Code Section 524(e), the discharge of the Debtor's debts pursuant to the Plan and confirmation thereof shall not affect the liability of any other entity on, or the property of any entity for, any debt.

7.10.  Consummation.  Substantial consummation of the Plan, within the meaning of Code Section 1101(2), shall consist of the commencement of distributions under the Plan.

## Article VIII:  Miscellaneous Provisions

8.1.  Modification/Withdrawal.  Citizens may modify the Plan in accordance with Code Section 1127. Citizens may withdraw the Plan at any time before entry of the Confirmation Order. After the Effective Date, the Consummation Agent may depart from the terms of the Plan only with the consent of the holder of each Claim or Interest adversely effected.

8.2.  Controlling Effect of the Plan.  To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any contract, the terms of the Plan shall control.

8.3.  Retention of Jurisdiction.  The Court shall retain jurisdiction of the Chapter 11 Cases after the Effective Date for the following purposes only:

(a)  To hear and determine objections to claims and interests and any actions pursuant to Code Sections 547, 548, 549 and 550;

(b)  To hear and determine any dispute arising under the Plan, or concerning its implementation and execution of any necessary documents thereunder; and to hear and determine any requests to amend, modify or correct the Plan, subject to the restrictions provided by Code Section 1127(b);

(c)  To make any determination necessary or appropriate under Code Section 505 or other determination relating to tax returns filed or to be filed by the Debtor for all periods through the end of the fiscal year in which the Effective Date occurs, including the determination of the amount of tax claims against the Debtor;

(d)  To enforce the terms of the Plan, including the consummation thereof and the making of all payments required thereunder;

# 3498

1.6. <u>Confirmation Order</u> means an order of the Court confirming the Plan.

1.7. <u>Consummation Agent</u> means the person appointed to serve as Consummation Agent under the Plan in accordance with Section 6.1 hereof.

1.8. <u>Court</u> means the United States Bankruptcy Court for the District of Massachusetts, Eastern Division, Judge Carol K. Kenner presiding, or such other court as may have jurisdiction over the Chapter 11 Cases.

1.9. <u>Cure Payments</u> mean those amounts required by Section 1124 of the Code to be paid to creditors of the Debtors in order to render those claims unimpaired.

1.10. <u>Debtors</u> means, collectively, 1095 Commonwealth Avenue Corp., a corporation organized under the laws of the Commonwealth of Massachusetts ("1095"), and Bahig F. Bishay, an individual ("Mr. Bishay").

1.11. <u>Effective Date</u> means the date described at Section 7.4 of the Plan.

1.12. <u>Estate Assets</u> means all property of either of the Debtors or their estates except only for any property that may be validly and timely claimed as exempt property under Code Section 522(b).

1.13. <u>Final Order</u> means an order or judgment of any court, administrative agency or other tribunal as to which: (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Code Section 1144 or Federal Rule of Bankruptcy Procedure 9024) may be commenced, without any such proceeding having been commenced; or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.14. <u>Trustee</u> means David J. Ferrari, the Chapter 11 Trustee appointed in the Bishay Case.

1.15. <u>Net Proceeds</u> means, as to the holder of any Claim, the gross proceeds realized upon the sale or other disposition of an Estate Asset, less only (a) the amount necessary to fully satisfy any amounts secured by valid liens senior to the holder of such claim (or to the owner of such asset), as the case may be), and (b) the actual, reasonable and necessary out-of-pocket costs of disposition of such Asset.

1.16. <u>Other Terms</u>. Terms used in this Plan which are defined in the Bankruptcy Code but not defined above shall have the meanings ascribed to them in the Bankruptcy Code.

# 3507

(v)  To satisfy all other Allowed Claims in the corresponding Chapter 11 Case, in the order and priority accorded to them under the Bankruptcy Code (and, as to Claims of the same priority, on a pro rata basis); and

(vi)  to the Debtor of the corresponding Chapter 11 Case.

7.4.  Effective Date.  The Effective Date shall occur on the thirtieth day after entry of the Confirmation Order, provided that no stay of the Confirmation Order or any order ancillary thereto material to confirmation or substantial consummation of the Plan shall be in effect at that time (in which case the Effective Date shall occur on the tenth day after such stay has been discharged).

7.5.  Allowance of Claims.

(a)  Each Claim as to which a proof of claim has been filed on or before the Confirmation Date, or which is not listed as disputed, unliquidated and/or contingent in the Schedules of Liabilities filed by the Debtors in the Chapter 11 Cases, shall be allowed without order of the Court unless an objection thereto is filed in accordance with Federal Rule of Bankruptcy Procedure 3007 not later than the Effective Date.  Notwithstanding any provision of the Plan requiring payment on account of any particular Claim on any particular date, such payment shall be made only to the extent that such Claim has been allowed by Final Order of the Court and such Claim has not been previously paid.

(b)  Notwithstanding Section 7.5 (a) of the Plan, any Claim of any entity from which property is recoverable under Sections 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, or 549 of the Bankruptcy Code shall be disallowed without order of the Court unless such entity or transferee has paid the amount transferred or otherwise recoverable, or turned over any property transferred to the Trustee not later than the Effective Date.

7.6.  Bar Date for Post-Petition Claims.  Any Claim entitled to priority under Code Section 507(a)(1) arising before the date of entry of the Confirmation Order and still outstanding 30 days thereafter shall be forever barred unless it is the subject of application for payment (or, in the case of a professional person, an application for compensation) filed with the Court on or before such 30th day.

7.7.  Distribution Dates.  Any distribution required to be made under the Plan on a particular date shall be made on such date or as soon as practicable thereafter.

7.8.  Unclaimed Distributions.  If any check issued by the Consummation Agent on account of any Claim or Interest remains uncashed 60 days after being properly posted by United States first class mail to the holder of such Claim or Interest at the latest address of which the Consummation Agent has received notice from such holder, or, if none, the address set forth in any proof of claim or interest filed by such holder or, if none, the address for such holder set forth in the Debtor's Schedules filed with the Court; then the Consummation

# 3499

### Article III:  Classification of Claims and Interests

Claims and Interests are hereby divided into the following classes:

2.1.  Class One, consisting of the secured Claim of Citizens Bank of Massachusetts;

2.2.  Class Two, consisting of the secured Claim of Framingham Savings Bank;

2.3.  Class Three, consisting of the secured Claim of Dedham Institute for Savings;

2.4.  Class Four, consisting of the secured Claim of Marine Midland Bank;

2.5.  Class Five, consisting of the secured Claim, if any, of Hale & Dorr;

2.6.  Class Six, consisting of the secured Claim, if any, of Warner & Stackpole;

2.7.  Class Seven, consisting of all unsecured Claims against either Debtor not included in any other class, including but not limited to unsecured Claims for goods and services supplied to either Debtor before the commencement of such Debtor's Chapter 11 Case;

2.8.  Class Eight, consisting of Mr. Bishay's interests in the estates of the Debtors (as the sole shareholder of 1095 and as the individual Debtor in the Bishay case).

### Article V:  Claims Not Classified by the Plan

The Plan does not classify claims arising under Section 507 of the Bankruptcy Code.  The Consummation Agent shall pay in Cash from the Estate Assets on the Effective Date the full Allowed Amount of each such Claim and any unpaid fees or charges assessed against the Debtors under Chapter 123 of Title 28, United States Code (28 U.S.C. § 1911, et seq.).

### Article VII:  Classes That May Be Impaired by the Plan

4.1.  Class One (Citizens).  The Class One Claim shall be treated as follows:

(a)  Allowance.

Entry of the Confirmation Order shall (i) constitute confirmation of the final allowance of the Citizens Claim in the amount, as of September 19, 1995, in the principal amount of $1,582,315.11, less any amounts paid to Citizens against that Claim from the Debtors or the Debtors' estates since that date, plus late fees in the amount of $4,289.91, plus prepetition fees, expenses and costs of collection, plus accrued prepetition interest in the amount of $26,795.21, plus (to the extent allowed by the Court pursuant to Code Section 506(b), for which Citizens may apply at any time before or after entry of the Confirmation Order) postpetition interest and charges arising under the loan documents between the Debtors and Citizens, including Citizens' postpetition attorneys' fees and

# 3506

overbid, the price offered by Citizens for any such Estate Asset shall be conclusively presumed to be fair. Any such sale shall be subject to procedures approved by the Court, and shall include the requirements of final sealed bids, no ability to "credit bid," and the publication of such sale (by service to all holders of Claims and Interests and by publication in a general circulation newspaper such as The Boston Globe) and opportunity to bid ten days in advance of such sale (or a longer time, if agreed to by Citizens and consistent with the cash needs at the time). The Consummation Agent may effect any such necessary sale(s) at any time after the Confirmation Date. Nothing herein shall require Citizens to offer to purchase any particular Estate Asset, or to offer to purchase any Estate Asset at any particular price.

(b)  Plan Funding Loan. To the extent that the Plan Funding Sales are insufficient to fund consummation of this plan or are not timely effected, and to the extent (but only to the extent) necessary to generate the Cash necessary for the payment of the Allowed Amount of priority claims and to otherwise commence consummation of the Plan, Citizens shall extend credit to the Consummation Agent in an amount not to exceed $100,000.00 on terms satisfactory to Citizens (the "Plan Funding Loan"). The Plan Funding Loan shall be secured by a senior lien on all Estate Assets pursuant to Code Section 364(d)(1). Funds advanced to the Consummation Agent under the Plan Funding Loan shall bear interest at a rate of six percent (6%) per annum and shall be payable from the first proceeds of the Estate Assets (but in no event after June 30, 1996).

7.2.  The Consummation Agent shall market and sell a sufficient number of the Estate Assets to pay in full all Allowed Claims by the commercially reasonable means he determines is likely to bring the best (cash) price for the same, consistent with the payment requirements set by this Plan, fairness, and equity. The Consummation Agent must accept any reasonable, good faith offer for an Estate Asset unless the Consummation Agent believes that it is extremely likely that he will be able to timely make all payments required by this Plan without acceptance of such offer.

7.3.  Order of Distribution. The Net Proceeds of the Estate Assets in each of the Chapter 11 Cases will be distributed as follows:

(i)  To pay the reasonable costs of preserving and maintaining the Estate Assets of the corresponding Chapter 11 Case, and to repay any outstanding balance of the Plan Funding Loan;

(ii)  In an amount not exceeding 5% of the gross proceeds of such Estate Asset, to the expenses and fees of the Consummation Agent in the corresponding Chapter 11 Case, subject to Court approval;

(iii)  To the holders of liens on such Estate Asset, in the order of priority of such liens;

(iv)  To any further expenses and fees of the Consummation Agent, subject to Court approval;

# 3500

other costs of collection, less the $10.00 release payment by Citizens, (ii) confirm that there are no offsets, counterclaims or defenses to Citizens' Claim or the validity, enforceability or perfection of its liens on any of the Estate Assets, and (iii) release Citizens from any claims, demands, obligations, liabilities and causes of action of whatever kind or nature, whether known or unknown, which the Debtors or any entity owned or controlled by Mr. Bishay has, may have, or might assert now or in the future against Citizens and/or its affiliates, participants, officers, directors, employees, agents, attorneys, accountants, consultants, successors and assigns, directly or indirectly, arising out of, based upon, or in any manner connected with the Citizens Claim. In exchange for the release, Citizens shall (i) pay to the Debtors the sum of $10.00, (ii) commit to make the Plan Funding Loan, defined in Section 7.1(b), at below market rates, (iii) forbear against enforcing any pending claims on account of the Citizens Claim against Longwood Archives, Inc., Massachusetts Auto Group, Inc., and U.S. Auto Exchange Ltd., except as to existing collateral, until the consummation of this Plan, and (iv) waive its right to have the actual, necessary expenses incurred by Citizens in making a substantial contribution to the Chapter 11 Cases treated as an Administrative Expense pursuant to Section 503 (b)(3)(D) of the Bankruptcy Code, and instead, such sums may be paid out in accordance with the Plan.

All payments made to Citizens under the terms of the Plan shall be applied to the Debtors' outstanding obligations to Citizens in such order and amount as Citizens may determine in its sole discretion. Citizens shall retain all of its liens that secure its Claim until its Claim is paid in full. However, Citizens will release those liens on Estate Assets to the extent necessary to permit the Consummation Agent to consummate this Plan, provided that the Net Proceeds from the sale or refinancing of those collateral assets is applied to the Class One Claim according to this Plan.

(b)  Distribution.

In full settlement and satisfaction of Citizens' Class One Claim, Citizens shall receive, on or before June 30, 1996, indefeasible payment in Cash in the full Allowed Amount of its Claim.

4.2.  Class Two (Framingham Savings). Unless the holder of the Class Two Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Two Claim shall (in the sole discretion of Citizens):

(a) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors;

(b) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors, with any prepetition defaults cured, the maturity of such Claim extended, and the holder compensated for its damages, to the full extent permitted by Code Section 1124(2); or

# 3505

6.8.  Compensation.  The Consummation Agent (and any professionals retained by him in accordance with Section 6.9 below) shall be entitled to reasonable compensation for services and reimbursement of customary expenses on application to the Court for the same, in accordance with the Bankruptcy Code and applicable Bankruptcy Rules and Local Bankruptcy Rules, which allowed compensation and reimbursement shall be paid from funds held by the Consummation Agent.

6.9.  Retention of Other Persons.  The Consummation Agent, with the Court's prior approval, shall have the power to employ such persons as he deems necessary to assist him in the performance of his duties under the Plan, including but not limited to attorneys and accountants.

6.10.  Bond.  No bond shall be required of the Consummation Agent.

6.11.  Limitation of Liability.  The Consummation Agent shall have no personal liability for his acts or omissions as Consummation Agent except for any of those constituting bad faith, willful misconduct, gross negligence or willful disregard of his duties.  The Consummation Agent may rely and shall be fully protected in acting upon any resolution, statement, certificate, instrument, report, notice, request, consent, order or other document which, in the absence of bad faith, willful misconduct, gross negligence or willful disregard of his duties, the Consummation Agent believes to be genuine and to have been signed or (in the case of cables, telecopies, telexes and the like) to have been sent by the proper party.  The Consummation Agent may consult with counsel and, in the absence of bad faith, willful misconduct, gross negligence or willful disregard of duties by the Consummation Agent, the Consummation Agent may rely and shall be fully protected in acting upon any opinion rendered by counsel.  The Consummation Agent shall have the right at any time to seek instructions from the Court concerning any question arising in connection with the performance of his duties hereunder.

6.12.  Disputes.  The Court shall have exclusive jurisdiction over any dispute arising from any act or omission of the Consummation Agent.

## Article XIII: Implementation of Plan

7.1.  Means for Initial Funding of Plan.  In order to provide initial funding for the Plan, Citizens, in its sole discretion shall select one of the following funding options:

(a)  Plan Funding Sales.  To the extent (but only to the extent) necessary to generate the Cash necessary for the payment of the Allowed Amount of priority claims and to otherwise commence consummation of the Plan, the Consummation Agent shall sell (and Citizens shall offer to purchase), for Cash, one or more Estate Assets at a fair price, as determined by the subjecting of such price to a competitive bidding procedure supervised by the Court (the "Plan Funding Sales").  Any party in interest or other person may outbid Citizens at such sale by submitting a written unconditional, Cash offer for such Estate Asset and providing Citizens and the Consummation Agent with appropriate assurances of such bidder's ability to close.  In the absence of any such

# 3501

(c) retain the liens securing such Claim, to the extent of the Allowed Amount of such claim, and receive deferred cash payments totaling the Allowed Amount of such Claim of a value, as of the Effective Date, of at least the value of such holder's interest in the estates' interest in such collateral property;

(d) receive the full Net Proceeds from the sale of the property that is subject to the liens securing such Claim; or

(e) realize the indubitable equivalent of such Claim.

4.3.  Class Three (Dedham).  Unless the holder of the Class Three Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Three Claim shall (in the sole discretion of Citizens):

(a) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors;

(b) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors, with any prepetition defaults cured, the maturity of such Claim extended, and the holder compensated for its damages, to the full extent permitted by Code Section 1124(2); or

(c) retain the liens securing such claim, to the extent of the Allowed Amount of such claim, and receive deferred cash payments totaling the Allowed Amount of such Claim of a value, as of the Effective Date, of at least the value of such holder's interest in the estates' interest in such collateral property;

(d) receive the full Net Proceeds from the sale of the property that is subject to the liens securing such Claim; or

(e) realize the indubitable equivalent of such Claim.

4.4.  Class Four (Marine Midland).  Unless the holder of the Class Four Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Four Claim shall (in the sole discretion of Citizens):

(a) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors;

(b) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors, with any prepetition defaults cured, the maturity of such Claim extended, and the holder compensated for its damages, to the full extent permitted by Code Section 1124(2); or

(c) retain the liens securing such Claim, to the extent of the Allowed Amount of

# 3504

5.2. Rejection Claim Bar Date. Any Claim for damages arising from the rejection of any executory contract or unexpired lease shall be forever barred unless a proof of claim therefor in proper form is filed with the Court within 30 days after the Court's entry of the Confirmation Order.

## Article XI: The Consummation Agent

6.1. Appointment of Consummation Agent. Citizens shall designate the Consummation Agent at or prior to the final hearing on confirmation of the Plan, subject to approval by the Court at such hearing. The Consummation Agent shall have the rights, powers and responsibilities set forth in Sections 6.2 through 6.12 hereof. The Trustee shall be eligible to serve as Consummation Agent.

6.2. Disposition of Certain Property. After the entry of the Confirmation Order, the Consummation Agent shall have the combined authority of a Chapter 7 Trustee and a Chapter 11 Trustee with respect to the management and disposition of the Estate Assets and the conduct of the Debtors' affairs, except that the Consummation Agent need not obtain Court approval for any transaction that, if done by a Chapter 7 or Chapter 11 Trustee, would require Court approval under the Bankruptcy Code.

6.3. Signatory Authority. From and after entry of the Confirmation Order, the Consummation Agent shall have full power and authority to take all actions and execute all documents on behalf of the Debtors necessary or appropriate to implement the Plan, including but not limited to causing the Debtors to transfer the Estate Assets to the Consummation Agent.

6.4. Transactions and Distributions. The Consummation Agent shall receive the transfer of Estate Assets from each of the Debtors and make the distributions to holders of Claims and Interests specified in Articles III and IV of the Plan. The Consummation Agent shall make distributions on account of Allowed Claims as quickly as possible consistent with due care, fairness and equity.

6.5. Objections to Claims. The Consummation Agent shall have standing to object to the allowance of any Claim.

6.6. Funds. All funds in the hands of the Consummation Agent for more than one day shall be invested in accordance with Code Section 345.

6.7. Closing of Chapter 11 Cases. Upon the resolution of all objections to Claims and the completion of all distributions by the Consummation Agent, the Consummation Agent shall promptly prepare and file with the Court all documents, and shall take all other steps necessary to close each of the Chapter 11 Cases. Upon entry of a final decree in each of the Chapter 11 Cases, the Consummation Agent shall turn over to Mr. Bishay, to be saved or disposed of as Mr. Bishay in his sole discretion may determine, all books and records maintained by the Consummation Agent in the performance of its duties under the Plan.

## 3502

such Claim, and receive deferred cash payments totaling the Allowed Amount of such Claim of a value, as of the Effective Date, of at least the value of such holder's interest in the estates' interest in such collateral property;

(d) receive the full Net Proceeds from the sale of the property that is subject to the liens securing such Claim; or

(e) realize the indubitable equivalent of such Claim.

4.5. Class Five (Hale & Dorr). In full settlement and satisfaction of its Class Six Claim, if any, and unless the holder of such Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Five Claim shall (in the sole discretion of Citizens):

(a) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors;

(b) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors, with any prepetition defaults cured, the maturity of such Claim extended, and the holder compensated for its damages, to the full extent permitted by Code Section 1124(2); or

(c) retain the liens securing such Claim, to the extent of the Allowed Amount of such claim, and receive deferred cash payments totaling the Allowed Amount of such Claim of a value, as of the Effective Date, of at least the value of such holder's interest in the estates' interest in such collateral property;

(d) receive the full Net Proceeds from the sale of the property that is subject to the liens securing such Claim; or

(e) realize the indubitable equivalent of such Claim.

4.6. Class Six (Warner & Stackpole). In full settlement and satisfaction of the Class Seven Claim, if any, and unless the holder of such Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, the holder of the Class Six Claim shall (in the sole discretion of Citizens):

(a) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors;

(b) retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled under its agreements with the Debtors, with any prepetition defaults cured, the maturity of such claim extended, and the holder compensated for its damages, to the full extent permitted by Code Section 1124(2); or

# 3503

(c) retain the liens securing such Claim, to the extent of the Allowed Amount of such claim, and receive deferred cash payments totalling the Allowed Amount of such Claim of a value, as of the Effective Date, of at least the value of such holder's interest in the estates' interest in such collateral property;

(d) receive the full Net Proceeds from the sale of the property that is subject to the liens securing such Claim; or

(e) realize the indubitable equivalent of such Claim.

4.7.  Class Seven (General Unsecured Claims).  Unless a holder of a particular Class Seven Claim and Citizens otherwise agree, on the Effective Date, or as soon as practicable thereafter, each holder of a Class Seven Claim, in full satisfaction of such Class Seven Claim, shall (in the sole discretion of Citizens):

(a) receive a promissory note in the full Allowed Amount of such Claim, payable in full within one year of the Effective Date, together with accrued interest at the per annum rate of fifteen (15%) percent (or any other rate of interest determined by the Court to be fair and equitable), made by the Trustee on behalf of each of the Debtors and recourse to the Estate Assets, which note shall be satisfied by the Trustee as promptly as practical, fair and equitable from the Net Proceeds of the Estate Assets; or

(b) receive or retain property of a value, as of the Effective Date, equal to the Allowed Amount of such Claim.

4.8.  Class Eight (Mr. Bishav's Interests).  Unless the holder of the Class Eight interests and Citizens otherwise agree,

(a) on the Effective Date, the holder of such Interests will receive or retain:

(i) a residual interest in all Estate Assets, subject only to the consummation of this Plan and the payment in full of all Allowed Claims; or

(ii) property of a value, as of the Effective Date, equal to the value of such Interests; or

(b) the holder of any interest junior to the Class Eight Interests will not receive or retain under this Plan any property on account of such junior interest.

## Article IX:  Executory Contracts

5.1.  Assumption of Executory Contracts.  As of the Effective Date, to the extent not previously assumed or rejected, and to the full extent permitted by the Bankruptcy Code, all executory contracts and unexpired leases to which either Debtor is a party shall be deemed assumed, pursuant to Code Section 365(a).

3516

Agent shall also have full power and authority, without further approval of the Court, to effect consummation of the Plan by exercising the Debtor's rights as a partner or stockholder in any business or enterprise of which the Debtors (or either of them) may be a partner or stockholder (collectively, "Subsidiaries"), which powers shall include, without limitation, the exercise of stockholder rights to remove directors or to otherwise direct action by or effect control over the Subsidiaries, the merger of one or more Subsidiaries into 1095, by abandoning any Estate Assets, or by any other action or power necessary or convenient for the disposition of any Estate Assets or the assets of a Subsidiary to achieve consummation of the Plan to the full extent permitted by applicable law and consistent with the rights of such Subsidiaries' creditors. The Consummation Agent shall not liquidate any Estate Assets unless necessary or appropriate for the consummation of the Plan."

11.    Section 7.1(b) of the Plan is hereby amended to change the interest rate on any Plan Funding Loan to a market rate of 10% per annum (rather than the 6% per annum that would have been available in consideration for a release of the Alleged Claims) and to add a new last sentence to such Section, as follows: "The Plan Funding Loan is not contingent upon any release of Citizens, and the Consummation Agent shall have no personal liability for the Plan Funding Loan."

12.    Section 7.3 of the Plan is deleted in its entirety and is replaced by the following:

"7.3  Order of Distribution. The Net Proceeds of the Estate Assets in each of the Chapter 11 Cases shall be distributed as follows:

(i)  To pay the reasonable costs of preserving, disposing of and/or maintaining the Estate Assets of the corresponding Chapter 11 Case, and to repay any outstanding balance of the Plan Funding Loan;

(ii)  To the expenses and fees of the Consummation Agent in the corresponding Chapter 11 Case, subject to Court approval;

(iii)  To the holders of liens on such Estate Asset, in the order of priority of such liens;

(iv)  To satisfy all other Allowed claims in the corresponding Chapter 11 Case, in the order and priority accorded to them under the Bankruptcy Code (and, as to Claims of the same priority, on a pro rata basis; provided, however, that the proceeds of Estate Assets not subject to any liens shall be distributed first to holders of Class Seven (General Unsecured Claims) without including in Class Seven the undersecured portion (if any) of the Class Five or Class Six Claim (solely for purposes of such distribution);

(v)  To satisfy any capital gains or other taxes incurred by the Estate or the Consummation Agent in connection with consummation of the Plan, the disposition of the Estate Assets or the pre-confirmation acts of the Trustee and/or either of the Debtors; and

(vi)  To the Debtor of the corresponding Chapter 11 Case."

10-28-1999 04:41PM    FROM  DESK OF B.BISHAY                    TO                    6464470    P.08

# SWORN STATEMENT

I, Richard M. Barry, state under oath as follows:

1.    I am a Vice President of Citizens Bank of Massachusetts.

2.    "A court of competent jurisdiction has determined that Citizens Bank of Massachusetts ("Citizens") has the right to recover costs or expenses (including, without limitation, attorney's fees or expenses) incurred in connection with claims of Bishay and 1095 Commonwealth Avenue Corporation ("CAC") against Citizens arising from transactions between Bishay, CAC and Citizens (such claims presently or formerly pending in Norfolk Superior Court, Commonwealth of Massachusetts, C.A. No. 95-1312-A) in an amount equal to or greater than the amount of this drawing."

So sworn this 13 day of April, 1999.

_____
Richard M. Barry
Vice President

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

Then personally came before me on April 13, 1999 said Richard M. Barry, to me known, and confirmed the foregoing to be true and accurate to the best of his knowledge and belief.

_____
Notary Public
My commission expires: 7-23-2004

#804678 V1 - HBW4011.DOC

# 3517

13.   Section 7.4 of the Plan is amended by adding the following sentence at the end of that Section: "Citizens, in its discretion, may extend the Effective Date by up to thirty days to permit the effective and fair consummation of the Plan."

14.   Section 7.10 of the Plan is hereby deleted in its entirety.

15.   Section 8.3(a) of the Plan is deleted in its entirety and is replaced by the following:

"(a)  To hear and determine objections to claims and interests and any actions pursuant to Bankruptcy Code Sections 522, 541, 542, 543, 544, 547, 548, 549, 550 or 553, and the Court shall have exclusive authority to resolve any dispute arising from any act or omission of the Consummation Agent, to resolve any dispute or issues relating to the administration or disposition of Estate Assets (including as to title issues) or other acts taken by the Consummation Agent to consummate the Plan, and to hear and determine pre-confirmation and post-confirmation administrative expenses."

Dated:  April 10, 1996

Respectfully submitted,
CITIZENS BANK OF MASSACHUSETTS
By its attorneys,

William R. Baldiga
Kelly A. McEnaney
Brown, Rudnick, Freed & Gesmer, P.C.
One Financial Center
Boston, MA 02111
(617) 856-8200

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this First Modification was served by the means indicated below to the persons on the attached service list, this 10th day of April, 1996.

William R. Baldiga

±466425 v6 - BALDIGWR - 9rw9061.DOC - 17813/24

- 7 -

First Union National Bank
April 15, 1999
Page 2

    Please call if you have any questions or if we should not expect immediate remittance for any reason. Thank you.

                Very truly yours,

                BROWN, RUDNICK, FREED & GESMER, P.C.

                By:

                William R. Baldiga

WRB/jjb
Enclosures

#804661 v1 - HGVP01!.DOC

# 3518

BY HAND
United States Trustee
O'Neill Federal Building
Ten Causeway Street
Boston, MA 02222

BY FACSIMILE
Richard Mikels
Counsel for Chapter 11 Trustee David J. Ferrari
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
41st Floor
Boston, MA 02111

BY FACSIMILE
Edward T. Robinson
Seegel, Robinson & Lipshutz, P.C.
Wellesley Office Park
20 William Street
Wellesley, MA 02181

BY FACSIMILE
Paul Igoe, Esquire
Hale and Dorr
60 State Street
Boston, MA 02109

BY FACSIMILE
Walter Lupan
Brooks & Lupan
20 N Main Street, Suite 200
Sherborn, MA 01770-1500

BY FACSIMILE
Gary W. Cruickshank, Esquire
50 Rowes Wharf, Unit 400
Boston, MA 02110-3328

Clerk's Office
U.S. Bankruptcy Court
1101 Boston Federal Office Building
10 Causeway Street
Boston, MA 02222-1074

Collector of Taxes
Town of Walpole
135 School Street
Walpole, MA 02108

1095 Commonwealth Avenue Corporation
Bahig F. Bishay
163 Blue Hill Drive
Westwood, MA 02090

BY HAND
Richard L. Levine
Hill & Barlow
One International Place
Boston, MA 02110-2607

Collector of Taxes
City of Boston
One City Hall Square
Boston, MA 02108

BY FACSIMILE
Douglas Gooding, Esquire
Choate, Hall & Stewart
53 State Street
Boston, MA 02109

BY FACSIMILE
Keith A. Mitchell, Esquire
Boudreau & Mitchell
430 Bedford Street
Lexington, MA 02173-1548

BY FACSIMILE
Judy Dein
Warner & Stackpole
75 State Street
Boston, MA 02109

Clerk's Office
U.S. Bankruptcy Court
1101 Boston Federal Office Building
10 Causeway Street
Boston, MA 02222-1074

Collector of Taxes
Town of Nantucket
16 Broad Street
Nantucket, MA 02554

**BROWN
RUDNICK
FREED &
GESMER**

WILLIAM R. BALDIGA

Direct Dial: (617) 856-8590
E-mail: wbaldiga@brfg.com

April 15, 1999

## FEDERAL EXPRESS

First Union National Bank
200 South Biscayne Blvd., 12th Fl.
Miami, FL 33131

Attn: Letter of Credit Department

Re: **Partial Draw under Standby Letter of Credit No. SB-98 01-06-001 ("Letter of Credit") Issued by Ocean Bank and Confirmed by First Union National Bank for account of Bahig Bishay in favor of Citizens Bank of Massachusetts ("Beneficiary"): Your Reference No. X549226**

Ladies and Gentlemen:

We represent Beneficiary with respect to its draw under the Letter of Credit in the amount of $360,427.99. This is a partial draw, and the Letter of Credit shall remain in effect. Beneficiary's Sight Draft No. 1 and Sworn Statement are enclosed.

Please remit payment by federal funds wire transfer as follows:

Citizens Bank
Providence, RI

ABA #011500120
For credit to account #1101011847
Please notify Xiomara Cabrera upon receipt at (401) 456-7613.

Alternatively, you may remit payment by your bank check delivered to my attention.

A Partnership of
Professional Corporations

ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111
617-856-8200
FAX: 617-856-8201

Hartford / Providence

3519

Collector of Taxes
Town of Westwood
580 High Street
Westwood, MA 02090

Longwood Archives
5-7 Station Street
Brookline, MA 02146

Mercedes Benz
c/o Mark Szpsak
Ropes & Gray
One International Place
Boston, MA 02110

Peter Elliot & Co.
260 Franklin Street
Boston, MA 02110

Mass. Auto Group, Ltd.
75 Providence Highway
Walpole. MA 02081

Collector of Taxes
Town of Norwood
566 Washington Street
Norwood, MA 02062

Hunneman & Co.
70-80 Lincoln Street
Boston, MA 02116

Ty Hanian
330 Beacon Street
Boston, MA 02116

Leggat McCall
10 Post Office Square
Boston, MA 02110

Florence Kates Realty
21 South Main Street
Sharon, MA 02067



Mr. Bahig Bishay
March 23, 1999
Page 2


bcc:　Mr. Edward Barrett,
　　　Senior Vice President & Counsel
　　　Mr. Richard Barry, Vice President
　　　James Stoll, Esq.
　　　Elise Busny, Esq.


#799135 v1 - BALDIGWR - H4M7011.DOC - 17813/35

3520

**DOCKETED** STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: | CHAPTER 11 |
| 1095 COMMONWEALTH AVENUE, CORP., | CASE NO. 95-15015-CJK |
| Debtor. |  |
| IN RE: | CHAPTER 11 |
| BAHIG F. BISHAY, | CASE NO. 95-16331-CJK |
| Debtor. |  |

## SECOND MODIFICATION TO CHAPTER 11 PLAN PROPOSED BY CITIZENS BANK OF MASSACHUSETTS

Citizens Bank of Massachusetts ("Citizens"), proponent of the Chapter 11 Plan filed in these cases on January 10, 1996, and as modified by the First Modification to Chapter 11 Plan Proposed by Citizens Bank of Massachusetts filed on April 18, 1996, (together, the "Plan") hereby further modifies the Plan in accordance with Bankruptcy Rule 3019 and Bankruptcy Code Section 1127(a), as described below.

The modifications to the Plan are as follows:

1.    Section 1.7 of the Plan is deleted in its entirety and replaced by the following:

1.7    <u>Consummation Agent</u> means David J. Ferrari or such other person appointed to serve as Consummation Agent under the Plan in accordance with Section 6.1 hereof.

2.    Section 1.14 of the Plan is deleted in its entirety and replaced by the following:

1.14    <u>Trustee</u> means David J. Ferrari, the Chapter 11 Trustee appointed in the Bishay Case, who shall continue to act as Chapter 11 Trustee until the Effective Date upon which date he shall commence acting as Consummation Agent.

3.    Section 1.15 of the Plan is deleted in its entirety and replaced by the following:



**BROWN
RUDNICK
FREED &
GESMER**



WILLIAM R. BALDIGA

Direct Dial: (617) 856-8586
E-mail: wbaldiga@brfg.com

March 23, 1999

**BY HAND**

Mr. Bahig Bishay
c/o L. Michael Hankes, Esq.
Harold Brown & Associates
66 Long Wharf
Boston, MA 02110

> Re:     <u>Citizens Bank/Order to Pay Collection Costs</u>

Dear Mr. Bishay:

As you know, we represent Citizens Bank in connection with these matters. As you also know, the Superior Court entered, on or about March 17, 1999, a Memorandum of Decision and Order awarding to Citizens Bank collection costs incurred in the pending litigation (Superior Court C.A. No. 95-1312A) in the amount of $360,427.99 (for the period through November 30, 1998), jointly and severally against you and certain of your affiliates. Citizens Bank hereby demands that the sum awarded be delivered to Citizens Bank, to my attention, at this office, on or before April 7, 1999.

Please be further advised that if payment is not received by that date, Citizens Bank may exercise its right, in its discretion, to obtain payment by draw on the letter of credit delivered to the Bank last year. Please also be advised that Citizens Bank reserves all of its other rights and remedies in all respects, including without limitation to seek further orders as to additional costs of collection, to enforce payment of the awarded sum by any other means, to elect to draw upon the letter of credit at any earlier or later date, or to take any other action permitted by law.

Thank you.

Very truly yours,

BROWN, RUDNICK, FREED & GESMER, P.C.

By: William R. Baldiga

WRB/ljb

A Partnership of
Professional Corporations

ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111
617-856-8200
FAX: 617-856-8201

Hartford / Providence

3521

1.15 Net Proceeds means, as to the holder of any Claim secured by an Estate Asset, except Citizens Bank of Massachusetts, the gross proceeds realized upon the sale or other disposition of an Estate Asset, less only (a) the amount necessary to fully satisfy any amounts secured by valid liens senior to the holder of such claim (or to the owner of such asset), as the case may be, and (b) the actual, reasonable and necessary out-of-pocket costs of disposition of such Asset.

4.    A new section 1.17 shall be added to the Plan and shall provide as follows:

1.17 Deposit means the fund to be deposited with the Trustee and the Consummation Agent hereunder for the purpose of providing payment of expenses of administration and other claims provided for in Article V hereof and all Cure Payments.

5.    Article V of the Plan is deleted in its entirety and replaced by the following:

The Plan does not classify claims arising under Section 507 of the Bankruptcy Code. The Consummation Agent shall pay in Cash from the Deposit on the Effective Date the Full Allowed Amount of each such Claim incurred through the Effective Date and any unpaid fees or charges assessed against the Debtors under Chapter 113 of Title 28, United States Code (28 U.S.C. §1911, et seq.).

6.    Section 4.1(a) of the Plan is deleted in its entirety and replaced by the following:

"(a)  Allowance.

The Class One Claim is impaired.  The holder of the Class One Claim shall retain, except as provided herein, unaltered, the legal and contractual rights to which such holder is entitled; provided, however, that such Claim shall be fully paid on or before September 15, 1996, and the holder of such Claim shall not exercise its enforcement remedies against its collateral unless the Consummation Agent fails to achieve full payment of that Claim (and full payment of the outstanding balance of any Plan Funding Loan) by that date.  Entry of the Confirmation Order shall also constitute confirmation of the final allowance of the Citizens Claim in the amount, as of September 19, 1995, in the principal amount of $1,582,315.11 less any amounts paid to Citizens against that Claim from the Debtors or the Debtors' estates since that date, plus accrued prepetition interest in the amount of $26,795.21 plus (to the extent allowed by the Court pursuant to Code Section 506(b), for which Citizens may apply at any time before or after entry of the Confirmation Order) postpetition interest and charges arising under the loan documents between the Debtors and Citizens, including Citizens; postpetition attorneys' fees and other costs of collection incurred through the Effective Date.  Nothing herein shall deprive the Court of jurisdiction over the issues relating to

- 2 -

87

APR 1 5 1999

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
Civil Action
No. 95-1312

CITIZENS BANK OF MASSACHUSETTS,
Plaintiff

Vs.

BAHIG BISHAY, INDIVIDUALLY AND AS TRUSTEE
OF OLD POST ROAD REALTY TRUST, COMMONWEALTH
REALTY TRUST, BISHAY MOTORS & LEASING, INC., fka
BISHAY MOTORS, INC., MASSACHUSETTS AUTO GROUP,
dba BISHAY ISUZU, U.S. AUTO EXCHANGE GROUP LTD
And 1095 COMMONWEALTH AVE. GROUP.,
Defendants

JUDGMENT    RE: Attorneys fees and Costs

This action came on for Rule 9A Review on Plaintiff's, Citizens Bank of Massachusetts, Motion for entry of final judgment Pursuant to Rule 58 of the Massachusetts Rules of Civil Procedure, before the Court, Doerfer, J. presiding, and the issues having been duly considered and the Court having allowed the Motion. And previously the Court having allowed costs in a Memorandum dated March 17, 1999.

IT IS ORDERED AND ADJUDGED:

That the Plaintiff, Citizens Bank of Massachusetts recover of the Defendants, Bahig Bishay, individually and as Trustee of the Old Post Road Realty Trust; Commonwealth Realty Trust; Bishay Motors & Leasing, Inc., fka Bishay Motors, Inc.; Massachusetts Auto Group, Ltd., And 1095 Commonwealth Ave. Corp., jointly and severally, the sum of $360,427.99 for attorneys fees and costs.

Dated at Dedham, Massachusetts, this 14th day of April, 1999.

Mary K. Hickey
Assistant Clerk

3522

unpaid late fees, unpaid default interest, as well as unpaid
attorneys' fees and other unpaid costs of collection whether
occurring pre- or post-petition. The Debtors' estates may retain
and, by its duly authorized representative(s) settle, release or
prosecute, their alleged claims against Citizens arising from the
transactions between the Debtors and Citizens and related matters
(the "Alleged Claims"). However, the Alleged Claims, until and
unless reduced by Final Order to a judgment against Citizens,
shall not reduce, delay or otherwise interfere with the timely
and full satisfaction of Citizens' Class One Claim in accordance
with this Plan. In addition, until Citizens actually receives
(in form and substance reasonably acceptable to it) a release
from (and evidence of dismissal with prejudice of) all Alleged
Claims, Citizens shall retain its lien on all Estate Assets not
disposed of in accordance with this Plan as security for
Citizens' contractual right to reimbursement from the Debtors for
Citizens' costs and anticipated costs of defending the Alleged
Claim; provided, however, (a) that the Debtors may obtain the
discharge of such liens within thirty (30) days after the date on
which the Class One Claim has been paid in full (but in no event
later than November 17, 1996, by delivering to Citizens (i) an
irrevocable letter of credit (in form and substance reasonably
acceptable by Citizens) issued for the benefit of Citizens by a
reputable domestic commercial bank in the amount of $500,000
subject to being drawn by Citizens by presentation of a sworn
statement that a court of competent jurisdiction has determined
that Citizens has the right to recover costs or expenses
(including, without limitation, attorneys' fees or expenses)
incurred in connection with defense of the Alleged Claims in an
amount equal to or greater than the amount of such draw, or (ii)
a bond (in form and substance reasonably acceptable to Citizens)
issued for the benefit of Citizens by a reputable domestic
bonding or insurance company securing such possible right of
recovery up to a sum of not less than $500,000; and (b) the
Consummation Agent shall be entitled (if necessary to generate
funds to consummate this Plan), after the full payment of the
Class One Claim and any Plan Funding Loan, but before dismissal
and release of the Alleged Claims, to obtain discharges of
Citizens liens on any or all Estate Assets except for the single
family residence at 4 Yew Drive, Norwood, Massachusetts. At any
time, the Debtor or the Consummation Agent may settle the Alleged
Claims, subject to Court approval after notice to the Debtors and
other parties in interest.

At any time, the Consummation Agent or the Debtor, as appropriate
hereunder, may refinance any property subject to Citizens'
retained liens, as such retained liens may exist at the time of
refinancing, on reasonable, arms' length, good faith terms with
independent third parties, free and clear of such liens, provided
that the proceeds of such refinancing are distributed in
accordance with Section 7.3 of the Plan. If at the time of such
refinancing the Class One Claim and any Plan Funding Loan have
been paid in full but there has been no release and dismissal of
the Alleged Claims, then the proceeds of the refinancing which
are payable to Citizens pursuant to Section 7.3(iii) of this Plan

CITIZENS BANK OF MASSACHUSSETTS (''CITIZENS'') HAS THE RIGHT
TO RECOVER COSTS OR EXPENSES (INCLUDING WITHOUT LIMITATION,
ATTORNEY'S FEES OR EXPENSES) INCURRED IN CONNECTION WITH
CLAIMS OF BISHAY AND 1095 COMMONWEALTH AVENUE CORPORATION
(''CAC'') AGAINST CITIZENS ARISING FROM TRANSACTIONS BETWEEN
BISHAY, CAC AND CITIZENS (SUCH CLAIMS PRESENTLY OR FORMERLY
PENDING IN NORFOLK SUPERIOR COURT, COMMONWEALTH OF
MASSACHUSETTS, C.A. NO. 95-1312-A) IN AN AMOUNT EQUAL TO OR
GREATER THAN THE AMOUNT OF THIS DRAWING''.

(II)  ''WE HAVE RECEIVED NOTIFICATION FROM FIRST UNION NATIONAL BANK,
      MIAMI, FLORIDA THAT THE IRREVOCABLE LETTER OF CREDIT NO.
      SB-98-01-0S-001 SHALL NOT BE RENEWED UPON THE EXPIRATION
DATE''.

THIS LETTER OF CREDIT EXPIRES ON 12/31/98.  IT IS A CONDITION OF
THIS LETTER OF CREDIT THAT IT SHALL BE AUTOMATICALLY RENEWED FOR
ADDITIONAL PERIODS OF ONE YEAR FROM THE PRESENT OR EACH FUTURE
EXPIRATION DATE, UNLESS FIRST UNION NATIONAL BANK, MIAMI, FLORIDA
NOTIFIES YOU VIA CERTIFIED MAIL,RETURN RECEIPT REQUESTED, AT LEAST
45 DAYS PRIOR TO SUCH EXPIRATION DATE THAT OCEAN BANK ELECTS NOT TO
RENEW THIS LETTER OF CREDIT.
MULTIPLE PARTIAL DRAWINGS ARE PERMITTED HEREUNDER.
WE HEREBY ENGAGE THAT DRAFTS DRAWN UNDER AND IN COMPLIANCE WITH
THE TERMS OF THIS LETTER OF CREDIT WILL BE HONORED BY US PROVIDED
THEY ARE PRESENTED WITHIN THE VALIDITY  OF THE CREDIT, PRIOR TO
3:00 P.M. ON OR BEFORE THE EXPIRATION DATE HEREOF BY RECOGNIZED
COURIER SERVICE TO FIRST UNION NATIONAL BANK, AT 200 S.BISCAYNE
BLVD. 12TH.FLOOR ,MIAMI, FLORIDA 33131.
REQUEST FOR PAYMENT UNDER THIS LETTER OF CREDIT SHALL BE FINAL
AND CONCLUSIVE FOR ALL PURPOSES WITHOUT VERIFICATION BY THE
ISSUING BANK AND SHALL NOT BE SUBJECT TO REFUTATION, DENIAL OR
CONTEST.
THIS LETTER OF CREDIT SETS FORTH THE TERMS OF OUR UNDERTAKING
AND SUCH UNDERTAKING SHALL NOT IN ANY WAY BE MODIFIED, AMENDED OR
AMPLIFIED BY  REFERENCE TO ANY DOCUMENTS OR INSTRUMENT REFERED TO
HEREIN IN WHICH THIS LETTER OF CREDIT IS REFERRED TO OR TO WHICH
THIS LETTER OF CREDIT RELATES, AND ANY SUCH REFERENCE SHALL NOT
BE DEEMED TO INCORPORATE BY REFERENCE ANY DOCUMENT OR INSTRUMENT.
THIS STANDBY LETTER OF CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS
AND PRACTICE FOR DOCUMENTARY CREDITS (1993 REVISION)
INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION 500.
CONFIRMING BANK IS AUTHORIZED TO DEBIT OCEAN BANK'S ACCOUNT
WITH THE CONFIRMING BANK (3) WORKING DAYS AFTER CONFIRMING BANK'S
TESTED TELEX STATING THAT ALL TERMS AND CONDITIONS HAVE BEEN
COMPLIED WITH.
NOTE: CITATION TO NORFOLK SUPERIOR COURT C.A. NO. 95-1312-A, IS
      SOLELY FOR REFERENCE PURPOSES ONLY AND DOES NOT CONSTITUTE
      AN INTEGRAL PART OF THIS LETTER OF CREDIT.
OCEAN BANK, MIAMI,FL.
REGARDS,
OCEAN BANK
LETTER OF CREDIT DEPARTMENT
NNNN
1022 012298 1022 012298

## 3523

shall be held in escrow for Citizens in an amount not to exceed $500,000 to be released to Citizens upon the same terms and conditions as the Letter of Credit referred to above. After full payment of the Class One Claim and any Plan Funding Loan, but before dismissal and release of the Alleged Claims, the proceeds of sales of Estate Assets payable to Citizens pursuant to Section 7.3(iii) of this Plan shall be held in escrow for Citizens in an amount not to exceed $500,000 to be released to Citizens upon the same terms and conditions as the Letter of Credit referred to above. An escrow account established pursuant to this paragraph shall be held by the Trustee or Consummation Agent, subject to further order of the Court and shall, to the extent funded up to $500,000, be a full and complete substitution for the letter of credit or bond referred to above.

All payments made to Citizens under the terms of the Plan shall be applied to Citizens' allowed claim in such order and amount as Citizens may determine in its sole discretion.

7.    Section 4.2 of the Plan is deleted in its entirety and is replaced by the following:

"4.2.    Class Two (Framingham Savings). The Class Two Claim is impaired, unless the Court permits any request of the Debtors made pursuant to Section 4.2(b) below. On the Effective Date, or as soon as practicable thereafter, the holder of the Class Two Claim shall retain, unaltered, the legal, equitable and contractual rights to which such holder is entitled; provided, however, (a) that such Claim shall be fully paid on or before ~~January 15, 2996~~, and the holder of such Claim shall not exercise its enforcement remedies against its collateral unless the Consummation Agent fails to achieve full payment of that claim by that date, and (b) that at the hearing on confirmation of this Plan the Debtors shall be permitted to request that the Class Two Claim be treated in accordance with Section 1124(2) of the Bankruptcy Code and be permitted an opportunity to provide that such treatment (i) is acceptable to the holder of such Claim, or (ii) is not acceptable to such holder, but may be nonetheless approved by the Court because such treatment is fair and equitable and otherwise permitted by Section 1129(b) and that such treatment does not render the Plan not feasible or otherwise unconfirmable. If the Court allows the Debtors' request for such alternative treatment of the Class Two Claim, the Class Two Claim shall be treated in accordance with the Debtors' request (provided, however, that if the Debtors do reinstate the Class Two Claim, in the event that the Debtors thereafter default with respect to the loan representing such Claim (as defined under the relevant loan documents), the holder of such Claim may enforce its rights and remedies under and in accordance with such loan documents without any need for relief from stay or other proceedings in the Chapter 11 Cases). If the Court allows such alternative treatment of the Class Two Claim, then the Consummation Agent shall pay in Cash from the Deposit on the Effective Date, or as soon as practicable thereafter, the full Cure Payment as determined by the Court. In addition,

- 4 -

3537



FEB 4 1998

LAW DEPARTMENT

SEND:D/2692200007798/
OCEAN BANK OF MIAMI IN
780 N.W. 42ND AVENUE
MIAMI FL 33126

**** MESSAGE TEXT ****

MCI 6811519 2251 N N I N 98/01/22 10:22:21
A/OCEAN INT UT/MCI_TLX_Q 2251 0
980122-FUF-2251
/TLX:FIRST UNION FL
{STX}
VP0999 022 10:22 10:22 LFUF6063
FL
  EAN INT UT
ZCZC LWH872  XEPS11
OCEAN INT UT
159581
6811519+
BT
TO:   FIRST UNION NATIONAL BANK      MIAMI, FLORIDA
ATTN: PAULETTE SMITH
FM:   OCEAN BANK, MIAMI, FLORIDA
TEST: 11-3207  AMT USD500,000.00  JANUARY 22, 1998
PLEASE ADVISE THE BENEFICIARY ADDING YOUR CONFIRMATION.
WE HEREBY ISSUE OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO.
SB-98-01-06-001 FOR ACCOUNT OF BAHIG BISHAY (''BISHAY''), IN FAVOR
OF:
BENEFICIARY NAME: CITIZENS BANK OF MASSACHUSETTS
                  ONE CITIZENS PLAZA
                  PROVIDENCE, RI 02903
                  ATTN: GENERAL COUNSEL
FOR UP TO AN AGGREGATE AMOUNT OF USD500,000.00 (FIVE HUNDRED
THOUSAND DOLLARS AND NO/100).  PAYMENT(S) UNDER THIS LETTER OF
CREDIT ARE AVAILABLE AGAINST PRESENTATION OF THE BENEFICIARY'S
SIGHT DRAFT(S) DRAWN ON FIRST UNION NATIONAL BANK, MIAMI, FLORIDA
AND ACCOMPANIED BY EITHER OF THE FOLLOWING SWORN STATEMENTS:
(I)  ''A COURT OF COMPETENT JURISDICTION HAS DETERMINED THAT

THIS CABLE/LETTER FROM OUR
CORRESPONDENT/CUSTOMER
CONSTITUTES AS AN INTEGRAL
PART OF THIS CREDIT AND
MUST BE ATTACHED HERETO

AUTHORIZED SIGNATURE
FIRST UNION NAT'L BK

OUR REF. #

### 3524

Citizens shall withdraw its motions to disallow such Claim filed on or about January 25, 1996."

8.    Section 4.3 of the Plan is deleted in its entirety and is replaced by the following:

"4.3.    Class Three (Dedham).  The Class Three Claim is not impaired.  On the Effective Date, or as soon as practicable thereafter, the holder of the Class Three Claim shall be treated in accordance with Section 1124(2) of the Bankruptcy Code (specifically, all defaults with respect to such Claim shall be cured (other than any default of a kind specified in Bankruptcy Code Section 365(b)(2)), the maturity of such Claim shall be reinstated as such maturity existed before such default, the holder of such Claim shall be compensated for any damages incurred as a result of such reinstatement, and the holder of such Claim shall otherwise retain the legal, equitable and contractual rights to which it is entitled on account of such Claim).  The Consummation Agent shall pay in Cash from the Deposit on the Effective Date, or as soon as practicable thereafter, the full Cure Payment as determined by the Court. The holder of the Class Three Claim also shall reserve its right at any time to file a motion seeking relief from the automatic stay as to its collateral in the Chapter 11 Cases.

9.    Section 4.4 of the Plan is deleted in its entirety and is replaced by the following:

"4.4.    Class Four (Marine Midland).  The Class Four Claim is not impaired.  On the Effective Date, or as soon as practicable thereafter, the holder of the Class Four Claim shall be treated in accordance with Section 1124(2) of the Bankruptcy Code (specifically, all defaults with respect to such Claim shall be cured (other than any default of a kind specified in Bankruptcy Code Section 365(b)(2)), the maturity of such Claim shall be reinstated as such maturity existed before such default, the holder of such Claim shall be compensated for any damages incurred as a result of such reinstatement, and the holder of such Claim shall otherwise retain the legal, equitable and contractual rights to which it is entitled on account of such Claim).  In addition, Citizens shall withdraw its motion to disallow such Claim filed on or about January 29, 1995.  The Consummation Agent shall pay in Cash from the Deposit on the Effective Date, or as soon as practicable thereafter, the full Cure Payment as determined by the Court.

10.    Section 4.6 of the Plan is deleted in its entirety and is replaced by the following:

"4.6.    Class Six (Warner & Stackpole).  The Class Six Claim is impaired.  Unless the holder of the Class Six Claim and the Debtor otherwise agree, the holder of the Class Six Claim shall be paid the full Allowed Amount of such Claim, payable in full on or before December 31, 1996, together with interest accrued from the Effective Date through the date of payment at

- 5 -



FIRST UNION NATIONAL BANK
ENCLOSURE

PHONE INQUIRIES:
CONFIRMATION/AMENDMENT/NEGOTIATION (305)789-6975

## 3525

the per annum rate of twelve (12%) percent (or any other rate of interest determined by the court to be fair and equitable); and shall retain any valid liens securing such Claim to the extent of the Allowed Amount of such Claim."

11.   Section 6.1 of the Plan is deleted in its entirety and is replaced by the following:

6.1 Appointment of Consummation Agent.  The Consummation Agent shall be David J. Ferrari subject to approval by the court at the hearing of confirmation of this Plan.  The Consummation Agent shall have the rights, powers and responsibilities set forth in Sections 6.2 through 6.12 hereof.

12.   Section 6.2 of the Plan is amended by striking the following words contained therein:

"(which approval shall be deemed granted automatically if a motion seeking such approval is filed and served upon the Debtors and all other parties in interest and no objection is filed and served within 10 days of filing and posting)" and

Section 6.2 is further amended by striking the final sentence and substituting the following words for the final sentence:

"The Consummation Agent shall have all rights of a Chapter 7 Trustee and a Chapter 11 Trustee including, without limitation, the right to sell Estate Assets free and clear of liens."

13.   Section 6.4 of the Plan is deleted in its entirety and is replaced by the following:

6.4   Transactions and Distributions.  The Consummation Agent shall receive and hold Estate Assets in the same manner and with the same rights as a Chapter 7 Trustee and a Chapter 11 Trustee and make the distributions to holders of Claims as provided for in this Plan.  The Consummation Agent shall make distributions on account of allowed Claims as quickly as possible consistent with due care, fairness and equity.

14.   Section 7.1(a) of the Plan is modified by adding the words "Trustee or" immediately before the words "Consummation Agent" appear therein.

15.   Section 7.1(b) of the Plan is modified by striking the words "payable from the first proceeds of the Estate Assets (but in no event after August 15, 1996)." and substituting the words "paid in accordance with Section 7.3 of this Plan."

16.   Section 7.2 is deleted in its entirety.

17.   A new section is added between 7.3(ii) and 7.3(iii):

- 6 -

FIRST UNION NATIONAL BANK
CONFIRMATION OF IRREVOCABLE STANDBY LETTER OF CREDIT
JANUARY 08, 1998

MAIL TO:                            OPENING BANK:
CITIZENS BANK OF MASSACHUSETTS      OCEAN BANK
ONE CITIZENS PLAZA                  MIAMI, FLORIDA
PROVIDENCE, RI 02903
ATTN: GENERAL COUNSEL

                         EXPIRY: DECEMBER 31, 1998

LETTER OF CREDIT #SB-98-01-06-001 OUR REFERENCE #X549226

AMOUNT: UNITED STATES DOLLARS 500,000.00

APPLICANT: BAHIG BISHAY ('BISHAY")

GENTLEMEN:

AT THE REQUEST OF THE OPENING BANK WE ENCLOSE THE ORIGINAL OF
THEIR LETTER OF CREDIT. A COPY OF THE CREDIT IS RETAINED BY US.

WE SUGGEST YOU REVIEW THE LETTER OF CREDIT IMMEDIATELY. IF AN
AMENDMENT IS NEEDED, PLEASE CONTACT THE APPLICANT DIRECT.

MAIL SHOULD BE DIRECTED TO OUR INT'L DIV., (FL 6042) 200 SOUTH
BISCAYNE BLVD. 12TH FLOOR, MIAMI, FL 33131 QUOTING OUR REF. NO.
X549226

WE HEREWITH CONFIRM THE ABOVE MENTIONED LETTER OF CREDIT AND
HEREBY ENGAGE WITH YOU THAT ALL DRAFTS DRAWN UNDER AND IN
COMPLIANCE WITH THE TERMS OF THIS LETTER OF CREDIT WILL BE DULY
HONORED IF PRESENTED, TOGETHER WITH THE DOCUMENTS AS SPECIFIED,
AT THIS OFFICE ON OR BEFORE THE EXPIRATION DATE AS SET FORTH
ABOVE.

THIS CONFIRMATION SHALL BE AUTOMATICALLY RENEWED FOR
ADDITIONAL PERIODS OF ONE (1) YEAR FROM THE PRESENT OR EACH
FUTURE EXPIRATION DATE, UNLESS FIRST UNION NATIONAL BANK
MIAMI FLORIDA, NOTIFIES CITIZENS VIA CERTIFIED MAIL, RETURN
RECEIPT REQUESTED, AT LEAST FORTY FIVE (45) DAYS PRIOR TO SUCH
EXPIRATION DATE THAT OCEAN BANK ELECTS NOT TO RENEW THIS
LETTER OF CREDIT

EXCEPT AS OTHERWISE STATED HEREIN THIS CREDIT IS SUBJECT TO THE
U.C.P. (1993 REVISION) I.C.C. PUBLICATION NO. 500.

SINCERELY,


AUTHORIZED SIGNATURE

## 3526

(ii-a)  to the payment of all amounts required to be
included in the Deposit including all amounts to be paid pursuant
to Article V and Cure Payments required pursuant to Sections 4.2,
4.3 and 4.4 of the Plan.

18.  section 7.3(iii) is deleted in its entirety and
replaced with the following:

(iii)  to Citizens if it is the holder of a lien on such
estate asset ~~and not~~ except that the Consummation Agent may
retain funds to use, without any further order, at any time ,
prior to ~~payment~~ the Effective Date to pay ordinary monthly
payments to holders of class 2,3 and 4 claims to the extent that
rents on such holders' collateral properties are insufficient to
make such payments.

19.  Section 7.4 of the Plan is deleted in its entirety
and replaced by the following:  / The Effective Date be no later than

7.4  Effective Date.  The Effective Date shall occur on that date
on which the Deposit is fully funded and held by the Trustee
provided that no stay of the Confirmation Order or any order
ancillary thereto material to confirmation or substantial
consummation of the Plan shall be in effect at that time (in
which case the Effective Date shall occur on the tenth day after
such stay has been discharged.) ~~All parties reserve their rights
to seek revocation of the Confirmation if the Effective
Date does not occur within 90 days~~

20.  Section 8.2(c) is modified by adding the words "or
the Trustee or the Consummation Agent" immediately after the word
"Debtor" every time it appears therein.

21.  A new Article IX is added to the Plan entitled
Order and Timing of Sale of Estate Assets.  This new section
shall provide as follows:

Prior to the Effective Date, the Trustee, and subsequent to
the Effective Date, the Consummation Agent, shall sell, settle or
otherwise dispose of Estate Assets free and clear of liens, to
the extent practicable, and consistent with his duties and
responsibilities hereunder, including the responsibility to make
all payments required in this Plan by the date set forth herein,
in the following order and manner:

1.  within 30 days after the entry of the Confirmation
Order, the Trustee or Consummation Agent shall make all
reasonable efforts to submit to the Court an Agreement to settle
the State Court actions brought by Sanig Bishay against Herb
Chambers and others in Suffolk Superior Court (the "Chambers
Litigation") for an amount of not less than $1,300,000.

2.  on or within 30 days after the entry of the
Confirmation Order, the Trustee or Consummation Agent shall make

- 7 -

3528

The Debtor or any entity, the stock of which is owned by the Debtor, which is liable with the Debtor to a Class Two, Three or Four claimant shall, commencing with payments due on or after the entry of the Order of Confirmation make all ordinary payments to the Class Two, Three or Four claimant. Such payments shall be made at non-default rates and at non-default and non-accelerated terms. The first such payment shall not be required to be made until May 18, 1996. The Debtor may use funds available pursuant to Section 7.3(iii) above for this purpose.

Respectfully submitted,

CITIZENS BANK OF MASSACHUSETTS
By its attorneys,

William R. Baldiga
Kelly A. McEnaney
Brown, Rudnick, Freed & Gesmer
One Financial Center
Boston, MA 02111
(617) 856-8200

73/616234 :

3527

reasonable efforts to file an application with the Court to sell that certain real property and improvements thereon known and numbered as 5-7 Station Street, 9 Arden Place, Brookline, MA.

3.    on or within 60 days after the entry of the Confirmation Order, the Trustee or Consummation Agent shall make reasonable efforts to file an application with the Court to sell two certain residential lots known and numbered as Lots 7 and 8, Edgehill Road, Sharon, MA.

4.    on or within 60 days after the entry of the Confirmation Order, the Trustee or Consummation Agent shall make reasonable efforts to file and application with the Court to sell that certain real property known and numbered as Block 432, Lots 36 and 37, Unit 15, Cape Coral, Florida.

5.    on or within 90 days after the entry of the Confirmation Order, the Trustee or Consummation Agent shall make reasonable efforts to file an application with the Court to sell that certain real property consisting of approximately 4.1 acres located partially in Sharon and partially in Walpole, MA.

6.    on or within 120 days after the entry of the Confirmation Order, the Trustee or Consummation Agent shall make reasonable efforts to file an application with the Court to sell the Massachusetts Auto Group Ltd. d/b/a Bishay Isuzu.

7.    on or within 150 days after the entry of the Confirmation Order, the Trustee or Consummation Agent shall make reasonable efforts to file an application with the Court to sell that certain real property and improvements thereon known and numbered as 75 Providence Highway, Walpole, MA.

8.    any and all other Estate Assets needed to consummate the Plan.

22.    A new Article XI is added to this Plan entitled "Additional Provisions with Respect to Claims in Classes Two, Three and Four" and shall provide as follows: